1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MILTON OTIS LEWIS,

11              Petitioner,                    CIV-S-02-0013 FCD GGH DP

12        vs.                                  **DEATH PENALTY CASE**

13   JEANNE WOODFORD, Warden,

14              Respondent.                    ORDER and FINDINGS &
                                               RECOMMENDATIONS
15   _____/

16   _Introduction and Summary_

17             Petitioner, Milton Lewis, moves for partial summary judgment on Claims 1, 2, 3,

18   and 7 of the First Amended Petition.[1]  These claims involve the penalty phase use of preliminary

19   hearing testimony of a victim (Kiro Horiuchi), and other evidence in a prior robbery crime

20   committed by petitioner.  In particular, petitioner claims that the prosecutor endeavored to

21   convince the jury that petitioner had used a gun in connection with a previous robbery.  In so

22   doing, petitioner asserts that the prosecutor offered misleading evidence which he knew was false

23   _____

24        [1]  The use of Fed. R. Civ. P. 56 is appropriate in habeas corpus actions.  Blackwell v.
     Allison, 431 U.S. 63, 80, 97 S. Ct. 1621, 1632 (1977).  The fact that petitioner asks for partial
25   summary judgment on specific issues is as appropriate as when respondent asks for such relief.
     Nor does the undersigned object to "piecemeal" adjudications in habeas corpus actions as "divide
26   and conquer" is often preferable to a massive, one-time submission to the district judge on all
     issues.

                                              1

and failed to give the defense access to information which the prosecutor knew would have debunked any claim that petitioner had used a gun.  Petitioner believes that introduction of this evidence in aggravation tipped the scales in favor of a death penalty verdict.  In the alternative, petitioner moves for an evidentiary hearing on these claims.  Petitioner complains that:

a.  use of Horiuchi's preliminary hearing testimony violated the Confrontation Clause (Claim 1);

b.  use of Horiuchi's testimony violated due process (trial court errors in making factual findings (Claim 2a);

c.  use of Horiuchi's testimony constituted a knowing use of false testimony by the prosecutor (Claim 2b);

d.  the prosecutor failed to disclose exculpatory evidence in connection with the Horiuchi testimony (Claim 3); and

e.  he received ineffective assistance of counsel who failed to completely review the Horiuchi evidence (Claim 7).

Because the record in this matter is sufficient with respect to all material facts, no evidentiary hearing will be held.  As a matter of law, petitioner's motion for partial summary judgment should be denied, and the court should grant respondent's cross-motion for summary judgment.[2]

*Factual Background*

The complete factual background of this case can be found in People v. Lewis, 25 Cal. 4th 610, 106 Cal. Rptr. 2d 629 (2001).  An entire rendition of these facts is not necessary given the limited, penalty phase focus of the issues here.  Suffice it to say that petitioner was

---

[2]  Petitioner complains that the court's previous order extending the time in which respondent could oppose petitioner's motion extended only to "oppositions," and not cross-motions for summary judgment.  Since the matters at issue are legal matters on established facts of record, the word "opposition" included an accompanying cross-motion.  No point would be served in having respondent make a repetitive motion on the same claims.

convicted of one count of first degree murder (and almost two) with the special circumstances of burglary/murder and robbery/murder.  He was also convicted of attempted murder of the wife of the victim.  As is often the case, use of methamphetamine had much to do with the facts leading up to this violence.

At the penalty phase, the prosecutor introduced evidence from petitioner's violent past.  This evidence included petitioner's robbery of a liquor store involving victim Horiuchi.  More will be said about this robbery and the evidence produced at the penalty phase below, but the prosecutor also introduced evidence of:

1.  Petitioner's fighting with a woman where he shook the woman, threw her to the sidewalk, struck her in the head with his fist, and knocked her against an apartment building rendering her unconscious.  When confronted by police, petitioner resisted, and a choke hold was used to subdue him;

2.  In 1985, when arguing with his mother, petitioner stabbed his uncle twice when the uncle attempted to halt the argument, but then refused to fight petitioner;

3.  In January 1986, petitioner hit his wife in the eye with his fist during an argument;

4.  A scant eight months later, while living with another women who was pregnant, petitioner, during an argument, hit her in the eye and lip and dragged her out of the house;

5.  In September of 1986, petitioner happened upon the father of his wife (see 3 above) whereupon he decided to shoot at the father's pick-up truck tire, and when questioned about this violent act petitioner responded in part: "Next time...I'm going to be shooting your God damn guts out;"

6.  In November of 1986, petitioner was disarmed in a bar after he threatened to kill someone;

7.  In June 1987, petitioner was convicted of methamphetamine sale.

3

1     With respect to the Horiuchi robbery evidence, petitioner entered a liquor store,

2 and commenced a robbery.  The dispute over the use of this robbery in the penalty phase is not

3 over the robbery *per se*, but whether the prosecution endeavored to demonstrate to the penalty

4 phase jury that petitioner actually had possession of a gun during the robbery, when the evidence

5 showed that petitioner was pretending to have a gun.  Petitioner asserts that the prosecution not

6 only engaged in presenting false evidence, but that the prosecution did not submit exculpatory

7 evidence, i.e., the non-possession of a gun, to the defense.  Horiuchi could not testify in that he

8 had died prior to the penalty phase.  The evidence submitted to the jury consisted of a reading of

9 the preliminary hearing testimony in the robbery case as well as the submission of an exhibit

10 involving the post-preliminary hearing plea bargain.  The prosecutor in petitioner's capital case

11 in his opening statement told the jury:

12     You'll also hear evidence concerning a robbery of a liquor store that occurred in
       Southgate, which is down in the Los Angeles area in 1980 where a Mr. Horiuchi,
13     who is now deceased was at his liquor store with his wife and other employees
       when the defendant came in and held him up telling Mr. Horiuchi that he had a gun,
14     and took two hundred and fifty to three hundred dollars from him.

