1

2

3

4

5

6

7

8

9

10

11                    UNITED STATES DISTRICT COURT

12                   EASTERN DISTRICT OF CALIFORNIA

13

14                        ----oo0oo----

15

16  MILTON OTIS LEWIS,
                                  NO. CIV. S-02-0013 FCD GGH DP
17          Petitioner,

18      v.                        <u>DEATH PENALTY CASE</u>

19  JEANNE WOODFORD, Warden,      <u>MEMORANDUM AND ORDER</u>

20          Respondent.

21
                          ----oo0oo----
22

23      This matter is before the court on petitioner Milton Otis

24  Lewis' objections to the findings and recommendations of the

25  magistrate judge, filed January 23, 2007 ("F&R"), addressing

26  alleged instructional error during the guilt phase of

27  petitioner's trial and ineffective assistance of counsel claims

28  based upon petitioner's counsel's failure to request particular

1  jury instructions.[1]  For the reasons set forth below, the court

2  adopts the magistrate judge's findings and recommendations and

3  holds that respondent's motion for summary judgment is GRANTED.

4                           **BACKGROUND**

5       The court adopts the factual and procedural background set

6  forth by the magistrate judge in his findings and

7  recommendations.  (See F&R, filed January 23, 2007, at 15-20.)

8                            **STANDARD**

9       When timely objections to findings by a magistrate judge are

10  filed, the district court must conduct a de novo determination of

11  the findings and recommendations as to issues of law.  28 U.S.C.

12  § 636(b)(1).  The district court may adopt, reject, or modify in

13  part or in full the findings and recommendations.  28 U.S.C. §

14  636(b)(1)(C).

15                            **ANALYSIS**

16  **1.   Instructional Error: Involuntary Manslaughter**

17      The court adopts the analysis set forth by the magistrate

18  judge in granting respondent's motion for summary judgment on

19  petitioner's claim of a violation of his constitutional rights

20  based upon the court's failure to give an instruction on

21  voluntary or involuntary manslaughter.  The magistrate judge

22  correctly found that it was error for the state trial court to

23  refuse petitioner's request to give a jury instruction for

24  manslaughter based upon the petitioner's testimony and that of

25  others regarding intoxication.  (F&R at 48-52).  The magistrate

26  _____

27      [1]   This matter was referred to a United States magistrate
    judge pursuant to 28 U.S.C. section 636(b)(1)(B) and Eastern
28  District Local Rule 72-302.

1  judge also correctly found that petitioner could not establish

2  that the error was structural error, or "reversible per se,"

3  because there is no Supreme Court authority for such a

4  proposition; as such, petitioner bears the burden of

5  demonstrating that the error was not harmless.  See Brecht v.

6  Abrahamson, 507 U.S. 619, 638 (1993).

7       An error is not harmless if it "had a substantial and

8  injurious effect or influence in determining the jury's verdict."

9  Id.; see also Inthavong v. Lamarque, 420 F.3d 1055, 1059-60 (9th

10 Cir. 2005) (holding that the Brecht standard survived the AEDPA,

11 even though the inquiries may overlap in many cases).  If the

12 court harbors "grave doubt" as to whether the error has such a

13 substantial or injurious effect, the petitioner is entitled to

14 the writ.  Coleman v. Calderon, 210 F.3d 1047, 1051 (9th Cir.

15 2000).

16      Petitioner objects to the magistrate judge's harmless error

17 analysis.  Specifically, petitioner alleges that the trial

18 court's failure to instruct on petitioner's theory of the case,

19 voluntary or involuntary manslaughter, is reversible *per se*,

20 citing Duckett v. Godinez, 67 F.3d 734 (9th Cir. 1995).  However,

21 as noted by the magistrate judge, petitioner's reliance on

22 Duckett is misplaced. (F&R at 52).  The statement in Duckett

23 cited by petitioner refers to cases decided by the Ninth Circuit

24 on *direct appeal*. 67 F.3d at 744.  The Duckett court emphasized

25 that in reviewing cases on direct appeal, . . . [it] may require

26 the district courts to 'follow procedures deemed desirable from

27 the viewpoint of sound judicial practice although in no wise

28 commanded . . . by the Constitution.'"  Id. (quoting Cupp v.

