1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10    MILTON OTIS LEWIS,

11                    Petitioner,              No. CIV S-02-0013 FCD GGH DP

12          vs.                               **DEATH PENALTY CASE**

13    ROBERT AYERS, Warden

14                    Respondent.             ORDER RE: EVIDENTIARY HEARING

15    _____/

16    *Introduction and Summary*

17                    The operative petition in this case, the First Amended Petition (FAP), filed on

18    December 14, 2010, comprises 103 claims plus numerous sub-claims.  Many of these claims

19    have been disposed of already by means of two summary judgment motions.  On January 23,

20    2007, in connection with the second summary judgment motion made in this capital case, the

21    court outlined those claims (some containing numerous sub-claims) which would *remain* after

22    the second summary judgment:

23    Claims 4 (petitioner's "helper" counsel disbarred), 5, 6, 9, 10, 11, 12, 13, 14, 15,16, 17, 18, 19,

24    20, 21, 22, 23, 24, 26, 27, 28, 30, 31, 32, 69, 70, 102, 103.  In that document, the undersigned

25    ordered that all of these claims were subject to evidentiary hearing subject to AEDPA

26    requirements.  On review, the Honorable Frank Damrell required petitioner to move for an

1

evidentiary hearing, and required the undersigned to review all prerequisites for the holding of such a hearing.  Order of March 20, 2007.[1]

Petitioner has moved for an evidentiary hearing on all of the afore identified claims except: 69, 70, 103 and 15(d).  Because petitioner has abandoned any request for an evidentiary hearing for those claims, he will receive no evidentiary hearing, and these claims will be resolved later on the present record.[2]

During the preparation of these Findings and Recommendations, after hearing on the motion for evidentiary hearing, and after submission of supplemental evidence, the court noted that petitioner's expert, Dr. Stewart, opined that petitioner was *presently* incompetent to proceed with this habeas petition.  Although petitioner's counsel did not bring an affirmative motion in this respect, the undersigned determined that such an opinion could not lie latent in the record, only to surface at a later time, either at evidentiary hearing on the merits of the petition's claims, or even after a determination on those claims had been made.  A lengthy detour was taken to adjudicate that issue of present incompetence which resulted in a final order denying any such assertion.  Findings and Recommendations, 1/26/10; Order, 9/2/10.

Analysis of petitioner's motion requires a discussion of AEDPA's diligence requirements, and assuming those have been met for all or some claims, whether petitioner's motion should be granted under traditional requirements for evidentiary hearings.  For the reasons set forth herein, petitioner shall receive an evidentiary hearing on Claims: 10, 11, 12, 13, 14, 15(b) [involuntary confession only – see #s 10, 11, 12], 16 (a), (c), (g) [see #13], (i) [penalty phase only], 27 (all sub-claims).  For the reasons set forth herein, an evidentiary hearing is denied

---

[1]  Respondent's motion for summary judgment on many merits claims was granted by the district judge, Order of January 11, 2008, adopting the January 23, 2007, Findings and Recommendations.

[2]  Petitioner's decision to abandon the organization of the FAP in bringing his motion for evidentiary hearing has unnecessarily complicated this adjudication.  The court will not follow the organization divided into "issues" supported by the evidence set forth in multiple "claims" as such organization fails to take into account that certain claims were belatedly brought.

1  on all other claims or parts of claims, which will be resolved later on the present record after

2  evidentiary hearing.

3  *AEDPA's Fail to Develop/Diligence Requirements*

4          Respondent claims that the vast bulk of claims (identified below) do not warrant

5  an evidentiary hearing because petitioner did not diligently seek an evidentiary hearing on those

6  claims in state court.  The AEDPA provides:

7          *If the applicant has failed to develop the factual basis of a claim in State Court
        proceedings*, the court shall not hold an evidentiary hearing on the claim unless
8          the applicant shows that–
                (A) the claim relies on–
9                        (i) a new rule of constitutional law, made retroactive to cases on
        collateral review...; or
10                       (ii) *a factual predicate that could not have been previously
        discovered through the exercise of due diligence*; and
11              (B) the facts underlying the claim would be sufficient to establish by clear
        and convincing evidence that but for constitutional error, no reasonable factfinder
12       would have found the applicant guilty of the underlying offense.

13  28 U.S.C. § 2254(e)(2).

14          However, in California, diligence is a relative term.  Most death penalty cases

15  move glacially with respect to post-conviction matters, both in state and federal court.  Thus, a

16  little chronology is in order.

17          Petitioner was convicted in 1990, and adjudged on December 6, 1990.  As all

18  know, an appeal to the California Supreme Court is automatic.  However, the court can take

19  judicial notice that appeal proceedings do not occur rapidly; it often takes years just to appoint

20  counsel for a convicted death penalty petitioner.  "There is now a wait of 3 to 5 years before

21  appellate counsel is appointed."  ccfaj.org/documents/CCAJ Final Report.pdf at page 132 of

22  196.[3]  See also in re Morgan, __Cal. 4th.__, __Cal. Rptr. 3d __, 2010 WL 3385390 *2 (2010).

23  None of the records in this case to the undersigned's knowledge reflect precisely when counsel

24  _____

25          [3]  Judge Moulds of this district was a commissioner on this panel which at the
    Legislature's request issued a comprehensive and extensive report on fairness in the criminal
26  justice system.

1   was appointed in petitioner's case; however, the opening brief on direct review was not filed

2   until May 16, 1997, with the final reply brief filed on or about July 31, 1998.  Shortly thereafter,

3   on November 3, 1998, the first state habeas petition was filed so that it could be concurrently

4   adjudicated along with the direct review.  Throughout this first state habeas petition, petitioner

5   requested further investigation of the facts presented and requested an evidentiary hearing.  At or

6   about this time, such a concurrent filing was the preferred procedure, and it remains the preferred

7   procedure.  See In re Clark, 5 Cal. 4th 750. 783, 21 Cal. Rptr. 2d 509, 531 (1983) (presumed

8   timely if habeas petition is filed within 90 days after filing of direct review reply brief); In re

9   Morgan, supra at *3 (presently 180 days after filing of reply brief).

10          The Supreme Court affirmed the conviction and penalty on direct review ((May

11   17, 2001, rehearing denied June 27, 2001) and the first state habeas petition (October 24, 2001).

12   All claims at issue here were simply denied on the merits without explanation, none were

13   considered as untimely brought. Thereafter,  petitioner filed his first request for counsel et al. in

14   federal court on January 3, 2002.  A petition was ultimately filed on March 31, 2003; thereafter,

15   petitioner returned to state court on July 3, 2003 to exhaust new issues discerned by federal

16   habeas counsel.  This time, in addition to a denial on the merits without explanation, every claim

17   was denied as untimely, and with one exception, successive.  On return to federal court, a first

18   amended petition was filed on December 31, 2004.

19          The 1998 first state habeas petition, whose exhausted claims were contained

20   within the first federal petition, was filed in accordance with the presumptive timeliness

21   requirements of state law.[4]  In such a situation, the court will not demand more of a petitioner

22   from a federal perspective.  The court finds as a matter of federal law that if the claims requiring

23

---

24        [4]  The undersigned is unsure when the 90 day deadline was changed to 180.  Even if the
     90 day deadline was in effect at the time of the first state habeas petition, the inconsequential 5
25   day tardiness in filing the habeas petition (assuming no grace period at all) will not detract from
     the holding of this order.  The California Supreme Court considered it timely brought, and so will
26   the undersigned.

1   extra-record review in a California capital habeas case are brought concurrently with the direct

2   review proceedings as set forth in state law, there is no delay with which to find fault for the

3   diligence in which the state proceedings were instituted.[5]  This rule will also apply to requested

4   evidentiary hearings on issues on direct review for the very odd issue which required factual

5   development outside the record for direct review.  However, petitioner must have supplied the

6   state supreme court with sufficient facts such that the need for an evidentiary hearing was

7   evident.  Thus, the undersigned will later turn to that issue and the traditional requirements for

8   the grant of an evidentiary hearing in the next section for those issues timely brought in 1998.

9          A different result obtains for those issues first presented to the state supreme court

10  in 2003 – the second state habeas petition.  At hearing, the court explored the first part of the

11  AEDPA requirement, i.e., whether an applicant has failed to develop the factual basis of a claim

12  in state court, and specifically, whose burden it is to demonstrate the fault based "failed to

13  develop."  The court accepted supplemental briefs on the subject.  For the reasons set forth below,

14  the undersigned finds that respondent has the initial burden of identifying those claims which he

15  contends were not developed properly; thereafter, petitioner has the burden of demonstrating that

16  he was not at fault for the failure, or that an exception exists which would permit an evidentiary

17  hearing.

18          Petitioner's largest misapprehension of § 2254(e)(2) concerns his default in

19  demonstrating diligence in seeking to develop the facts which he would now like to develop at

20  evidentiary hearing.  The Supreme Court has found a failure to develop when "there is a lack of

21  diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."  Williams

22  v. Taylor, 529 U.S. 420, 432, 120 S.Ct. 1479, 1488 (2000).