15     Officer Smith, who then and now is a Southgate police officer will tell you about
       responding to the scene of that robbery chasing and apprehending the defendant,
16     and some of the comments that the defendant made after he was arrested.

17 RT 3834.

18  The Horiuchi testimony given to the jury reads as follows in pertinent part:

19     QUESTION: "When Mr. Lewis, the defendant in this case [the Horiuchi robbery]
       walked into your store, what did he say?
20     ANSWER: " He softly said something.  And I am a little hard of hearing.  And I
       didn't believe what I was hearing.  I didn't believe it was a holdup.
21     QUESTION: "Would you tell the judge what Mr. Milton Lewis said to you.
       ANSWER: "He said, "I have a gun," and I didn't believe him and I shoved the
22     groceries that someone else had towards him and I stated "get away."
       QUESTION: "When he said I had a gun, he was doing something with his hands?
23     ANSWER: "He had it behind a big straw hat.
       QUESTION: "Did he tell you he had a gun?
24     ANSWER: "Yes.
       QUESTION: "Did he hold his straw hat over some object he had in his hand?
25     ANSWER:   "Yes.  He said "I don't want to shoot you."  Then I realized it must
       be a gun.
26                                    ***

4

1    QUESTION: " Were you afraid that the defendant had a gun?
     ANSWER: " Well, I wasn't afraid.
2

3  RT 3853-3855.

4    Officer Smith from Southgate, then testified.  Of pertinence here, Smith said that

5  after he had responded to a robbery alarm, he noticed a black male running across the street and

6  down an alley.  After a short chase, Smith detained the man, whom he identified as Lewis

7  (petitioner).  Lewis did not have a hat at this time.  Smith noticed that Lewis had been running

8  hard, and look scruffed up from his running.  Lewis initially demurred to being involved in any

9  robbery, but later being brought back to Horuichi, Lewis was identified as the robber.  Upon

10  booking, Lewis told the Officer to the effect: "I [Officer Smith] didn't have a knife and I didn't

11  have a gun and there is no way you're going to put this on me...."  RT 3864-3867.  On cross

12  examination, defense counsel brought out that the police officer reported at the time of the arrest,

13  that Lewis had "simulated use of a weapon."  RT 3872-73.  On re-direct, Smith testified that

14  petitioner had become manipulative and defiant upon presentation at the jail—Lewis stressed that

15  he could not be convicted unless a gun were to be found.  RT 3874-75.

16    Trial Exhibit 35, the court record of the Horuichi plea bargain and sentence, was

17  received in connection with the Horuichi incident.  The jury had access to the exhibit.  This

18  exhibit, attached to petitioner's reply brief, contained the information (charging robbery use of a

19  firearm in connection with a robbery), the plea agreement, relating that the prosecutor would not

20  offer proof on the use of a gun charge, and finally, the court minutes which read in pertinent part:

21    The People do not present any evidence on the use allegation.  The Court finds the
     allegation not true.
22

23  Exhibit 35 admitted at RT 3958.

24    In final argument, the prosecutor referenced only Officer Smith's testimony with

25  respect to the comments made by petitioner to the effect that he could not prove the robbery

26  without a gun.  The point of the prosecutor's reference was to show that petitioner became

1  defiant and manipulative even after he had been arrested and presented to the jail.  RT 3991-92.

2  *Procedural Background*

3      The procedural background for this issue is stated in the opinion of the California

4  Supreme Court.  While the specific issues in this habeas petition were not presented on direct

5  review, the state supreme court did decide related issues such that much of its commentary has

6  relevance here.  The commentary on the procedural issues is as follows.

7      The prosecutor had intended to also call as a witness the victim of the robbery,
   Kiro Horiuchi, but Horiuchi died before the penalty phase began.  The prosecutor
8  therefore sought to admit Horiuchi's 1980 preliminary hearing testimony under
   Evidence Code section 1291.  After finding the witness unavailable, the trial court
9  considered defense hearsay and relevancy objections to the evidence.  With
   respect to relevancy, defense counsel pointed out that the transcript makes
10 repeated references to defendant's use of a gun, contrary to a specific "not true"
   finding by the trial court on a firearm use allegation charged.  Referring to the
11 docket sheet in the prior matter, counsel observed that the case apparently
   involved a court trial at which the prosecution presented no evidence of gun use,
12 and counsel noted that the trial court made an express "not true" finding on the
   sentencing allegation.  He argued that because there was a "not true" finding on
13 the gun use, the issue was not relevant and the prosecutor should not be permitted
   to relitigate it.
14
   The prosecutor challenged defense counsel's characterization of the prior
15 proceeding.  Quoting from the minute order that reflected the trial court's "not
   true" finding, the prosecutor pointed out that defendant's 1980 robbery
16 conviction, including the absence of evidence in support of the gun use allegation,
   was the result of a plea bargain.  As he noted, the minute order included the
17 notation "DA will not offer proof on [section] 12022.5, settlement is mid-term
   three years or less with probation open up to five years."  He argued further that
18 the jury was entitled to know the facts surrounding the prior violent incident,
   whether or not a conviction was obtained.
19
   The trial court agreed with the prosecutor and found that the 1980 robbery
20 conviction was the result of a plea bargain that included dropping the firearm-use
   allegation.  It further agreed that the details of an alleged crime of violence,
21 whether or not a conviction occurred, could be considered by the jury and that
   robbery, by definition, is such a crime.  The trial court then considered defense
22 counsel's objections to specific portions of the offered transcript and ordered one
   of the witness's statements redacted to omit reference to a hearsay statement by
23 the witness's wife.