3

1  <u>Naughten</u>, 414 U.S. 141, 146 (1973)).  The Ninth Circuit further
2  clarified that "[t]he fact that a jury instruction is inadequate
3  by Ninth Circuit direct appeal standard does not mean a
4  petitioner who relies on such an inadequacy will be entitled to
5  habeas relief from a state court conviction."  <u>Id.</u> (citing
6  <u>Estelle v. McGuire</u>, 502 U.S. 62, 71-71 (1991)).  Moreover, the
7  <u>Duckett</u> court held that the failure to give an alibi instruction,
8  which would have been reversible *per se* on direct appeal, was not
9  error of a constitutional magnitude for purposes of habeas
10 relief.  As such, the Ninth Circuit did not grant habeas relief
11 based upon the state court's failure to give the requested alibi
12 instruction.
13      Contrary to petitioner's assertion, the Ninth Circuit has
14 clearly stated that in the context of collateral review in a
15 habeas petition, even where a jury instruction is required but
16 not given, the petitioner must still "demonstrate that the
17 violation had a substantial and injurious effect on the jury's
18 deliberation and verdict."  <u>Beardslee v. Woodford</u>, 358 F.3d 560,
19 577 (9th Cir. 2004) (citing <u>Ghent v. Woodford</u>, 279 F.3d 1121,
20 1134 (9th Cir. 2002); <u>Morris v. Woodford</u>, 273 F.3d 826, 833 (9th
21 Cir. 2001) ("If the court finds constitutional error, then it
22 applies the test for harmless error.").  In <u>Beardslee</u>, the Ninth
23 Circuit addressed petitioner's claims in a habeas petition that
24 the jury should have been instructed on the lesser-included non-
25 capital offense of manslaughter, which petitioner asserted was
26 supported by the defense theory of imperfect duress.  <u>Id.</u> at 576.
27 The court held that petitioner failed to proffer any authority to
28 demonstrate that his imperfect duress theory was viable based

1  upon the evidence at trial, and thus, the manslaughter

2  instruction was not required.  Id.  However, the court noted that

3  even if such an instruction was required, habeas relief based

4  upon constitutional error could not be awarded unless petitioner

5  prevailed upon the Brecht harmless error analysis.  Id. at 577.

6  Indeed, when analyzing the trial court's failure to give a jury

7  instruction regarding a mistake of fact theory, the Beardslee

8  court undertook the Brecht harmless error analysis and held that

9  the petitioner could not meet the substantial effect standard

10 based upon the evidence at trial.  Id. at 577-78.[2]  Therefore,

11 even where the court finds constitutional error, the court must

12 still conduct a harmless error analysis in order to grant habeas

13 relief.

14     The court agrees with the magistrate judge's finding that

15 the failure to instruct the jury on voluntary or involuntary

16 manslaughter did not have a substantial and injurious effect on

17 the jury's deliberation and verdict.  (See F&R at 53-55).  At the

18 time of petitioner's trial, under California law, evidence of

19 voluntary intoxication in a homicide case could be admitted to

20 show that defendant did not form the intent to kill, even where

21 the petitioner's mental state was short of unconsciousness.

22 People v. Ray, 14 Cal. 3d 20, 30-31 (1975).[3]  Moreover, the trial

23 court has a sua sponte duty to instruct on involuntary

24

25     [2]  The magistrate judge incorrectly stated that Beardslee
   was an AEDPA case.  However, this misstatement does not affect
   the applicability of the Brecht harmless error analysis to this
26 case.

27     [3]  The Ray decision was overruled in 2000 by People v.
   Blakely, 23 Cal. 4th 82, 89 (2000).  However, Ray was the law at
28 the time of petitioner's trial in 1990.