23          The purpose of the fault component of "failed" is to ensure the prisoner undertakes

24  _____

25          [5]  As more fully discussed below, the federal court is not bound by state law on its
    diligence review; however, for federal law purposes, it would be nonsense to hold that a
    petitioner must bring his habeas claims prior to the time the California Supreme Court desires

26  them to be filed.

1  his own diligent search for evidence. Diligence for purposes of the opening clause
2  depends upon whether the prisoner made a reasonable attempt, in light of the
   information available at the time, to investigate and pursue claims in state court; it
3  does not depend, as the Commonwealth would have it, upon whether those efforts
   could have been successful. Though lack of diligence will not bar an evidentiary
4  hearing if efforts to discover the facts would have been in vain, see §
   2254(e)(2)(A)(ii), and there is a convincing claim of innocence, see §
5  2254(e)(2)(B), only a prisoner who has neglected his rights in state court need
   satisfy these conditions. The statute's later reference to diligence pertains to cases
6  in which the facts could not have been discovered, whether there was diligence or
   not.

7  Id. at 439, 120 S.Ct. at 1490.  See also Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th Cir.

8  2005); Jaramillo v. Stewart, 340 F.2d 877, 882 (9th Cir. 2003).

9          By use of the terms "diligence" to describe the burden in the opening clause, the

10  Supreme Court was clearly placing a temporal obligation on petitioner's investigation and his

11  seeking to develop the facts in *state court* proceedings in a timely fashion.  In Williams itself, the

12  failure of state habeas counsel to review a psychiatric report which he should have known was in

13  the file precluded a years later attempted development of a Brady claim by federal habeas counsel.

14  Williams v. Taylor, 529 U.S. 437-440, 120 S.Ct. at 1490-1492.  There could not be a clearer

15  example of the need to act to timely develop a claim when one should have understood of the

16  claim's possible existence.  Petitioner's counsel herein *does not in any way* attempt to justify the

17  delay in development of claims (set forth below) brought initially as unexhausted claims in this

18  federal proceeding a decade after his conviction which he then sought to develop in a second state

19  habeas petition.

20          Petitioner did not even mention his burden in the motion for evidentiary hearing.

21  In his reply to respondent's opposition to evidentiary hearing based primarily on the AEDPA

22  burden, petitioner gets all wound up in a discussion of procedural default, an affirmative defense

23  to a habeas claim, which is apart and separate from the diligence requirements for an evidentiary

24  hearing.  Although a state court finding that one has not timely brought claims in a state petition

25  may be instructive in a situation where one is analyzing whether claims were timely developed for

26  federal evidentiary hearing purposes, the state court finding is by no means dispositive on this

1    issue of *federal* law.[6]

2          Placing the burden on petitioner to show diligence is correct for a number of

3    reasons.  First, <u>Williams</u> itself precluded a <u>Brady</u> claim because petitioner therein could not show

4    that the delay in developing the claim was justified.  Moreover, the Ninth Circuit has indicated

5    that petitioner bears that burden.  <u>Insyxiengmay v. Morgan</u>, 403 F.3d 657, 670 (9th Cir. 2005) ("In

6    sum, for a post-AEDPA petitioner to receive an evidentiary hearing in federal court, *he must first*

7    *show* that he has not failed to develop the factual basis....") (emphasis added).  The other circuits

8    agree.  <u>Wilson v. Sirmons</u>, 536  F.3d 1064, 1079 (10th Cir. 2008); <u>Owens v. Frank</u>, 394 F.3d 490,

9    499-500 (7th Cir. 2005); <u>Bowling v. Parker</u>, 344 F.3d 487, 511 (6th Cir. 2003).  In addition, since

10    petitioner has the burden to show that a factual finding by the state court is in error, § 2254(e)(1),

11    it only makes sense to interpret the (e)(2) language in the same manner.  Placing the burden on

12    petitioner to show timely development of evidence for an evidentiary hearing is no different from

13    placing the burden on petitioner to show that he qualifies for equitable tolling of the AEDPA

14    statute of limitations, i.e., that he diligently pursued his claim, but was hindered by some external

15    impediment from doing so.  <u>See</u> <u>Holland v. Florida</u>, --- U.S. ----, ---- - ----, 130 S.Ct. 2549,

16    2560-62 (2010).  Finally, it is only common sense to place the burden on the party most likely to

17    possess the information about why something was not done at a particular time.

18          Only if petitioner has satisfied this first step does one analyze the "traditional"

19    requirements for evidentiary hearing.  <u>See</u> discussion below.

20          The first task of this order is to delineate those remaining claims which will not

21    receive an evidentiary hearing due to lack of diligence in developing these claims in state court.

22    That is, as set forth above, the court will deny those remaining claims for which evidentiary

23    

24        [6] The principle involved here is indistinguishable from that developed to determine
whether a petitioner diligently sought state habeas review for tolling purposes.  As the Supreme
Court emphasized – the diligence requirements for tolling purposes do not depend on a state

25    court finding to that effect (unless a state court has indicated untimeliness); ultimately the matter
is one of federal law. <u>Banjo v. Ayers</u>, 614 F.3d 964, 968 (9th Cir. 2010) citing <u>Carey v. Saffold</u>,

26    536 U.S. 214, 122 S.Ct. 2134 (2002).

hearing is sought, based on lack of diligence, which were submitted to the state supreme court *after* the filing of the first state habeas petition.  Again, petitioner did not even attempt a showing at diligence.  The specific claims to be denied on this basis can be ascertained by comparing the state claims filing chronology (includes direct review and the first state habeas petition) provided in the FAP at pages 3-16.  The "new" claims raised in the second state petition, appear at pages 17-19.  Unfortunately, petitioner did not cross-index this chronology with the numbered claim in the FAP, and the undersigned has undertaken to perform that cross reference below.  Thus, the discussion below will reference both the claim number of the operative FAP claim with its corresponding chronology claim identified by page and claim letter.

As stated above, at pages 17-19 of the FAP, petitioner identifies those claims which were not included in state proceedings prior to the second state habeas petition, the 2003 state petition.  Deleting from this list the claims already decided on summary judgment (identified as  11(d) and (e) on page 17 (Claim 2 of the petition), and one claim on which counsel has not moved for evidentiary hearing judgment (identified as 11 (s) on page 19, Claim #103), that leaves the following claims for which an evidentiary hearing is sought, but for which there is *no* explanation concerning why petitioner was not able to attempt to develop them in state court so that they could be placed in the 1998 first state habeas petition, or at the very least, in the five year period between 1998 and 2003:

Denial of Right to Counsel –
       Claim #4, <u>see</u> 11(a) on page 17 of the First Amended Petition (FAP);

Ineffective Assistance of Counsel re the Use of Gary J. Solberg as Counsel for Petitioner –
       Claim # 5, <u>see</u> 11(b) on page 17 of the  FAP;

Ineffective Assistance of Counsel re Failure to Move for Appointment of Second Counsel –
       Claim # 15(c), <u>see</u> 11(c) on page 17 of the FAP;

Failure to Disclose Material Exculpatory Evidence; Ineffective Assistance of Counsel for Failure to Investigate Evidence (Swango) –
       Claim # 18, <u>see</u> 11(f) on page 18 of the FAP;

Ineffective Assistance of Counsel re Failure to Present a Defense for Petitioner –
       Claim # 16(b), <u>see</u> 11(g) on page 18 of the FAP;

1   Ineffective Assistance of Counsel re Failure to Retain Expert and Present Evidence to Impeach
Prosecution's Witnesses Addicted to Drugs and Alcohol –
2          Claim # 16(d), <u>see</u> 11(h) on page 18 of the FAP;

3   Knowing Use of False Evidence re Testimony of Helen Rumsey –
          Claim # 21, <u>see</u> 11(i) on page 18 of the FAP;
4

Arbitrary, Capricious, and Meaningless Charging Practices by the Shasta County DA –
5          Claim # 30, <u>see</u> 11(j) on page 18 of the FAP;

6   Discriminatory Charging Practices by the Shasta County DA –
          Claim # 31, <u>see</u> 11(k) on page 18 of the FAP;
7

Ineffective Assistance of Counsel re Failure To Challenge Unconstitutional, Discriminatory,
8   Arbitrary, Capricious, and Meaningless Charging Practices –
          Claim #32, <u>see</u> 11(l) on page 18 of the FAP;
9

Failure to Disclose Material Evidence and Knowing Presentation of False Evidence (Baker) –
10          Claim #17, <u>see</u> 11(m) on page 18 of the FAP;

11   Knowing Presentation of False Evidence; Failure to Disclose Material Exculpatory Evidence;
Ineffective Assistance of Counsel for Failure to Investigate Evidence (Leon Johnson) –
12          Claim #19, <u>see</u> 11(n) on page 18 of the FAP;

13   Failure to Disclose Material Exculpatory Evidence; Ineffective Assistance of Counsel for Failure
to Investigate Evidence (Toombs) –
14          Claim #20, <u>see</u> 11(o) on page 18 of the FAP;

15   Ineffective Assistance of Counsel re Intent to Commit Burglary of the Rumsey Apartment and
Robbery of Jim Rumsey –
16          Claim # 16(e), <u>see</u> 11(p) on page 18 of the FAP;

17   Ineffective Assistance of Counsel re Instructions and Argument Concerning Mitigation Evidence–
          Claim #15(d), <u>see</u> 11(s) on page 19 of the FAP.
18

19          The undersigned declines to speculate as to the reasons for delay in bringing these

20   claims; petitioner has not met his burden, or even attempted to meet his burden, of showing

21   diligence in developing these claims in state court.  The above listed claims are denied evidentiary

22   hearing on the basis of not diligently bringing them in state court.