24 People v. Lewis, 25 Cal. 4th at 657-658, 106 Cal. Rptr. 2d at 667, 668.

25     Moreover, again, while the state supreme court was deciding issues other than

26 what petitioner specifically brings here, its commentary concerning the record in deciding the

propriety of admitting the Horiuchi evidence under California law is very relevant:

> Here, we will assume, without deciding, that the trial court's "not true" finding on the gun use was a "'judicial determination with respect to the truth or falsity of the charge'" (People v. Bacigalupo, supra, 1 Cal. 4th at 131, 2 Cal. Rptr. 2d 335, 820 P.2d 559), barring its use at the penalty phase [because facts underlying "acquittals" cannot be presented at the penalty phase]. Nonetheless, there was no error in admitting the prior preliminary hearing testimony to show the details and circumstances underlying the offense of which defendant was convicted, namely, the robbery itself. Significantly, the victim did not testify that he ever saw defendant holding a gun. Rather, the victim said defendant told him he had a gun and did not want to shoot. Defendant's threat to use a possibly nonexistent gun was thus a relevant circumstance underlying the robbery, which involves the felonious taking of the victim's personal property from his person and against his will by force or fear.

> ***

> Nor did its admission result in any unfairness. [citation omitted]. As noted, the evidence was limited to the facts supporting the prior conviction and did not indicate that defendant had in fact used a gun in the commission of that offense. [citation omitted]. Moreover, the jury was informed of the "not true" finding on the gun-use enhancement and heard testimony by the investigating officer in the 1980 robbery case about his notation in the police report that defendant's modus operandi appeared to be a "simulated gun."

People v. Lewis, 25 Cal. 4th at 659, 106 Cal. Rptr. 2d at 668-669.

*Discussion*

    A. Legal Standards

        The AEDPA applies to this petition for habeas corpus which was filed after the AEDPA became effective. The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

        In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies

7

1   to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

2   Court on a point of law, or (2) if the state court case is materially indistinguishable from a

3   Supreme Court case, i.e., on point factually, yet the legal result is opposite.

4          "Unreasonable application" of established law, on the other hand, applies to

5   mixed questions of law and fact, that is, the application of law to fact where there are no factually

6   on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

7   Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-21 (2000).  It is this prong of the

8   AEDPA standard of review which directs deference to be paid to state court decisions.  While the

9   deference is not blindly automatic, "the most important point is that an *unreasonable* application

10  of federal law is different from an incorrect application of law....[A] federal habeas court may not

11  issue the writ simply because that court concludes in its independent judgment that the relevant

12  state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

13  that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

14  1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

15  objectively unreasonable nature of the state court decision in light of controlling Supreme Court

16  authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

17         The state courts need not have cited to federal authority, or even have indicated

18  awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S.

19  Ct. 362  (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

20  contrary to, or an unreasonable application of, established Supreme Court authority. Id.  An

21  unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

22  occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76 , 123 S. Ct. 1166, 1175 (2003).  Moreover,

23  the established Supreme Court authority reviewed must be a pronouncement on constitutional

24  principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

25  binding only on federal courts. Early v. Packer, 537 U.S. at 10, 123 S. Ct. at 366.

26  \\\\\

8

1    However, where the state courts have not addressed the constitutional issue in

2    dispute in any reasoned opinion, the federal court will independently review the record in

3    adjudication of that issue.  "Independent review of the record is not de novo review of the

4    constitutional issue, but rather, the only method by which we can determine whether a silent state

5    court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

6    2003).

7        B.  Procedural Bar

8        Respondent asserts California's timeliness bar with respect to Claims 1, 2 and 3 in

9    that the state supreme court denied these habeas claims on timeliness grounds.  Ordinarily, the

10   undersigned would adjudicate the procedural bar ahead of any ruling on the merits, but such a

11   priority of ruling is not required by law.  "We do not mean to suggest that the procedural-bar

12   issue must invariably be resolved first; only that it ordinarily should be."  Lambrix v. Singletary,

13   520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997); see also Franklin v. Johnson, 290 F.3d 1223,

14   1232 (9th Cir. 2002).  There are good reasons for not adjudicating the bar in this case at this

15   juncture.

16       First, of course, for the reasons expressed at length below, the decision on the

17   merits is favorable to respondent, making the procedural bar issue much less important for the

18   party asserting it.  Secondly, the procedural bar issue has been raised in an odd context.  This

19   case had been stayed for exhaustion purposes.  When petitioner was finished with exhaustion, an

20   amended petition was filed in this court without any request to lift the stay.  Petitioner asserts that

21   respondent may not raise a procedural default defense because the time to answer has long since

22   passed.  However, since no order ever issued lifting the stay, the requirement to answer, as set

23   forth in the federal rules and local rules, never came into being.  The first document filed after

24   the amended petition was *petitioner's* motion for summary judgment.  Respondent raised the

25   \\\\\

26   \\\\\

1   procedural default issue at the first opportunity, i.e., in her cross-motion for summary judgment.[3]

2   But the assertion of the procedural default at that juncture itself raised awkward problems.

3   According to Bennett v. Mueller, 322 F.3d 573 (9th Cir. 2003), respondent must first raise the

4   defense, followed by petitioner's specifications about why the defense is not adequate (well

5   established and regularly applied), followed by respondent's proof to the contrary.  Having raised

6   the defense in a cross-motion, petitioner may make his specification, but there is no further,

7   ordinary procedural vehicle for respondent to make his proof of adequacy presentation.

8   Combined with what is a naturally thorny issue on the default merits, the procedural posture

9   makes ruling on procedural default unwieldy.  Thus, the undersigned turns to the substantive

10  merits.