5

1  manslaughter where there is substantial evidence that the

2  defendant was unable to entertain an intent to kill.  Id.; People

3  v. Webber, 228 Cal. App. 1146, 1162 (1991).  Substantial evidence

4  of lack of intent requires evidence of a "cause and effect

5  relationship between intoxication and lack of intent to kill."

6  Webber, 228 Cal. App. 3d at 1162.  This may be supported by lay

7  testimony regarding the petitioner's behavior or ingestion of

8  narcotics, expert testimony relating to the amount of narcotics

9  in the petitioner's bloodstream, and/or expert testimony with

10 respect to the effect of those narcotics on the petitioner's

11 ability to form sound judgments.  Id. (citing Ray, 14 Cal. 3d at

12 25).  "Lack of an intent to kill may [also] be indicated by

13 evidence that a defendant was acting like an automaton, robot-

14 like or in a trance or dazed, i.e., that the body was moving

15 without the mind."  Id. at 1163.

16      While there may have been sufficient evidence to require a

17 jury instruction on manslaughter in petitioner's trial, the

18 evidence regarding petitioner's inability to form intent due to

19 intoxication was so weak that substantial and injurious harm

20 caused by the failure to instruct on manslaughter cannot be

21 found.  Petitioner testified that he had taken two quarter gram

22 doses of methamphetamine within about five minutes of each other

23 (RT 3401-02).  He also testified that he had been drinking

24 Southern Comfort with Amy Hadix.  (RT 3406).  However, there was

25 no expert testimony regarding the amount of alcohol or narcotics

26 in his bloodstream.  Nor was there any expert testimony with

27 respect to the effect that the amount of alcohol or narcotics had

28 on petitioner's state of mind.  Further, neither Baker nor Hadix,

1  who were with petitioner immediately before and during the

2  murder, testified that petitioner was acting like he was in a

3  trance or dazed.  The most favorable evidence to petitioner was

4  the testimony of June Rice, who testified that when petitioner

5  entered her apartment after killing James Rumsey he had a glare

6  in his eyes and looked like he was in a daze.  (RT 3254).

7  However, she did not testify that petitioner was acting as if on

8  "auto-pilot"; rather, she testified that he looked like he was

9  under the influence of methamphetamine.  (Id.)

10      Moreover, petitioner's own testimony undermined his

11 contention that he was unable to form the requisite intent due to

12 his intoxication.  Petitioner testified that he "began to ball up

13 inside" when he was preparing to go down to Rice's apartment to

14 get more drugs by telling Rice and Beard that the prior drugs

15 they sold him were bad.  (RT 3407).  Petitioner stated that if

16 someone approached him like he was about to approach Beard, he

17 would be very defensive.  (Id.)  Therefore, he brought a kitchen

18 knife with him.  (RT 3408).  He admitted that this wasn't an

19 automatic action, but that he did some thinking before he decided

20 that he needed to bring the knife with him.  (RT 3448).

21 Petitioner told Hadix to stop at the Rumsey apartment.[4]  (RT

22 3409-10).  He testified that he believed it was Rice's apartment

23 and that he stabbed James Rumsey because he made a sudden

24 movement to get out of his chair that frightened petitioner.  (RT

25 3473).  However, after he stabbed both James and Helen Ramsey,

26 petitioner testified that he realized what was happening.  (RT

27 _____

28      [4]   Hadix testified that she said "Hi, Jim, how are you?"
   before petitioner entered the apartment.  (RT 3179).

1  3412).   He then checked the wallet in James Rumsey's pocket and

2  threatened to kill Helen Rumsey if she didn't give him money.

3  (RT 3413).   Petitioner also testified that immediately after the

4  murder, he went directly down to Rice's apartment without having

5  any confusion or trouble finding it.   (RT 3482).   Finally,

6  petitioner testified that when he arrived at Rice's apartment, he

7  was able to reform the "same intent" to get drugs.   (RT 3483).