23   <u>*Traditional Requirements for the Grant of an Evidentiary Hearing*</u>

24          The ordinary standards under federal law for an evidentiary hearing, which are

25   well known and well established in the Supreme Court and Ninth Circuit, are as follows.  "To

26   obtain an evidentiary hearing on an ineffective assistance of counsel claim, a habeas petitioner

1    must establish that (1) his allegations, if proven, would constitute a colorable claim, thereby

2    entitling him to relief and (2) the state court trier of fact has not, after a full and fair hearing,

3    reliably found the relevant facts." Correll v. Stewart, 137 F.3d 1404, 1413 (9th Cir. 1998).

4    Nevertheless, the court does not have to hold an evidentiary hearing when the record clearly

5    refutes the collateral factual allegations raised by petitioner. Schriro v. Landrigan, 550 U.S. 465,

6    474, 127 S. Ct. 1933, 1940 (2007).  Moreover, Schriro also announced that in determining

7    whether to grant an evidentiary hearing the federal court must apply the AEDPA deferential

8    standards to legal and factual questions necessarily reached by the state courts. Id.  Thus, for

9    example, if the reasons for counsel actions were at issue, but under deferential standards, the court

10   could not find prejudice, no evidentiary hearing would be necessary.

11          However, Schriro v. Landrigan did not by any means indicate that the

12   determination of whether to grant an evidentiary hearing must be made on *only* the record extant

13   at the time the state supreme court made its decision.  If that were the case, there would be no

14   need for federal investigation, McFarland v. Scott, 512 U.S. 849, 114 S.Ct. 2568 (1994), no need

15   for federal discovery, Bracy v. Gramley, 520 U.S. 899, 117 S.Ct. 1793 (1997), and really no need

16   for a federal evidentiary hearing.  Rather, in applying deferential standards, the federal court must

17   utilize the facts presented to the state court, as well as the facts developed by investigation and

18   discovery in federal proceedings.  Only if it can be said after review of all facts presented that the

19   state decision did not violate established Supreme Court precedent, is petitioner not entitled to a

20   hearing.  The undersigned herein has utilized (but not repeated here at length) the facts presented

21   in the first state habeas petition, the facts in the FAP, the facts for which support was given in

22   petitioner's motion for evidentiary hearing, and in particular, the Declaration of Dr. Pablo Stewart.

23   At this juncture, the court does not argue with the facts presented, but simply applies the law, that

24   *if accepted*, would the facts warrant relief in petitioner's favor.

25          One other important caveat exists to the "mandatory" nature of evidentiary

26   hearings, and it is well set forth by Williams v. Woodford, 384 F.3d 567, 590-591 (9th Cir. 2004):

We have previously held that a district court in a habeas corpus proceeding "need not conduct full evidentiary hearings," but may instead "expand the record ... with discovery and documentary evidence." Watts v. United States, 841 F.2d 275, 277 (9th Cir.1988) (per curiam) (denying a habeas corpus petitioner's contention that the district court erred in resolving a claim based on contradictory affidavits and interrogatories without an evidentiary hearing at which oral testimony could be provided).

***

Other circuits have similarly held that "there is a permissible intermediate step that may avoid the necessity of an expensive and time consuming hearing in every [habeas corpus] case. It may instead be perfectly appropriate, depending upon the nature of the allegations, for the district court to proceed by requiring that the record be expanded to include letters, documentary evidence, and, in an appropriate case, even affidavits." Chang v. United States, 250 F.3d 79, 86 (2nd Cir. 2001) (finding no abuse of discretion when the district court dismissed the petitioner's claim without an evidentiary hearing with live witnesses) (citing Raines v. United States, 423 F.2d 526, 529-30 (4th Cir.1970)); see also Blackledge, 431 U.S. at 81-82, 97 S.Ct. 1621 ("[A]s is now expressly provided in the Rules Governing Habeas Corpus Cases, the district judge ... may employ a variety of measures in an effort to avoid the need for an evidentiary hearing.... In short, it may turn out ... that a full evidentiary hearing is not required."); Spreitzer v. Peters, 114 F.3d 1435, 1456 (7th Cir.1997) (same).

***

However, in construing Blackledge, our circuit and the Second Circuit have found no abuse of discretion when the district court "conclude[d] that [a full evidentiary] hearing would not offer any reasonable chance of altering its view of the facts." Chang, 250 F.3d at 86; Watts, 841 F.2d at 277 (finding that, in the case at hand, the issue of credibility could be conclusively decided on the basis of documentary testimony and evidence in the record).

Finally, a petitioner does not obtain an evidentiary hearing by merely giving a bald conclusion without any proffer of evidentiary support for such. Only *colorable* claims warrant an evidentiary hearing, and as has been aptly stated in this very context, "[i]t was never meant to be a fishing expedition for habeas petitioners to 'explore their case in search for its existence.'" Rich v. Calderon, 187 F.3d 1064, 1067 (9th Cir. 1999).  See also Morales v. Woodford, 388 F. 3d 1159, 1179 (9th Cir. 2004) ("Given the [deficient] evidentiary submissions, the district court did not abuse its discretion in denying an evidentiary hearing...").  Petitioner's requests for an evidentiary hearing herein often fall before the requirement to show *something* in the way of evidentiary support before a hearing is ordered on a bald conclusion.

\\\\\

\\\\\

*Claim-by-Claim Analysis of Remaining Claims*

**A.  Counsel Had a Conflict of Interest Which Prevented Him from Effectively Representing Petitioner (Claim 6)**

In this claim, petitioner alleges that his trial attorney (Swartz) previously represented Roger Beard, a person who was thought to be present in the Rice apartment – the place petitioner was allegedly going to, in order to get his money back for "bad drugs," before he prematurely stopped at the Rumsey apartment.  Petitioner further contends that he armed himself with a knife out of fear for Roger Beard – a known drug dealer.  Swartz is alleged to have represented Beard in a rather minor misdemeanor – possession of a hypodermic needle – a short time before the Rumsey murder.  According to petitioner, Beard could have been a "critical" witness in that petitioner's counsel could have shown that petitioner armed himself with a knife, not to rob the Rumseys, but to protect himself from Beard.  Petitioner alleges that counsel could not call Beard and portray him as a dangerous drug dealer because of a conflict.

The court first disposes of a threshold matter.  One theme runs throughout most of respondent's objections to holding an evidentiary hearing.  Respondent argues that when presenting this claim (and most others) to the state court, petitioner "did not include all documentary evidence available to him."  Thus, the argument goes, petitioner did not properly develop his claim before the state court and is not entitled to an evidentiary hearing, citing 28 U.S.C. § 2254(e)(2).  The court will not repeat the "diligence" (timeliness) analysis, supra.  However, the issue here for these claims presented long ago is to what extent the state courts do not desire, or will not permit, one to be diligent.

> Ordinarily diligence requires that a petitioner seek an evidentiary hearing in state court in the manner prescribed by state law. Id. Under California law, an appellate court, when presented with a state habeas petition, determines whether an evidentiary hearing is warranted only after the parties file formal pleadings, if they are ordered to do so. See People v. Duvall, 9 Cal.4th 464, 37 Cal.Rptr.2d 259, 886 P.2d 1252, 1258-61 (1995); People v. Romero, 8 Cal.4th 728, 35 Cal.Rptr.2d 270, 883 P.2d 388, 391-94 (1994). Here, the California Supreme Court summarily denied Horton's state habeas petition without ordering formal pleadings. Because Horton never reached the stage of the proceedings at which an evidentiary hearing

12

1  should be requested, he has not shown "a lack of diligence at the relevant stages of
2  the state court proceedings" and therefore is not subject to AEDPA's restrictions on
   evidentiary hearings.

3  Horton v. Mayle, 408 F.3d 570, 582 n.6 (9th Cir. 2005).

4  Of course, a petitioner must allege the claim such that a court might believe an evidentiary hearing

5  is necessary, and as the Supreme Court (Schriro) recently held, no evidentiary hearing should be

6  held if the legal issues would be decided against petitioner under AEDPA.  However,

7  respondent's position that a petitioner must supply *all* proof available at the time of filing the

8  claim in state court runs counter to Horton.[7]  Moreover, the focus of the determination of whether

9  to hold a federal evidentiary hearing is not dependent on petitioner's success in state court in

10  developing the facts he would now like to present, but on the presentation of facts and requests

11  made to state courts to develop them.  Schad v. Ryan, 606 F.3d 1022, 1043 (9th Cir. 2010); see

12  also Rossum v. Patrick, __F.3d__, 2010 WL 3704188 (9th Cir. 2010).[8]

13           For this claim, and those following, petitioner requested an evidentiary hearing

14  even before he had to under Horton, i.e., before the state supreme court had requested any formal

15  responses.  Moreover, the undersigned has reviewed the factual presentation set forth in the first

16  state habeas petition and finds that with respect to the claims for which evidentiary hearing is

17  granted herein, sufficient facts were asserted to warrant at the very least a further development of

18  those facts in state court, and hence, now, in federal court.  Respondent's diligence (completeness)

19  objections to all of these claims is overruled.