11       C.  Confrontation Clause (Claim 1)

12           Petitioner relies on the recent Supreme Court case of Crawford v. Washington,

13  541 U.S. 36, 124 S. Ct. 1354 (2004), which held that prior testimonial statements could not be

14  admitted in light of the Confrontation Clause unless the statement had been made in a situation

15  where an opportunity for meaningful cross-examination existed.  Petitioner's reliance on this

16  case is misplaced.

17           There is no doubt that Crawford is an important statement on the value of cross-

18  examination and confrontation; indeed, the Ninth Circuit has found that it announces one of

19  those infrequent watershed due process rules which may be retroactively applied to convictions

20  otherwise final.  Bocting v. Bayer, 399 F.3d 1010, 1012, amended 408 F.3d 1127 (9th Cir.

21  2005),[4]  Nevertheless, Crawford cannot be read so broadly so as to render unconstitutional every

22  limitation of cross-examination.

23

24          [3] Petitioner's assertion that an affirmative defense can never be first raised by motion, but
     rather must always be initially raised in an answer, lack s merit.

25          [4] The issue of Crawford's retroactivity is sure to be one decided in the future by the
     Supreme Court.  Already, a circuit has disagreed with the Bocting retroactivity holding.  See
26  Murillo v. Frank, 402 F.3d 786 (7th Cir. 2005).

First, <u>Crawford</u> dealt only with the need *per se* for prior cross-examination before testimonial, out-of-court statements would be admitted at trial for unavailable witnesses.  It said nothing about the scope of permitted cross-examination.  Rather, the general rule that: "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  <u>Delaware v. Fensterer</u>, 474 U.S. 15, 20, 106 S. Ct. 292 (1985), remains the rule after <u>Crawford</u> as well.

Most importantly, the issue of use of preliminary hearing testimony has been discussed by the Supreme Court and post-<u>Crawford</u> Circuit courts.

In <u>Roberts</u>, [<u>Ohio v. Roberts</u>, 448 U.S. 56, 100 S.Ct. 2531 (1980)] the Court determined that the preliminary hearing transcript bore "sufficient 'indicia of reliability' and afforded 'the trier of fact a satisfactory basis for evaluating the truth of the prior statement'" because counsel had "an adequate opportunity to cross-examine [the witness], and counsel ... availed himself of that opportunity." <u>Id.</u> at 73, 100 S.Ct. 2531 (quoting <u>California v. Green</u>, 399 U.S. 149, 161, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (alterations in original)).  Expounding upon <u>Roberts</u>, the Supreme Court has explained that an "adequate opportunity" does not necessarily mean cross-examination of the length and breadth afforded during trial: "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  <u>Delaware v. Fensterer</u>, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985); <u>see</u> <u>also</u> <u>Green</u>, 399 U.S. at 166, 90 S.Ct. 1930 (noting that even though preliminary hearing testimony is often a "less searching exploration into the merits," the opportunity to cross-examine the witness may still satisfy the Confrontation Clause).

In applying <u>Roberts</u>, this circuit has upheld the use of preliminary hearing testimony against a defendant when the witness is unavailable. In <u>Haywood</u>, we acknowledged that preliminary hearing testimony is often a "'less searching exploration into the merits'" than cross-examination at trial, <u>id.</u> at 462 (quoting <u>Barber v. Page</u>, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)), because the only function of a preliminary hearing is to determine whether probable cause exists for holding the accused for trial, <u>see</u> <u>id.</u> at 461.  Despite the limited scope of the inquiry, however, we explained that preliminary hearing testimony is not "inherently unreliable" simply because it was "not subjected to as extensive cross-examination as it could have been at trial." <u>Id.</u> at 462.  We determined that the testimony in <u>Haywood</u> met the second prong of the <u>Roberts</u> test because it "was given under circumstances that were intended to impress upon him the importance of telling the truth." <u>Id.</u> at 463. It was not a "casual statement made in an informal setting" in which one reasonably might have felt "at liberty to exaggerate or color his version of an event." <u>Id.</u> Further, in <u>Haywood</u>, the witness "testified in open court under oath and subject to criminal penalties for perjury."

11

1   Id.  "His testimony was not about someone far removed from the proceedings;
    [the defendant] was seated directly before him...."  Id.  We explained that,
2   although counsel's opportunity to cross-examine the witness was more limited
    than at trial, it was "more than adequate to allow him to determine precisely what
3   [the witness] claimed to know and the claimed basis for his knowledge."  Id.

4   Owens v. Frank, 394 F.3d 490, 502-03 (7th Cir. 2005).

5          Thus, it is not necessary that the cross-examination pre-trial precisely mirror the

6   type of cross-examination that *might* be permitted or available at trial.  Petitioner may argue that

7   Roberts was in fact overruled by Crawford.  While it is true that Crawford replaced the "indicia

8   of reliability" test used by Roberts to analyze all out-of-court testimonial statements with a

9   requirement *per se* of cross-examination, the facts of Roberts itself were given as an example of

10  when prior testimony should be permitted.  Crawford, 541 U.S. at 58, 124 S. Ct. at 1368.  As

11  long as a defendant was given an *adequate* pre-trial opportunity to cross-examine, a witness' read

12  or videotaped testimony at trial will not be precluded simply because all possible information

13  was not supplied to counsel prior to a pre-trial deposition.