8        In sum, petitioner testified that although he was able to

9  form the intent to get drugs and think about the possible danger

10  of his conduct such that he armed himself with a kitchen knife

11  immediately prior to the murder, and although he was able to form

12  the intent to rob the Rumseys after he stabbed both James and

13  Helen Rumsey, and although he was able to reform that same intent

14  to get drugs when he arrived at Rice's apartment immediately

15  after the murder, he was so intoxicated that he was unable to

16  form the intent to rob or kill James Rumsey before he stabbed him

17  in the neck.   However, petitioner's intentional and thoughtful

18  actions both immediately prior to and immediately after the

19  murder of James Rumsey is inconsistent with someone who was so

20  intoxicated that he was unable to form the intent to rob or kill.

21       In light of the lack of any expert testimony, the lack of

22  lay witness observations that petitioner was behaving as if

23  without thinking, and petitioner's own inconsistent testimony,

24  petitioner cannot meet the substantial and injurious effect

25  standard.   Nor does the court harbor "grave doubt" as to the

26  effect of the trial court's failure to give a manslaughter jury

27

28

1    instruction.   Therefore, the court adopts the magistrate judge's

2    findings and recommendations with respect to this claim.[5]

3         Petitioner also objects to the magistrate judge's failure to

4    analyze its claim based upon the trial court's failure to provide

5    the jury with an option beyond either acquittal or conviction for

6    felony murder.   Petitioner relies on the rule set forth by the

7    Supreme Court in Beck v. Alabama, that trial courts must provide

8    jury instructions on lesser included offenses.   447 U.S. 625, 637

9    (1980).   The Court reasoned that "when the evidence

10   unquestionably establishes that the defendant is guilty of a

11   serious, violent offense – but leaves some doubt with respect to

12   an element that would justify conviction of a capital offense –

13   the failure to give the jury the 'third option' of convicting on

14   a lesser included offense would seem inevitably to enhance the

15   risk of an unwarranted conviction."   Id.   Therefore, the Court

16

17        [5]   Petitioner also objects to the magistrate judge's
     findings with respect to Claim 57 based upon the sufficiency of
18   the evidence to support a felony murder conviction.   In his
     moving papers, petitioner specifically challenged the evidence of
19   requisite intent to commit robbery or burglary.   However,
     petitioner fails to address the basis or merits of his objection
20   in his briefing.

21        Moreover, a de novo review of the record of the whole
     supports the magistrate judge's finding that the California
22   Supreme Court's determination that there was sufficient evidence
     was not unreasonable under the AEDPA.   Petitioner admitted during
23   his testimony that after he was arrested he told officers that he
     was trying to make money.   (RT 3438).   Petitioner also testified
24   that he had money on his mind the day before and the day the
     murder was committed.   (RT 3439).   Hadix and Baker both testified
25   that petitioner was present when the Rumseys brought money to
     Baker's apartment earlier that day and when Baker's daughter
26   commented that James Rumsey had "gobs" of money.   Petitioner
     testified that he knew there was money in the Rumsey's apartment.
27   (RT 3409).   Based upon this evidence and the other evidence
     presented at trial, a rational jury could have made inferences to
28   support a conviction of felony murder.

1  held that it violated due process to preclude the consideration

2  of lesser included offenses where the only options available to

3  the jury were conviction or acquittal of a capital offense.  Id.

4  at 638.