20           Except in infrequent situations, a claim of actually conflicted counsel requires a

21  finding that the client's case was adversely affected by the conflict.

22

23      [7]  The situation presented for this and the following claims is different from those
    previously discussed – a situation where petitioner was not diligent in even pleading the claims in
24  the first place.

25      [8]  Of course, petitioner cannot use Horton to cure a lack of presentation of claims or
    sufficient facts in a *first* state habeas petition by merely requesting a state evidentiary hearing in a
26  *second*, belated petition presenting new claims.

13

1
2
3
4
    "The Sixth Amendment right to counsel includes a correlative right to representation free from conflicts of interest." Lewis v. Mayle, 391 F.3d 989, 995 (9th Cir.2004). To establish a violation of the right to conflict-free counsel, the petitioner must show either that (1) in spite of an objection, the trial court failed to allow him the "opportunity to show that potential conflicts impermissibly imperil his right to a fair trial;" or (2) that an actual conflict of interest existed. Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

5
6
7
8
9
10
11
12
13
14
15
In several cases in which the Supreme Court has defined the right to conflict-free counsel, the defense attorney actively and concurrently represented conflicting interests. Mickens v. Taylor, 535 U.S. 162, 166-167, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) (discussing earlier authority); see also Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) (attorney representing co-defendants); Cuyler, 446 U.S. at 337-38, 100 S.Ct. 1708 (same). In those cases, the Court created, in effect, a distinction between an actual conflict of interest, and a mere hypothetical one. It pointed out that dual representation by an attorney does not per se create a conflict of interest. Indeed, in many situations, dual representation may work in the defendant's favor. Holloway, 435 U.S. at 482, 98 S.Ct. 1173; Cuyler, 446 U.S. at 348, 100 S.Ct. 1708. Nevertheless, the Court concluded that "joint representation of conflicting interests is suspect" because of the effect it may have on counsel's performance. Holloway, 435 U.S. at 489-490, 98 S.Ct. 1173. Accordingly, the Sixth Amendment does not protect against a "mere theoretical division of loyalties." Mickens, 535 U.S. at 171, 122 S.Ct. 1237. Rather, it protects against conflicts of interest that adversely affect counsel's performance. Id. at 172 n. 5, 122 S.Ct. 1237. Indeed, in Mickens, the Court held that "actual conflict" is defined by the effect a potential conflict had on counsel's performance. In Mickens, the Court explained, "[A]n actual conflict of interest [means] precisely a conflict that affected counsel's performance-as opposed to a mere theoretical division of loyalties." Id. at 171, 122 S.Ct. 1237; see also id. at 172 n. 5, 122 S.Ct. 1237.

16
Alberni v. McDaniel, 458 F.3d 860, 869-870 (9th Cir. 2006).

17
18
19
20
21
22
23
24
25
26
    With one exception, and another possible exception, there is no analytical distinction in the conflict analysis when the dual representation encompasses a situation where the non-defendant client was represented in a previous action. Houston v. Schomig, 533 F.3d 1076, 1081 (9th Cir. 2008). However, a previously represented client, now allegedly adverse to the different client on trial, will not pose an actual conflict in the absence of substantial relationship of the first and second representations. United States v. Schwayder, 312 F.3d 1109, 1118 (9th Cir. 2002). The second, possible exception centers about the "adverse effect" or "prejudice" inquiry: the Supreme Court has left open the question of whether prejudice must be shown in cases of subsequent representation as opposed to the lesser finding of "adverse effect." Houston, 533 F.3d at 1081.

14

1           Turning to the matter of prejudice or adverse effect:

2     <u>Sullivan</u> established that under the Sixth Amendment we will "forgo individual
inquiry into whether counsel's inadequate performance undermined the reliability

3     of the verdict in instances where assistance of counsel has been denied entirely or
during a critical stage of the proceeding." 446 U.S. 335, 348, 350, 100 S.Ct. 1708,

4     64 L.Ed.2d 333 (1980). We have described this principal as the " <u>Sullivan</u>
exception" to the rule that a habeas petitioner must show prejudice in connection

5     with his ineffective assistance of counsel claim. <u>See</u> <u>Earp v. Ornoski</u>, 431 F.3d
1158, 1183 (9th Cir.2005); see also <u>Mickens v. Taylor</u>, 535 U.S. 162, 166, 122

6     S.Ct. 1237, 152 L.Ed.2d 291 (2002) (recognizing Sullivan exception). The <u>Sullivan</u>
exception applies where the petitioner shows: (1) that his counsel actively

7     represented conflicting interests; and (2) that this adversely affected his counsel's
performance. <u>See</u> <u>id.</u> at 1182, citing <u>Sullivan</u>, 446 U.S. at 348, 100 S.Ct. 1708. "To

8     show an actual conflict resulting in an adverse effect, [the petitioner] must
demonstrate that some plausible alternative defense strategy or tactic might have

9     been pursued but was not and that the alternative defense was inherently in conflict
with or not undertaken due to the attorney's other loyalties or interests." u, 458 F.3d

10     892, 908 (9th Cir.2006) (quotations omitted).

11  <u>Foote v. Del Papa</u>, 492 F.3d 1026, 1029-1030 (9th Cir. 2007).

12  Prejudice, if it is to be shown, is the traditional prejudice requirement of ineffective assistance of

13  counsel, i.e., that the prejudice resulted in a reasonable probability that but for the conflict, the

14  result of the proceeding would have been different, i.e., the conflict (or other ineffectiveness)

15  undermined confidence in the verdict.  <u>Strickland v. Washington</u>, 466 U.S. 668, 694, 104 S.Ct.

16  2052 (1984).

17           In order to obtain an evidentiary hearing on the matter of conflict:

18     This standard requires the defendant to do more than simply allege a "conflict" or
baldly assert that the asserted conflict had an "adverse effect." <u>See</u> <u>id.</u> ("There

19     would be no point in raising the issue, and hence no ineffective assistance of
counsel, unless there were some proof to offer in his favor.").

20

21     Synthesizing the federal habeas standard with the relevant Sixth Amendment
authorities, the following test emerges: in order to be entitled to a hearing on a

22     conflict of interest Sixth Amendment claim, a habeas petitioner has the burden of
alleging specific facts which, if true, would indicate that: (1) an attorney's

23     relationship to a third party influenced the attorney not to pursue a particular
litigation strategy, and (2) the foregone litigation strategy would have been a viable

24     alternative.

25  <u>United States v. Rodrigues</u>, 347 F.3d 818, 824 (9th Cir. 2003).

26           The undersigned will even assume, although doubtful, that in representing Beard

on the minor misdemeanor of possession of a needle, counsel learned all about the drug dealing

activities of Beard, such that counsel knew Beard should have been exposed before the jury in

petitioner's case.  Even with this assumption, the proposition of an actual conflict cannot be

sustained.  The misdemeanor needle conviction had no substantial relationship with petitioner's

capital case.  Moreover, as was the case in Schwayder, supra, 312 F.3d at 1119, counsel would not

have been ethically proscribed about asking his former client, Beard, questions about his prior

record and other aspects of Beard's past which were matters of public record or not otherwise

protected by attorney-client privilege.  See Claim 16(b), infra.

Even going further, and assuming the existence of an actual conflict, as opposed to

a potential conflict, petitioner cannot demonstrate the existence of an adverse effect.  As stated

above, petitioner posits that the petitioner's intent in arming himself had everything to do with

protecting himself from Beard, and nothing to do with robbing Rumsey – hence, no intent to rob

or burgle, and no felony murder conviction.  Firstly, petitioner was able to testify to this very same

fear, and his testimony about the feared Beard was not controverted by the prosecution insofar as

any attempt was made to portray Beard as having no involvement in drugs.  Moreover, everyone

associated with petitioner in the Rumsey matter had a large connection to the illicit drug trade –

why wouldn't the jury accept petitioner's testimony asserting the obvious.  And, it takes no leap in

logic to expect the jury to understand that violence oftentimes is encountered in the illicit drug

trade.  The contemplated Beard testimony to the same effect would have been cumulative.