14         Applying the above framework here it is clear that petitioner's counsel at the

15  Horiuchi preliminary hearing had an adequate opportunity for cross-examination.  Petitioner has

16  presented no evidence that petitioner's opportunity was truncated in any way.  Moreover, one

17  could validly question the need for much cross-examination, especially about use of the gun,

18  after Horiuchi's testimony and the fact that the police report at the time indicated only that

19  petitioner had simulated the use of a gun.  Horiuchi never testified that he saw a gun—only that

20  he may have inferred the presence of a gun.  Indeed, Horiuchi ultimately testified that he was not

21  afraid that petitioner might use a gun.  Why would counsel at the Horiuchi preliminary hearing

22  possibly stir up adverse gun testimony by lengthy and detailed cross-examination?  The adage

23  about not asking too many questions on cross-examination comes to mind.[5]  Nevertheless, the

24

25         [5] Petitioner asserts that the prosecutor added the gun charge after the preliminary
    hearing—therefore, petitioner's counsel at the time would not have had motive to cross-examine
26  on the gun.  Notwithstanding the existence of a pending gun charge or not, counsel would have

1   preliminary hearing testimony will not become inadmissible merely because counsel at the time

2   did not want to beat a dead horse, or worse yet, have the horse get up and kick him.

3        Therefore, assuming that <u>Crawford</u> would be applied retroactively, no <u>Crawford</u>

4   violation took place.[6]

5        The undersigned is clear in his mind that no <u>Crawford</u> violation took place;

6   therefore it should be unnecessary to discuss prejudice from an assumed error.  Nevertheless, the

7   court will discuss prejudice for the sake of completeness.

8        Petitioner is correct that the appropriate standard under which to view prejudice is

9   set forth by <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638, 113 S. Ct. 1710, 1722 (1993), i.e., did the

10  claimed error have a "substantial and injurious effect or influence in determining the jury's

11  verdict."  The claimed error here certainly did not.

12       The fact of the Horiuchi robbery would surely have been admissible regardless of

13  the reading of the preliminary hearing testimony.  Petitioner's stressing the use of a gun as some

14  type of geometrical magnification of the violence of the robbery act is hyperbole.  Robberies are

15  violent with or without a gun.  Moreover, petitioner's solution—keep all the facts of the robbery

16  away from the jury—would simply have permitted the jury to wonder how the robbery was

17  effectuated.  It takes no great leap of logic, and is a reasonable inference from the fact of robbery,

18  to assume that the robbery was conducted in such a manner that the victim felt intimidated

19  enough by threatened violence to turn over money.  Perhaps the jurors would simply have

20  assumed the worst.

21  _____

22  had plenty of motive to ferret out the true facts surrounding the robbery including the presence or
    absence of a gun.  The fact remains  that reasonable counsel may well have determined to let well
23  enough alone regardless.  There was no hard evidence of the actual use of a gun, and plenty of
    evidence to contradict the actual use of a gun.  Prosecutors often puff and bluster with additional
24  charges on flimsy evidence so that they can be bargained away for a plea to the "real" charge.  In
    this case, that is exactly what transpired.

25       [6] To the extent that petitioner argues that the admission of Horiuchi's testimony was
    unreliable even under California law, such an assertion is non-actionable in the context of this
26  federal habeas claim.

But most importantly, the other very violent conduct exhibited by petitioner in his lifetime reduces the prejudice of the gun use in this robbery to negligible proportions.  Against the backdrop of the charges involved in the death penalty case, sticking a knife in the husband's neck, killing him, and then sticking a knife in the wife's neck as she heroically attempted to rescue her husband, petitioner's penchant for violence was highlighted by beatings inflicted on his wife, beating another woman unconscious, stabbing his uncle twice, shooting at the vehicle of his wife's father, and bringing a gun into a bar to harm one with whom he had a previous argument.  And, added in any event, would be the fact of the Horiuchi robbery.  Petitioner asserts in light of all this that the jury would have been unduly swayed towards imposing the death penalty by Horiuchi's testimony where it could possibly be inferred that petitioner possessed a gun during the robbery, when petitioner had only simulated the gun use.  Petitioner's claimed prejudice falls far short of "substantial," and for "injurious," the claimed error is the equivalent of a scratch.

D. <u>Use of Horiuchi's Testimony and Due Process</u> (Claim 2)

Petitioner complains that the trial judge in this case allowed Horiuchi's testimony to be read before the jury on account of his "unauthorized" and "wrong" finding that the dropping of the gun charge by the Horiuchi robbery prosecutor was a result of a plea bargain. Petitioner contends that the sentencing judge in the Horiuchi case "acquitted" petitioner of the gun use allegation.  Petitioner focuses on the Horiuchi sentencing transcript where the facts surrounding the plea bargain were discussed: "The court finds that the offense is not a violent crime resulting in injury or death to the victim."  <u>See</u> Attachment 1 to Motion.  Petitioner (at page 14 of his Points and Authorities) highlights the phrase "is not a violent crime" as if it could be divorced from the remainder of the sentence "resulting in injury or death to the victim."  Surely the sentencing judge was not declaring that the robbery itself was not a violent crime.  Petitioner continues: "Thereafter, the Los Angeles County Deputy DA stated: "May the record reflect, Your Honor, that part of the *case settlement* was that no proof ever has been offered as to the use

1    allegation.  If I may state the reason for that: The prosecution can't prove that he had a gun.  I

2    would move that it be stricken at this time." (emphasis added).  The court then struck the use

3    allegation so it could not be used for sentencing.  Petitioner then faults the trial judge in the death

4    penalty case for permitting the "acquittal" to be used in violation of California law (an issue

5    decided by the state supreme court).

6           Petitioner could well be correct that the capital case trial judge's interpretation of

7    the criminal records that he had (he evidently did not have the sentencing transcript) was

8    erroneous.  But, even the sentencing transcript references the dropping of the charges as part of

9    the "case settlement."  However, in fairness to petitioner, the reason for the settlement was not

10   the dropping of a provable charge just to entice the defendant into a plea bargain, but the fact that

11   no evidence existed to prove the charge beyond a reasonable doubt.  Assuming that this cryptic

12   colloquy at sentencing and in connection with a "case settlement" constitutes an "acquittal," and

13   further assuming that authorizing in the penalty phase an allegation of gun use for which

14   petitioner was "acquitted" is a federal due process violation, the trial court in petitioner's capital

15   case erred in its analysis of the preliminary fact question of the use allegation's admissibility.