5      Contrary to petitioner's assertions, the magistrate judge

6  addressed this issue in his findings and recommendations in light

7  of the California Supreme Court's analysis of this issue.  (F&R

8  at 57).  The jury was instructed as to the lesser included

9  offense of theft as well as robbery and burglary.  (Id.)  If the

10  jury did not find that petitioner had the requisite state of mind

11  to commit robbery or burglary, it could have found him guilty of

12  the lesser included offense of theft, which crime had no

13  requirement of an intent to steal at the time of entry.  As such,

14  a felony murder conviction would have been precluded.  However,

15  the jury did not find petitioner guilty of theft, but of robbery

16  and burglary.  Further, with respect to the homicide charges, the

17  jury was instructed as to capital murder and second degree

18  murder.  (RT 3740-41).  Therefore, the jury was not presented

19  with an "all or nothing" situation, but was given a range of

20  options, "which eliminated the enhanced risk of an unwarranted

21  conviction."  Murtishaw v. Woodford, 255 F.3d 926, 955 (9th Cir.

22  2001) (holding that the trial court's failure to give a sua

23  sponte imperfect self defense instruction did not violate Beck v.

24  Alabama, 447 U.S. 625 (1980), where the jury was instructed on

25  the lesser included offenses of second degree murder and

26  manslaughter).  As such, the magistrate judge properly found that

27  the ruling of the California Supreme Court was not an

28  unreasonable application of Supreme Court authority and that the

10

1  failure to give a manslaughter instruction did not violate due

2  process.

3  **2.    Other Instructional Error and Ineffective Assistance of
           Counsel Claims**

4

5      Petitioner generally objects to the magistrate judges

6  findings and recommendations with respect to Claims 60-68, 82,

7  and 84 because he contends that the magistrate judge did not

8  provide coherent findings and conclusions and that the magistrate

9  judge improperly conflated the merits review of these claims with

10  that of Claim 59.  However, the extensive analysis of each claim

11  set forth by the magistrate judge belies this contention.  (See

12  F&R at 58-69) (addressing Claims 60-68, 82, and 84).  Moreover,

13  the court finds no basis for petitioner's objection based upon

14  the magistrate judge's failure to repeat verbatim analysis from

15  Claim 59 that was equally applicable to other claims.  Rather,

16  the court's de novo review of the record demonstrates that the

17  magistrate judge's findings and recommendations regarding Claims

18  60-68, 82, and 84 are proper and supported by law.

19      Petitioner also objects to the magistrate judge's findings

20  regarding some of his ineffective assistance of counsel claims

21  (Claims 66-68, 89-90, and 94).  Petitioner summarily argues that

22  trial counsel's actions fell far below any reasonable standard of

23  performance with respect to the submission of necessary jury

24  instructions.  For the reasons set forth in the F&Rs (F&R at 58-

25  69), the magistrate judge correctly found that applying the AEDPA

26  standard, trial counsel did not act unreasonably in his

27  representation of petitioner and that any error by counsel did

28  not affect the judgment.

11

1    Finally, petitioner argues that the <u>Strickland</u> analysis of

2  the prejudice cause by each of trial counsel's failures must be

3  reserved until all claims of ineffective assistance of counsel

4  are ripe for review.  Petitioner's claims based upon the

5  individual effect of specific alleged deficiencies by trial

6  counsel are ripe for review.  For the reasons set forth above,

7  the court adopts the magistrate judge's findings and

8  recommendations with respect to these claims.  However,

9  petitioner still maintains a claim based upon the cumulative

10 effect of counsel's alleged errors, Claim 28.  The magistrate

11 judge's findings and recommendations do not address this claim.

12 Therefore, to the extent the court finds counsel's performance

13 deficient, the cumulative effect of these deficiencies may be

14 reviewed when adjudicating Claim 28.[6]

15                          **CONCLUSION**

16    For the foregoing reasons, the court adopts the magistrate

17 judge's findings and recommendations filed January 23, 2007 and

18 thereby GRANTS respondent's motion for summary judgment on the

19 claims raised and addressed in the findings and recommendations.

20    IT IS SO ORDERED.

21 DATED: January 11, 2008

24 FRANK C. DAMRELL, JR.
   UNITED STATES DISTRICT JUDGE

27    [6]    The court noted this effect of petitioner's specific
   IAC claims on his claim of cumulative prejudice in its Memorandum
28 and Order, filed Oct. 14, 2005.

                              12