Even more importantly, petitioner makes the same faulty assumption here, as he

did in the previous summary judgment motion, in arguing that no intent to rob/burgle the

Rumsey's could have occurred after petitioner ostensibly left for the Rice apartment to settle a

dispute on bad drugs.  As set forth in the previous Findings and Recommendations involving guilt

phase issues, and adopted by Judge Damrell:

> It is not disputed that both petitioner and Amy Hadix knew where June Rice's
> apartment was located.  On their way to that apartment (even giving petitioner the
> benefit of the doubt that such was his true and only intent at the time of leaving the

16

1    Baker apartment), they passed by the Rumsey apartment.

2             Q. And was Milton in front of you, behind you, where was he?
             A. [Amy Hadix] He was like kind of beside me, behind me, kind of
3        following me.
                                    ***
4             Q. When you get in the vicinity of the Rumsey's apartment, do you
         see Jim?
5             A. Well, as I was [walking] by *Milton says stop* and the door was
         open about two or three inches and you can see in just a little bit.
6        Jim's chair was right next to the door, so you could see him sitting
         there if you look through the door. And I says hi–
7                                    ***
         I said, "Hi, Jim how are you. And he said , "Hi, how
8        are you doing?" *And that's when Milton pushed me
         out of the way and went in, jumped on Jim....*
9
     RT 3178-3179 (emphasis added).
10
     If this witness is to be believed, and petitioner does not attack her credibility,
11   indeed, he relies on her, a jury could surely believe that petitioner knew precisely
     where he was, ordered Hadix to stop, heard her identify the man petitioner knew
12   had "gobs" of money, made a decision to break into Jim Rumsey's apartment and
     jumped on him. Petitioner had no other motive apparent from the evidence besides
13   robbery which would have caused him to initiate the cutting of Rumsey's throat....
     Moreover, petitioner's actions then in threatening Helen Rumsey if she did not get
14   him money, and his taking the wallet of the now dead Jim Rumsey, tend to confirm
     in a strong fashion precisely what petitioner had in his mind just before going
15   through the Rumsey door. Petitioner himself testified that he remembered details
     about the events such as taking Rumsey's wallet, and what he said to Helen
16   Rumsey .... Petitioner later related to Hadix that the murder "had to be done," RT
     3189; not that he had been surprised or unknowing – just that in a calculated
17   manner, "it had to be done." *Clearly, it appears that petitioner made a last minute
     decision to pick up some "easy money" on the way to the Rice apartment. And,*
18   *last minute or not, petitioner had sufficient time in which to form the requisite
     intent.* Any rational juror or jury could have reached this conclusion based on the
19   evidence.

20   Findings and Recommendations, January 23, 2007 at 36-37 (emphasis in original and added).

21           Contrasting petitioner's conclusory "adverse effect" allegations regarding Beard

22   with the record as a whole clearly directs the conclusion that no evidentiary hearing is required.

23   Almost needless to say, any stricter prejudice argument within the context of a potential conflict

24   claim, would fall as well.

25           In sum, the undersigned does not find an actual conflict. Also, because an

26   evidentiary hearing would not resolve the adverse effect/prejudice issue in petitioner's favor, no

                                              17

1   evidentiary hearing should take place on Claim 6.

2   **B. Petitioner Was Denied His Right to a Valid Mental Health Examination (Claim 9)**

3   The phrasing of this claim is problematic.  Petitioner cites <u>Ake v. Oklahoma</u>, 470

4   U.S. 68, 105 S.Ct. 1087 (1985), seemingly for the proposition that one has a free standing

5   constitutional right to a mental examination.  However, in the text of the claim, petitioner faults

6   his counsel for not following up on petitioner's expert's suggestions for further mental testing.

7   The right to a mental examination must be linked to some other cognizable claim,

8   e.g., ineffective assistance of counsel re mental defenses, insanity, incompetency and the like.

9   <u>Ake</u> stands for the proposition that the *state* may not unduly deny an indigent defense access to

10  mental health professional for the development of defenses.  Petitioner does not allege here that

11  the state denied him anything.  Rather, petitioner faults his counsel for not following through.

12  The request for evidentiary hearing on this claim is denied without prejudice to its consideration

13  in petitioner's other ineffective assistance mental health claims.

14  **C. Law Enforcement Violated Petitioner's Rights By Interrogating Him While He**

15  **Was in Withdrawal from Alcohol and Drugs; Involuntary Confession and Ineffective**

16  **Assistance of Counsel Associated Therewith(Claims 10, 11, 12)**

17  Petitioner claims here that because he was withdrawing from a methamphetamine

18  high and alcohol intoxication (combined with his other mental impairments) at the time he was

19  interrogated by the police, his confession was involuntary.  Petitioner alleges that the police

20  "knew" of his condition.  No allegations appear such that any finding can be made that the police

21  exacerbated any pain, suffering and the like as a result of the questioning.  After reviewing the

22  allegations of the petition, the court is very close to finding them insufficient as a matter of law.

23  Simply being under the influence of alcohol and drugs at the time of police

24  interrogation is insufficient to render a confession involuntary.  <u>United States v. George</u>, 987 F.2d

25  1428 (9th Cir 1993) (defendant in hospital and suffering from possible drug overdose at time of

26  interrogation); <u>United States v. Kelly</u>, 953 F.2d 562 (defendant suffering from heroin withdrawal

18

at time of interrogation and finding that police did not engage in any coercive "take advantage"

conduct); United States v. Martin, 781 F.2d 671 (9ᵗʰ Cir. 1985) (defendant in hospital, in pain and

under influence of pain killer).  Examples of cases in which the defendant is so ill that

interrogation was improper are:

> In Townsend, a 19-year old heroin addict was arrested while under the influence of
> heroin. He was moved from police station to police station and run through a
> line-up over a period of approximately nine hours. During the interrogation process
> he went into drug withdrawal, was unresponsive to questioning, was injected by a
> doctor with phenobarbital and hyoscine and given extra  phenobarbital tablets to
> take later to alleviate the withdrawal symptoms. Questioning continued and he
> gave a full confession.
>
> In Mincey, the defendant was in an intensive care unit with a hip wound, damaged
> sciatic nerve and partial paralysis of his right leg. He had tubes in his throat and
> nose, a catheter in his bladder, he was hooked up to an i-v unit, and had received
> various drugs. He could not talk and had to write answers to the officer's questions.
> He was given a Miranda warning by the interrogating officer. In spite of the fact
> that the defendant asked repeatedly that interrogation stop until he could get a
> lawyer, the officer questioned him continuously for four hours.

United States v. Martin, 781 F.2d at 673 n.2 characterizing Townsend v. Sain, 372 U.S. 293, 83

S.Ct. 745 (1963); Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408 (1978).

The *sina qua non* for an involuntary confession is that the police engaged in

improper conduct while questioning.  Kelly, supra , 953 F.2d at 565 quoting Colorado v.

Connelly, 479 U.S. 157, 167, 107 S.Ct. 515 (1986).

The undersigned is in great doubt that petitioner can stretch his facts into a

Townsend/Mincey scenario.  This is so even after reviewing the Dr. Pablo Stewart declaration.

However, an evidentiary hearing will be ordered for these claims with the caveat to petitioner's

counsel to be frank with the court, and not ultimately pursue the issue if he cannot do so in good

faith in light of the above authority.  Failure to have a good faith basis in the facts after whatever

discovery is necessary for pursuing these claims at evidentiary hearing may result in sanctions.

### D.  Petitioner Was Incompetent to Waive Rights, Assist Counsel, and Stand Trial (Claim 13)

Two types of incompetency are recognized when no mention of incompetency is

made by counsel: (1) the trial judge, *sua sponte*, should have recognized that petitioner was incompetent and should have held a competency hearing; (2) in any event, a retrospective view demonstrates that petitioner was not competent to stand trial.  See Williams v. Woodford, 384 F.3d 567, 603-610 (9th Cir. 2004).

Petitioner makes no allegation whatsoever concerning any deficiency of the trial judge in this regard, and, of course, no counsel brought the issue of incompetency to the trial judge's attention.  See FAP at 76-77.  Therefore, a request for an evidentiary hearing is limited to the latter, substantive due process incompetency claim.  After reviewing the Stewart declaration, which renders an opinion on incompetency, the court orders an evidentiary hearing for Claim 13.[9]

The court has previously found petitioner competent to proceed in these habeas proceedings.  However, whether petitioner was competent to proceed at the time of his trial, is, of course, another matter.  The court has reviewed the Stewart Declaration, and finds that the facts presented, although problematic in establishing incompetency, i.e., the Declaration conflicts with the record at trial, see Boyde v. Brown, 404 F.3d 1159, 1167 (9th Cir. 2005), warrant an evidentiary hearing.

**E.  Petitioner Lacked the Requisite Mental State for Felony-Murder or the Alleged Special Circumstances (Claim 14)**

The district court has already found sufficient the evidence of the requisite intent for felony murder and the special circumstances.  Findings and Recommendations, 1/22/07, Docket # 84 at page 32 et seq., adopted by Order of 1/11/2008, Docket #122.  Petitioner is mistaken if he believes that he can simply ask for a "re-trial" on the intent issue by purporting to add additional facts at this time.  He must fit this claim within a recognized habeas claim such as ineffective assistance of counsel, see Claim 16(a), or actual innocence.  The undersigned, giving petitioner the benefit of the doubt, understands Claim 14 to be an attempt at stating an actual

---

[9]  Claim 13 overlaps in some respects with Claim 12 in that petitioner alleges in both claims that he was incompetent to waive his Miranda rights prior to interrogation.