16   But the asserted error here was completely harmless.[7]

17          As the state supreme court held, even assuming that the trial judge were to be in

18   error concerning "plea bargain" versus "acquittal" on the gun use charge, the *very same* Horiuchi

19   testimony would have been read to the jury anyway.  "[Petitioner's] threat to use a possibly non-

20   existent gun was thus a relevant circumstance underlying the robbery... [b]ecause the preliminary

21   hearing testimony, including its references to defendant's claimed possession of a gun, was

22   admitted to show the circumstances relating to the bargained-for robbery conviction, [it was] a

23

24          [7]  The undersigned need not discuss in detail petitioner's somewhat strained federal
     argument that the trial judge's "finding" from a review of the Hoiuchi record that the use charge
25   was dropped out as a result of a plea bargain, as opposed to insufficient evidence, created a
     federal claim that petitioner was denied his right to confront witnesses at a factual hearing.  The
26   asserted "factual hearing" on a preliminary fact was of no prejudicial consequence whatsoever.

1    proper consideration for the penalty jury...." <u>People v. Lewis</u>, 25 Cal. 4th at 659, 106 Cal. Rptr.

2    2d at 669.  In other words, assuming petitioner did not use a gun, the robbery itself and

3    petitioner's use of a simulated gun, as precisely set forth in Horiuchi's testimony, could still be

4    presented to the jury.  As is sometimes the case, a trial judge gets the result right for the wrong

5    reason.  Such an error is simply a "so what."

6            Petitioner might still have a prejudice point if the prosecutor had told the jury that

7    petitioner actually possessed a gun.  But as seen from the quotes above—the prosecutor did not

8    so argue: "You'll also hear evidence concerning a robbery of a liquor store that occurred in

9    Southgate, which is down in the Los Angeles area in 1980 where a Mr. Horiuchi, who is now

10    deceased was at his liquor store with his wife and other employees when the defendant came in

11    and held him up *telling Mr. Horiuchi that he had a gun*, and took two hundred and fifty to three

12    hundred dollars from him." (emphasis added).  The prosecutor told it "like it was."  In addition,

13    defense counsel brought out the fact from Officer Smith that petitioner had only simulated the

14    use of the gun.  The jury was given an exhibit which expressly stated: "The People do not present

15    any evidence on the use allegation.  The Court finds the allegation not true."  No jury could have

16    reasonably thought other than that petitioner did not have a gun—he just pretended to have a gun.

17            The evidence came in for the appropriate purpose set forth by the California

18    Supreme Court.  Any error by the trial court over the characterization of dropping of the use

19    allegation at its preliminary hearing outside the presence of the jury was irrelevant.

20         E.  <u>Misrepresentation of Evidence to the Jury</u> (Claim 2)

21            It hardly needs saying that a prosecutor's presenting false, material evidence to the

22    jury has long constituted a constitutional violation.  <u>Mooney v. Holohan</u>, 294 U.S. 103, 112

23    (1935); <u>see also</u> <u>United States v. Le Page</u>, 231 F.3d 488, 491 (9th Cir. 2000).  However, the

24    factual predicate of such a violation—the misrepresentation of material evidence, is completely

25    lacking in this case.

26    \\\\\

1          Petitioner first posits as a misrepresentation the prosecutor's  reference to the

2     court outside the presence of the jury concerning the Horiuchi robbery as "an act of violence or a

3     threat of violence. " RT 3814.  Even assuming that a reference in oral argument to the judge, but

4     not to the jury, constitutes the presentation of false evidence, petitioner is mistaken.  The

5     sentencing court in the Horiuchi robbery did not find that robbery was not a crime of violence.  It

6     found: "The court finds that the offense is not a violent crime resulting in injury or death to the

7     victim."  <u>See</u> Points and Authorities at 14.  Petitioner plucks for review the phrase "is not a

8     violent crime" as if the sentencing court uttered that phrase without the remainder of the

9     sentence.  As previously explicated, the *entire* phrase must be read to get the sense of the

10    sentence, i.e., "is not a violent crime resulting in injury or death to the victim."  This sentence

11    does not mean that robbery *per se* is not a violent crime.  The court will not ascribe to the verbal

12    utterings of the sentencing judge at hearing a meaning out of sense with his sentence, and  more

13    importantly, a patent error of law.  "The irrefutable fact is that robbery is a crime of violence."

14    <u>Lopez v. McMahon</u>, 205 Cal. App. 3d 1510, 1518, 253 Cal. Rptr. 321, 325 (1988); <u>see</u> <u>also</u>

15    <u>People v. Garcia</u>, 107 Cal. App. 4th 1159, 1163 (2003) ("Unlike robbery or carjacking, which are

16    crimes of violence..."). This is a universal concept, <u>see</u> United States Sentencing Guidelines

17    4B1.2, application note 1,listing robbery as a crime of violence.  While robbery will not always

18    result in an injury or death to the victim, it remains a crime of violence.  Thus, this first allegation

19    of misrepresentation is meritless.

20          Secondly, petitioner faults the prosecutor for not reading to the jury the objection

21    colloquy and the limitation on admission that the Horiuchi preliminary hearing judge made with

22    respect part of the Horiuchi testimony.  During the Horiuchi preliminary hearing, the following

23    occurred:

24    \\\\\

25    \\\\\

26    \\\\\

17

1   Question: "Did he hold his straw hat over some object he had in his hand?
2   Answer: "Yes.  He said "I don't want to shoot you."  Then I realized it must be a gun.[8]

3   RT 3854.

4   Petitioner cites to the CT (427) showing that after the above answer, the defense attorney at the

5   time objected: "Motion to strike as a conclusion of the witness."  The preliminary hearing judge

6   ruled: "No, I believe it states the mind of this particular man at that time of the perpetration of the

7   act.  It will be in for that limited purpose."