1   innocence claim, i.e., actually innocent of felony murder.  See Carriger v. Stewart, 132 F.3d 463,

2   476 (9th Cir.1997) (en banc), for the strict standards for an actual innocence claim.  Petitioner

3   must show more than a doubt about his guilt, but must affirmatively prove his innocence.  This is

4   a tall order.

5          However, the undersigned does not have authority to simply deny the claim

6   without giving petitioner an evidentiary hearing on his claim.  The Stewart declaration contains

7   sufficient opinion (barely) to enable petitioner to proceed further.  An evidentiary hearing is

8   ordered for Claim 14.

9   **F. Ineffective Assistance of Counsel (Claim 15) (First Set of IAC Claims)**

10         The undersigned has already precluded an evidentiary hearing on Claims 15(c) and

11  15(d).  The remaining sub-claims are:

12  15(a) – Inadequate Preparation for Preliminary Hearing;

13  15(b) – Inadequate Investigation of the Facts Prior to Trial or to File any Motions;

14  With one exception, none of these remaining sub-claims warrants an evidentiary hearing.

15         First, non-structural errors which occur during or in connection with a probable

16  cause hearing are eviscerated by a conviction beyond a reasonable doubt.  United States v.

17  Mechanik, 475 U.S. 66, 70-72, 106 S.Ct. 938, 94–42 (1986) (grand jury error); Richie v. Sirmons,

18  563 F. Supp. 2d 1250, 1314-15 (N. D. Okla. 2008).  Petitioner's claim 15(a) herein is not

19  actionable.

20         Claim 15(b), with one exception, is simply a blunderbuss conclusion that counsel

21  should have prepared better for trial.  As set forth above, bald conclusions do not warrant an

22  evidentiary hearing, and do not even state a valid habeas claim.  Wacht v. Cardwell, 604 F.2d

23  1245, 1246 (n.2) (9th Cir. 1979).  It is one thing to argue that not all proof be submitted, but quite

24  another to simply conclude that counsel was ineffective every day, in every way.  Petitioner knows

25  how to be specific when alleging ineffective assistance of counsel.  See discussion of Claim 16,

26  infra.  The one exception is petitioner's assertion in the petition that his counsel was ineffective

1   for failure to move to suppress an involuntary confession.  Since an evidentiary hearing has been

2   ordered on the involuntary confession claim, this aspect to the ineffective assistance claim can be

3   joined with it.

4   **G.  Ineffective Assistance of Counsel re Performance at Guilt Phase of the Trial**

5   **(Claim 16)**

6           Petitioner lists nine aspects of counsel's guilt phase performance which he believes

7   to be ineffective.  Claims 16(b), (d), and (e) have already been determined *not* brought in a

8   diligent manner as these were belatedly brought in the second state habeas petition.

9           Claim 16(a) posits that petitioner was acting in a "sensory fog" at the time of the

10  Rumsey murder because of a combination of alcohol and methamphetamine use along side his

11  mental deficits, and that his counsel failed to properly develop this theory.  Petitioner referenced a

12  Dr. Whiting who gave such an opinion.  See also the Stewart declaration.  Although petitioner

13  does not expressly implicate the state law defense his trial counsel failed to adequately develop, it

14  is obviously one of voluntary intoxication.  While the record itself discounts such a claim, see

15  Claim 40 on which summary judgment was granted, and makes any extra-record claim

16  problematic, petitioner is entitled to an evidentiary hearing on this claim to develop the extra-

17  record facts presented to the state supreme court and here in federal court.

18          Claim 16(c) overlaps with 16(a) to a degree and asserts that trial counsel was

19  ineffective for failing to properly pursue mental health evidence which would have shown the

20  actual lack of intent, imperfect self-defense, and mistake (in entering the Rumsey apartment).  At

21  the court's direction, the declaration of  Dr. Stewart was filed wherein he opines, based on a

22  review of documentation and interviews, that petitioner's mental illnesses rendered petitioner

23  insane at the time (this does not appear to be a claim brought in the petition), and that he lacked

24  the intent required by law for murder and other felonious crimes for which petitioner was

25  convicted.  See Stewart declaration para. 41. The opinion warrants an evidentiary hearing under

26  the fairly *de minimis* legal standards insofar as it relates to actual claims made in the FAP.

1       Claim 16(f) involves the allegation that trial counsel unreasonably failed to ask for

2  jury instructions involving imperfect self-defense, voluntary intoxication, and circumstantial

3  evidence used to prove a mental state.  This claim must involve only the record evidence at trial

4  and whether counsel was unreasonable in not requesting the above instructions based on that

5  evidence.  The only possible extra-record evidence to be developed at evidentiary hearing would

6  be counsel's unexpressed reasoning for not requesting the instructions.[10]

7       This claim is simply a repeat of other claims already decided on summary

8  judgment, and in part, a misstatement of the record.  First, in Claim 68 decided on summary

9  judgment already (see p.58,  Findings and Recommendations, January 23, 2007), the court has

10  decided that petitioner could not show prejudice from his counsel's alleged failure to ask for an

11  imperfect self-defense jury instruction.  The repeat claim here obtains no different result.

12  Secondly, counsel did ask for, and receive, an instruction on intoxication.  RT 3737.  The claim

13  here misstates the record.  As set forth in the exhaustive discussions of failure to give a

14  manslaughter instruction found in the Findings and Recommendations, January 23, 2007, pages

15  48-57, and the Order adopting, January 11, 2008, the potential problem was not in failing to ask

16  for an intoxication instruction, but the lack of an involuntary manslaughter instruction to

17  accompany it.  In addition, the court has also finally ruled on petitioner's contention that the lack

18  of further instructions defining voluntary intoxication was error – finding none.  See Findings and

19  Recommendations at pp. 61-65, Claims 62, 66.  If there was no error in not giving the further

20  instructions, petitioner cannot have been prejudiced by his counsel's failure to ask for them.

21  Finally, the court has already ruled that no ineffective assistance was actionable because counsel

22  failed to ask for a specific instruction regarding the sufficiency of circumstantial evidence

23  necessary to prove intent.  See Findings and Recommendations on Claim 67 at pp. 68-69.  This

24
_____

25       [10]  In other words, counsel could not have been ineffective for refusing to request a jury
instruction based on evidence that had never been presented.  The instant claim is a different
26  claim from that of failing to develop the evidence and present it at trial in the first place, such
that an instruction would have been justified.

1  repeat claim (16(f)) is meritless.

2          Claim 16(g) again alleges that petitioner's counsel was ineffective for failing to

3  investigate and present evidence of petitioner's incompetence to stand trial.  See Claim 13 infra.

4  The evidentiary hearing ordered on that claim will suffice here as well.

5          Claim 16(h) asserts that counsel was ineffective for failing to acquire impeachment

6  evidence concerning four of the State's witnesses.  Specifically:

7          State's witness June E. Rice was arrested shortly after the instant offense, and held
         pending bail, before the judge who presided over petitioner's trial.  The DA did not
8        disclose that Ms. Rice's testimony, which was obtained after her arrest, would have
         been impeached either by the disclosure of the arrest or by the duress which
9        resulted therefrom.  Counsel did no investigation regarding Ms. Rice.

10 This description of an alleged error is quintessentially insufficient to obtain an evidentiary

11 hearing.  Nothing is said about the nature of Ms. Rice's arrest, or the sequellae to that arrest.  Its

12 impeachment value is completely unknowable.   Moreover, petitioner does not even recount what

13 it was about Rice's testimony that was importantly inconsistent with his own testimony.  No

14 hearing need be had on this clearly insufficiently stated claim.

15 Next:

16         The State also did not disclose, and counsel did not ascertain, that the victim,
        James Rumsey, who rose up in his chair, according to petitioner, had been arrested
17      for battery and was free on bail at the time of the crimes.  This also would have
        supported petitioner's claim that he acted in unreasonable self-defense, fearing an
18      attack.

19 Again, this bit of character evidence goes no distance in demonstrating ineffectiveness of counsel.

20 While evidence of a character trait pertinent to the circumstances of the charged crime may be

21 admissible, see e.g., Fed. R. Ev. 404(a)(2), Cal. Evid. Code § 1103(a), petitioner cannot show that

22 this evidence, if fleshed out, could have had any probative value in the case, and hence, that

23 counsel was ineffective for failing to pursue it.  Under the prosecution's theory, James Rumsey

24 was surprised by petitioner and was killed before Rumsey had any chance to initiate violence

25 against petitioner.  Under petitioner's theory, in a "sensory fog," petitioner had, uninvited, entered

26 into the residence of another armed with a weapon.  Rumsey would have had every right to defend

                                            24

1    himself, or at least accost the invader, under this theory.  Therefore, impeachment that Rumsey

2    could unlawfully initiate violence himself in other (unknown) situations would have had no

3    bearing on any aspect of petitioner's case.  No hearing need be held on this allegation.