8   At petitioner's penalty phase trial, and again outside the jury's presence, defense

9   counsel argued that the entire question and answer should be stricken as an erroneous admission

10  of evidence.  The trial judge disagreed, and at that point defense counsel requested that the

11  limitation be read.  The prosecutor responded: "I'll read the whole thing."  RT 3826.  The

12  prosecutor then repeated his willingness to have the limitation read.  RT 3826-27.  Petitioner

13  believes that the failure of the prosecutor to read the limitation to the jury constitutes the

14  knowing presentation of false testimony or evidence.  The undersigned disagrees.

15  First, it is fairly evident from the entire context of the Horiuchi testimony, in

16  which he stated that he did not actually see a gun, that his last statement concluding that it "must

17  have been" a gun was surmise on his part.  Any reasonable juror would have easily seen it as

18  such even without the reading of the "limitation."  Moreover, as seen from the previous

19  discussion, the prosecutor never attempted to tell the jury that petitioner actually had a gun.

20  More importantly, defense counsel got the police officer involved to repeat his initial conclusions

21  that petitioner "simulated" the use of a gun.  Finally, the one exhibit given to the jury concerning

22  the Horiuchi evidence unequivocally stated (in readable script) that the Horiuchi judge

23  affirmatively found the gun use allegation not to be true.  In light of the entire context of the

24  Horiuchi evidence, there simply was not any reasonable way to characterize the inadvertent, or

25

26      [8]  The punctuation of the court reporter as it appears in the RT is set forth here, even though that punctuation may be incorrect.

18

1   even purposeful, misreading of the preliminary hearing transcript as a *material*

2   misrepresentation.

3        F.   <u>Failure to Disclose Exculpatory Evidence</u> (Claim 3)

4             Continuing with the theme, petitioner asserts that the failure of the prosecutor to

5   timely turn over the entire Horiuchi file to petitioner's trial counsel in the death penalty case

6   violated the rule of <u>Brady</u>—turn over "exculpatory" or "impeaching" evidence at a meaningful

7   time.   Petitioner never details what part of the file was not turned over aside from the Horiuchi

8   sentencing transcript—just that the district attorney "hand picked" portions of the file to turn

9   over.   No meaningful <u>Brady</u> claim is made out with such allegations.

10          No one doubts the necessity of the prosecution's turning over

11   exculpatory/impeaching evidence to the defense.   <u>See</u> <u>Kyles v. Whitley</u>, 514 U.S. 419, (1995).

12   However, as with all good rules, there are respected boundaries as well.   In order for a <u>Brady</u>

13   violation to take place, the evidence withheld must be "material," and the defense must have not

14   had possession or access to the same type evidence.   In other words, <u>Brady</u> violations are not

15   technical violations.

16          Petitioner alleges that "full disclosure" would have revealed that the Horiuchi

17   robbery would have shown : 1 – that the Horiuchi robbery "was not a crime through the use of

18   violence," 2 – "the DA had no evidence that petitioner used a firearm," and 3 – the firearm

19   allegation was dismissed for want of evidence before a plea bargain and sentence was entered on

20   the remaining robbery charge.   Either of these allegations are simply wrong or they do not

21   demonstrate <u>Brady</u> violations given the evidence to which the defense did have access.

22          First, the undersigned will state once again—robbery is universally considered to

23   be a crime of violence, whether accompanied by gun brandishing or simulated gun brandishing,

24   whether or not a victim was injured or uninjured.   <u>Lopez</u>, <u>Garcia</u>, 205 Cal. App. 3d at 1518; 107

25   Cal. App. 4th at 1163; <u>see</u>  <u>People v. Wolcott</u>, 34 Cal. 3d 92, 99, 192 Cal. Rptr. 748, 754 (1983)

26   ("The threat to inflict injury required for a robbery, moreover, need not be accompanied by the

present ability to carry it out.  Thus, the use of an unloaded gun (see <u>People v. Aranda </u>(1965) 63 Cal. 2d 518, 532, 47 Cal. Rptr. 353, 407 P.2d 265; <u>People v. Raner</u> (1948) 86 Cal. App. 2d 107, 111, 194 P.2d 37), a toy gun (see <u>People v. Gardner</u> (1954) 128 Cal. App. 2d 1, 4, 274 P.2d 908) or a simulated gun (<u>People v. Gutkowsky </u>(1950) 100 Cal. App. 2d 635, 636- 637, 224 P.2d 95) is sufficient if it causes the victim to part with his property.").  Moreover, the jury was quite factually aware the Horiuchi had not been injured—the caption description for the robbery "violent" (correct) or robbery "non-violent" (petitioner's oxymoronic definition) would not have made an iota of difference.  Thus, the alleged failure of the prosecution to turn over the Horichi sentencing transcript so that the cryptic statement of the sentencing judge (the offense is not a violent crime resulting in injury or death to the victim) could not *partially* be argued by defense counsel has no merit.

Next, petitioner contends that the DA (Horiuchi case) had no evidence of petitioner's use of a gun.  First, we will never know what petitioner actually held underneath his straw hat, or whether he had a gun and threw it away after the robbery.  However, the DA understood that he could not prove use of a gun, and made this a part of the plea bargain.  This is precisely stated in Exhibit 35 to which the defense had access.  That there may have been additional evidence of this precisely stated fact does not transform the withholding of identical information into a <u>Brady</u> violation.  <u>Compare</u> the allegedly "withheld" sentencing transcript:

> Mr. Gosney: May the record reflect, Your Honor, that part of the case settlement was that no proof ever has been offered as to the use allegation.  If I may state the reason for that: The prosecution can't prove that he had a gun.  I would move that [the use allegation] be stricken.
> The Court: That will be stricken.

with Exhibit 35 at 440-41 (the court minutes) received by petitioner's penalty phase jury:

> The People do not present any evidence on the use allegation.
> The Court finds the use allegation not true.
> The use allegation is stricken by the People.