4            The third witness involved was Roger Beard, the supposed drug dealer in Rice's

5    apartment who petitioner feared.  Petitioner avers he can show that Beard was a bad person prone

6    to violence.  According to petitioner's testimony, he armed himself with a knife before going to

7    complain about bad drugs because he feared Beard.  Petitioner posits that showing that Beard was

8    a bad person would have bolstered petitioner's testimony concerning the reason petitioner armed

9    himself with knife.  First, petitioner offers no proof that he was aware of the specific Beard

10   convictions he proffers in the FAP, at the time he committed the Rumsey murder.[11]  Thus, there

11   has been no showing that petitioner feared Beard specifically because of his criminal record.

12   Further, the undersigned is unaware of prosecution induced testimony attempting to prove that

13   Beard was a nice, gentle person, as opposed to the drug dealer he may have been, and therefore

14   should have been impeached.  Finally, as pointed out in the summary judgment, the prosecutions'

15   case did not depend upon a the formation of an intent to rob the Rumseys at the time petitioner

16   determined to confront Rice about bad drugs.  Findings and Recommendations, January 23 at pp.

17   36-37.  Even if petitioner knew about the specific conditions, and armed himself in whole or in

18   part because he was afraid of Beard, petitioner cannot show the prejudice required to overturn the

19   guilt verdict.  No confidence in the verdict is undermined because of the lack of this

20   impeachment.

21           Finally, petitioner alleges that his counsel was ineffective because he failed to

22   discover and impeach Marie Baker based upon her several convictions.  The court is genuinely

23   puzzled by this claim because later in the FAP, petitioner relies upon the Baker testimony to prove

24   _____

25           [11]  Petitioner could simply not have sought admission of character evidence of a non-
     victim; it is critical to petitioner's theory that he was aware of the specific conditions which
26   shaped his state of mind.

his asserted dispositive point that the evidence was insufficient to show that petitioner lacked the intent to commit the charge robbery/burglary felonies.  FAP, Claim 47.  The obvious question is why would petitioner attempt to impeach the witness he subsequently relies upon to this day.  Clearly, the testimony could not have been prejudicial to petitioner in the main.  Moreover, and relatedly, petitioner never does elucidate what it was about Baker's testimony that required impeachment.  This sub-claim is frivolous.

Claim 16(i) is a pot pourri of twelve (more) ineffective assistance claims at the guilt phase.  Some are simply boilerplate, general conclusions.  Some repeat theories made in other claims.  Some are simply inconsistent with other claims made elsewhere in this petition; some will require an evidentiary hearing.  The undersigned takes them one by one.  First, petitioner alleges, without specificity, that counsel failed to "adequately investigate and defend against the charged offenses."  No mention of this catch-all ground is made in the explanatory sections that follow with respect to other specific allegations.  The general conclusion does not state a cognizable habeas claim, <u>Rich v. Calderon</u> <u>supra</u>, and hence, does not warrant an evidentiary hearing.

Petitioner next alleges as (2) that counsel failed to investigate accomplice liability on the part of Amy Hadix and Marie Baker.  Counsel proffers some evidence as to his thoughts on the matter of accomplice liability and then concludes that trial counsel should have presented the accomplice evidence because this would have "reduced culpability" on the part of petitioner.  However, this argument does not belong at the guilt phase; rather it is a penalty phase argument, i.e., that in light of others being involved, and perhaps goading petitioner into the robbery/burglary, petitioner's actions were not as heinous as they were otherwise portrayed.  Otherwise, the fact that accomplices to petitioner may have been involved detracts not a whit from his guilt *per se* of the charged offenses.  Accomplices must share in the criminal purpose of the main perpetrator.  "'To prove that a defendant is an accomplice ... the prosecution must show that the defendant acted 'with knowledge of the criminal purpose of the perpetrator and with an intent

1   or purpose either of committing, or of encouraging or facilitating commission of, the offense.' ( [

2   Beeman, at p.] 560.) When the offense charged is a specific intent crime, the accomplice must

3   'share the specific intent of the perpetrator'; this occurs when the accomplice 'knows the full

4   extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or

5   purpose of facilitating the perpetrator's commission of the crime. (Ibid.)'" People v. McCoy,  25

6   Cal.4th 1111, 1118, 108 Cal. Rptr. 2d 188 (2001), quoting People v. Prettyman (1996) 14 Cal.4th

7   248, 259, 58 Cal. Rptr.2d 827.) [12]  Thus, in retrospect, and that is what this habeas petition is

8   about, unless petitioner was guilty of the charged offenses, there could be no accomplice liability.

9           It is true that when a potential accomplice is a witness against the main perpetrator,

10  an instruction may be given that the testimony may be viewed with distrust, CALJIC 3.18, and

11  that the perpetrator's guilt may not be based on the accomplice's testimony alone.  CALJIC 3.12.

12  Given that petitioner's own testimony was consistent with that of the proposed accomplices with

13  respect to what transpired up to the entry into the Rumseys' apartment, little would have been

14  gained by the "distrust" instruction.  Again, petitioner needed the testimony of Hadix and Baker to

15  establish his primary theory that his only intention after leaving the Baker apartment was to

16  confront Rice (and possibly Beard) about deficient drugs.  Why would he ask the jury to

17  disbelieve their testimony?[13]  And, there was certainly ample corroboration of the accomplice's

18  testimony – petitioner himself being the main corroborator.

19          Next in line, argument no. (3), contests trial counsel's actions in not challenging

20  the prosecution's forensic evidence.  Petitioner speculates *possibilities* of potential errors in the

21

22      [12]  Only a principal is an accomplice.  People v. Richardson  43 Cal.4th 959, 1023, 77
    Cal.Rptr.3d 163 (2008).  To be a principal, the witness must have either personally committed
23  the crime or aided and abetted in its commission. (§ 31.) " 'An aider and abettor is one who acts
    with both knowledge of the perpetrator's criminal purpose and the intent of encouraging or
24  facilitating commission of the offense.' " Richardson, at p. 1023, 77 Cal.Rptr.3d 163.

25      [13]  Again, petitioner's inconsistent theories at this federal habeas bespeaks an inference
    that none of the claims have merit – that petitioner is simply thrashing about in hopes that some
26  cognizable dust will rise.

1  collection of forensic evidence, primarily blood spatter evidence, without offering a scintilla of

2  evidence to controvert the results found – the primary result being that petitioner was present at

3  the scene when Rumsey's murder occurred.  Without offering *something* at this stage aside from

4  speculation, petitioner is not entitled to discovery, much less an evidentiary hearing.  <u>Rich v.</u>

5  <u>Calderon</u>, <u>supra</u>.  Moreover, all of the commentary on shoddy forensic practices means nothing in

6  terms of *Strickland* prejudice unless petitioner shows that he was prejudiced by the admission of

7  the evidence.  Petitioner conceded at trial, *and concedes here in this federal petition*, that he

8  stabbed James Rumsey, albeit he says in imperfect self defense, Claim 49, 57, or not otherwise in

9  control of his faculties (numerous claims).  He alleges his counsel was ineffective because he did

10  not further advance the defense of imperfect self-defense, which can only be a possibility if

11  petitioner in fact stabbed James Rumsey.  Claim 16(c).  In light of these concessions, petitioner's

12  speculations about the forensic evidence, admitted to show that petitioner was at the scene of the

13  murder, are frivolous.

14         Sub-sub claims (4), (5)and (6) all have to do with allegations about petitioner's

15  mental state at the time he committed the crimes, and for which this court has already ordered an

16  evidentiary hearing elsewhere with respect to ineffective assistance of counsel.

17         The remaining sub-claims (7)-(12) are simply boilerplate conclusions for which *no*

18  supporting evidence or explanation is given.[14]  As such conclusions do not state a cognizable

19  habeas corpus claim, they are not entitled to an evidentiary hearing.

20         In summary, claims 16(a), and 16(c) require an evidentiary hearing.  The

21

22       [14]   Counsel failed to:
(7) protect petitioner's right to an unbiased and representative jury during jury selection and voir dire;

23  (8) litigate the charged crimes, including appropriate pre-trial litigation;
(9) object to prosecutorial misconduct and erroneous instructions and to request appropriate

24  instructions;
(10) adequately advise petitioner of the risks and dangers of testifying;

25  (11) adequately assess the risks and dangers of having petitioner testify, especially considering his psychological and organic brain deficits; and (12) properly prepare petitioner to testify and for

26  cross-examination.

1   repetitious 16(g) incompetence claim will be held, but as set forth in Claim 13.  Claim 16(i),

2   insofar as it references a failure to prove accomplice liability, will be permitted an evidentiary

3   hearing, but only as it may have impacted the penalty phase.