The undersigned does not observe any meaningful difference between what was received by defense counsel (and presented to the jury) with what was allegedly withheld.  Petitioner's

1  argument to the contrary smacks of hairsplitting.  Petitioner alleges that full disclosure would

2  have indicated that the firearm charge was dismissed for want of evidence.  By now, it should be

3  clear that the defense had such information, and such information was presented to the jury

4  (Exhibit 35).And again, at the risk of repetition, defense counsel asked a question to the police

5  officer based upon information he had received that petitioner's use of the gun was simulated.

6  Defense counsel's not having been provided access by the prosecution to everything redundant

7  on the subject cannot be a material <u>Brady</u> violation.  <u>Coleman v. Mitchell</u>, 268 F.3d 417, 438 (6th

8  Cir. 2001); <u>U.S. v. Zeago</u>, 243 F.3d 428, 431 (8th Cir. 2001); <u>U.S. v. Middlemiss</u>, 217 F.3d 112,

9  123 (2d Cir. 2000); <u>U.S. v. Zagari</u>, 111 F.3d 307, 320 (2d Cir. 1997); <u>U.S.v. Bracy</u>, 67 F.3d

10  1421, 1428-29 (9th Cir. 1995).

11        G.  <u>Ineffective Assistance of Counsel</u> (Claim 7)[9]

12            The test for demonstrating ineffective assistance of counsel is set forth in

13  <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984).  First, a petitioner must show

14  that, considering all the circumstances, counsel's performance fell below an objective standard of

15  reasonableness.  <u>Strickland</u>, 466 U.S. at 688, 104 S. Ct. at 2065.  To this end, the petitioner must

16  identify the acts or omissions that are alleged not to have been the result of reasonable

17  professional judgment.  <u>Id</u>. at 690, 104 S. Ct. at 2066.  The federal court must then determine

18  whether in light of all the circumstances, the identified acts or omissions were outside the wide

19  range of professional competent assistance.  <u>Id</u>., 104 S. Ct. at 2066.  "We strongly presume that

20  counsel's conduct was within the wide range of reasonable assistance, and that he exercised

21  acceptable professional judgment in all significant decisions made."  <u>Hughes v. Borg</u>, 898 F.2d

22  695, 702 (9th Cir. 1990) (citing <u>Strickland</u> at 466 U.S. at 689, 104 S. Ct. at 2065).  Secondly, if

23  counsel has been found to have acted unreasonably, the court determines whether the outcome of

24  the proceeding would have been different, i.e., whether its confidence in the outcome was

25

26        [9]  To the extent that respondent asserts that Claim 7 is not exhausted, the undersigned
rules on the merits as permitted by 28 U.S.C. § 2254(b)(2).

1   undermined thereby.  Boyde v. Brown, 404 F.3d 1159, 1180 (9th Cir. 2005) citing Strickland,

2   466 U.S. at 694, 104 S. Ct. 2052.

3          Petitioner asserts that his counsel was ineffective in not discovering all pertinent

4   evidence to show that the Horiuchi crime was not one of force or violence, and that the dismissal

5   of the gun charge was more than just a simple "deal" made by the prosecution to acquire a guilty

6   plea.  For the reasons previously stated, the Horiuchi robbery was a crime of force and violence

7   as a matter of law.  Thus, petitioner's counsel could not have been deficient in acquiring

8   information purporting to show that it was not.  Also, as previously related, defense counsel had

9   information, and good information, that petitioner "simulated" the use of a gun in the Horiuchi

10  case, and he was able to place such information in the record.  Equally important, the jury in

11  petitioner's capital case was given the court record which demonstrated that the Horiuchi court

12  itself had made a finding that the gun charge was "not true."  No more evidence need to have

13  been presented on this aspect of petitioner's contentions.  Defense counsel cannot have acted in a

14  grossly incompetent manner when he was able to present, or have in the record, the very evidence

15  that petitioner faults him for not presenting.

16         Even if all of the above were not true, as also set forth at length, petitioner's other

17  violent conduct reduced the materiality of the "use of gun" in the Horiuchi case to insignificant

18  status.  Petitioner could not have been prejudiced by any evidentiary omission vis-a-vis the

19  Horiuchi case.

20      H.  Evidentiary Hearing

21         Petitioner presented Claims 1, 2, 3, and 7 on the record in this case with the

22  assertion that no material issues of fact would prevent the award of partial summary judgment in

23  this case.  The court agrees that it has a full record, and that holding an evidentiary hearing would

24  serve no useful purpose.  See Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998); see also

25  Griffin v. Johnson, 350 F.3d 956, 966 (9th Cir.2003) (holding that an evidentiary hearing was not

26  necessary); Gandarela v. Johnson, 286 F.3d 1080, 1087-88 (9th Cir. 2001) (same).

22

*Conclusion*

While there remain many colorable issues to be decided in this case, Claims 1, 2, 3 and 7 should be decided in favor of respondent.  Petitioner's motion for partial summary judgment should be denied; respondent should be awarded partial summary judgment as to the above claims.

Accordingly, IT IS HEREBY ORDERED that there be no evidentiary hearing for the above listed claims;

IT IS HEREBY RECOMMENDED that partial summary judgment on the above listed claims be entered in favor of respondent on his cross-motion for summary judgment; petitioner's motion for partial summary judgment be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 7/12/05

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:gh:035
lewi0013.fr

23