4       **H**. **Failure to Disclose Exculpatory Evidence (Claim 22)**

5       Petitioner asserts that the prosecution's failure to disclose exculpatory, actually

6   impeaching, evidence deprived him of due process.  The claimed non-disclosure first related to

7   criminal records of the named persons: non-witnesses James Rumsey, the deceased victim, and

8   Robert Southward, a testified-about person with whom petitioner had fought and robbed prior to

9   the Rumsey killing.  There can be no doubt that the failure to disclose material impeachment

10  information, such as a criminal record of an important witness, is a due process violation in the

11  circumstances where the defense did not otherwise have access to this information.  United States

12  v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380 (1985) citing Giglio v. United States, 405

13  U.S. 150, 154, 92 S.Ct. 763, 766 (1972).

14      However, petitioner fundamentally misconstrues the extent of Giglio in that he

15  asserts the duty to disclose impeachment evidence extends to non-witnesses.  If the witness for

16  whom impeachment evidence is sought did not testify, the evidence is by definition immaterial.

17  United States v. Pena, 949 F.2d 751, 758-59 (5th Cir. 1991); United States v. Storey, 956 F.Supp.

18  934, 943 (D. Ka. 1997); United States v. Coggs, 752 F. Supp. 848, 849 (N.D. Ill. 1990).  No

19  evidentiary hearing need be held for non-witnesses Rumsey and Southward.[15]

20      With respect to witnesses Baker and Rice, petitioner is simply in error that criminal

21  records were not disclosed, or otherwise available to the defense.  Indeed, both witnesses were

22  incarcerated at the time of their testimony, and this incarceration was made known to the jury.  RT

23

24      [15]  The undersigned is not holding, of course, that evidence related to non-witnesses can
    never be exculpatory material.  However, where the basis for admission of the acquired
25  testimony is impeachment, e.g., criminal records, the sought material is not relevant.  The
    undersigned has previously explained in connection with Claim 16(h) why the criminal record of
26  Rumsey was otherwise inadmissible/irrelevant.

3128 (Baker); RT 3238 (Rice).  Their crimes were discussed before the jury.  RT 3148 (Baker);

3238 (Rice).  In addition, other unsavory aspects of the witness' life, e.g., drug addiction, were

provided to the jury.   Petitioner does not disclose the criminal history which he asserts was not

provided.  No evidentiary hearing need be had for these two witnesses.

**I. The Prosecution Induced Perjured, Inaccurate, and Unreliable Testimony (Claim 23).**

For this claim, petitioner takes portions of witness' testimony with which he is

displeased or for which the record at trial demonstrated previous inconsistencies, attaches a

"false" or "perjurious" label to it, and then concludes that the prosecution induced the false

testimony.  Petitioner attaches not a shred of support for his latter day claim of perjured testimony,

e.g., a witness recantation, an evidentiary proffer as to why the in-court testimony was false.

According to petitioner, a fact testified to by a witness at trial is *ipso facto* perjurious if the

witness did not recount the fact to the police investigators at the very first interview, or if the

witness changed a fact under repeated questioning.  No evidentiary hearing will be ordered on

such baseless speculation as petitioner truly seeks an evidentiary hearing to discover his case.

Petitioner in reality seeks an evidentiary hearing so that the court can make the desired credibility

assessment that the jury was unwilling to make.  After years of investigation, petitioner should

have been able to present a proffer as to the "true" facts if he had any evidence with which to do

so.

**J. The Prosecution Used Prior Convictions as Factors in Aggravation That Were Obtained In Violation of Petitioner's Rights (Claim 24)**

Without any basis for medical support, not even Dr. Stewart, petitioner concludes

that his longstanding drug, mental, and emotional problems made him essentially incompetent to

participate in criminal proceedings at all times in the past in which he was convicted of crime.

Petitioner contends that all of his previous counsel acted incompetently by not raising the issue of

petitioner's competence.  The claim is not legally cognizable.

1    In Lackawanna v. Coss, 532 U.S. 394, 121 S.Ct. 1567 (2001), the Supreme Court

2    held that a petitioner could not challenge previous, final convictions used to enhance his sentence

3    unless the conviction had been obtained in the absence of counsel.  See also Nunes v. Ramirez-

4    Palmer, 485 F.3d 432, 443 (9th Cir. 2007).  Although several justices, but not the majority, in

5    Lackawanna surmised that other exceptions might be later found, the Supreme Court has never

6    expanded the one basis for an exception to Lackawanna's general rule.  Because established

7    Supreme Court authority, or definitive Circuit precedent interpreting Lackawanna, is lacking for

8    petitioner's claim, it is legally non-cognizable, i.e., it would be a non-actionable new rule under

9    Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060 (1989).  See Triggs v. Chrones, 2007 WL 441389

10   *11 (N.D. Cal. 2007) rejecting the precise claim petitioner makes here.  No evidentiary hearing

11   will be ordered on a non-cognizable claim.

12   **K. Ineffective Assistance of Counsel Regarding Voir Dire (Claim 26)**

13   This claim depends entirely on an assessment of the record.  Counsel was either

14   unconstitutionally deficient in his voir dire and exercise of challenges, or he was not.  If there is

15   no conceivable tactical reason for such alleged ineptitude, and prejudice was suffered thereby,

16   trial counsel's protestations to the contrary will make no difference.  An evidentiary hearing shall

17   be denied without prejudice to resolving this claim on its merits after a record review.

18   **L. Ineffective Assistance of Counsel at the Penalty Phase (Claim 27)**

19   As emphasized by petitioner's counsel, and as observed by the California Supreme

20   Court on direct review, trial counsel presented *no* evidence at the penalty phase, and his final

21   argument consisted of *two* pages.  While sometimes less is more, the "nothing" herein cannot

22   reasonably be construed as "less," at least in light of the potentially mitigating evidence marshaled

23   by petitioner's counsel, see FAP at Claim 27, and Stewart Declaration, and which would have

24   been reasonably available to trial counsel.

25   The state supreme court on direct review refused to rule on this rather stark

26   allegation of ineffective assistance of counsel, and directed the issue to habeas corpus review

31

1  because it would involve evidence outside of the appellate record.  Lewis, 25 Cal. 4th at 675-676,

2  106 Cal. Rptr. 2nd at 682-683.  Although the first state habeas petition also containing this issue

3  was ruled upon shortly after the direct review, the state supreme court denied this claim without

4  comment.  At least on this record as developed by petitioner's habeas counsel, the undersigned

5  cannot thus far conceive of any reason for the "nothing" presentation of defense trial counsel.[16]

6  Failure to hold an evidentiary hearing at this juncture would constitute a miscarriage of justice.[17]

7         Petitioner lists 11 sub-categories of ineffective assistance, primarily concerned

8  with the lack of investigation/presentation of any mitigating evidence, with one category directed

9  at the lack of investigation/presentation of facts which would have mitigated the prosecution's

10  aggravating evidence.  Petitioner presents here, in stark contrast to many of the previous claims,

11  specific facts which on their face, if not controverted or otherwise explained, would prove the

12  Strickland prejudice prong.  There are a myriad of death penalty cases within the Ninth Circuit

13  which stand for this proposition even in the circumstances of their own case which show at least

14  some activity on the part of defense counsel.  See e.g., Detrich v. Ryan, 619 F.3d 1038 (9th Cir.

15  2010); Pinholkster v. Ayers, 590 F.3d 651 (9th Cir. 2009 (en banc); Stanley v. Schiro, 598 F.3d

16  612, 623-624 (9th Cir. 2010 (evidentiary hearing issue); Robinson v. Schiro, 595 F.3d 1086 (9th

17  Cir. 2010); Jones v. Ryan, 583 F.3d 626 (9th Cir. 2009).   Although it may be assumed that the

18  California Supreme Court with its silent denial found no prejudice, this finding is not an AEDPA

19  confirmable finding – at least on the present record before the undersigned.

20         Petitioner is entitled to an evidentiary hearing on every subsection within Claim

21  27.

22  _____

23      [16]  Especially for this claim, the undersigned does not understand the state court denial of
the request in the first habeas petition to further develop the facts.  Petitioner therein presented a
24  specific documentary of the possible, seemingly available-at-the-time, mitigating evidence which
made the lack of effort of petitioner's trial counsel appear astonishing at best, and a purposeful
abandonment at worst.

25

26      [17]  To the extent petitioner alleges he was incompetent to proceed at any time during his
trial, the court has already found such a claim eligible for evidentiary hearing.

1      **M. Cumulative Error, Ineffective Assistance (Claim 28), see also Claim 102**

2              Any ruling on these claims will have to await the results at evidentiary hearing.

3      Therefore, the undersigned denies the motion for evidentiary hearing on these claims, albeit

4      dependent on the other claims development at evidentiary hearing.

5      _Conclusion_

6              An evidentiary hearing is ordered on Claims: 10, 11, 12, 13, 14, 15(b) [involuntary

7      confession only-see #s 10, 11, 12], 16 (a), (c), (g) [see #13], (i) [penalty phase only], 27 (all sub-

8      claims).  All other claims, or parts of claims, for which a motion for evidentiary hearing was made

9      are denied.

10     Dated: November 8, 2010                    /s/ Gregory G. Hollows

11                                                _____
                                                  UNITED STATES MAGISTRATE JUDGE

       GGH:ggh
12     lewis0013.mtnevihg

13

14

15

16

17

18

19

20

21

22

23

24

25

26