1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MILTON LEWIS,                          Case No.  2:02-cv-0013-TLN-JDP (DP)

12             Petitioner,                   DEATH PENALTY CASE

13      v.                                   **FINDINGS & RECOMMENDATIONS**

14   DAO VANG,[1]                            ECF Nos. 176, 179, 180, 181, 182, 205, 218

15             Respondent.                   OBJECTIONS DUE WITHIN THIRTY DAYS

16

17          Petitioner is a state prisoner under sentence of death who challenges through writ of

18   habeas corpus his conviction for first-degree murder and his death sentence.  Respondent has

19   requested that several of the claims raised in petitioner's amended petition for writ of habeas

20   corpus be dismissed as procedurally barred, ECF Nos. 176, 205 at 66-68, and others be dismissed

21   pursuant to 28 U.S.C § 2254(d)(1).  ECF Nos. 182, 205.  After careful consideration of both

22   parties' briefs and of the state court record, the undersigned concludes that respondent has shown

23   that claims 4, 5, 15(c), 15(d), 16(b), 16(d), 16(e), 17, 18, 19, 20, 21, 30, 31, and 103 (except to the

24   extent it alleges ineffective assistance of prior habeas counsel) of the amended petition are

25   procedurally barred; claims 6, 9, 10, 11, 12, 13, 14, 15(b), 16(a), 16(c), 16(g), 16(i), 22, 23, 24,

26

27          [1] The undersigned substitutes Acting Warden Dao Vang as respondent in place of Ron
     Davis pursuant to Federal Rule of Civil Procedure 25(d).

28

                                              1

28, 32, 69, 70, 102, and 103 should be dismissed out of deference to the state court's summary

denials of these claims, per 28 U.S.C. § 2254(d); and claim 26 is unexhausted.  Accordingly, the

undersigned recommends that claims 4, 5, 6, 9, 10, 11, 12, 13, 14, 15(b), 15(c), 15(d), 16(a),

16(b), 16(c), 16(d), 16(e), 16(g), 16(i), 17, 18, 19, 20, 21, 22, 23, 24, 26, 28, 30, 31, 32, 69, 70,

102, and 103 of the amended petition be dismissed.

## PROCEDURAL HISTORY

Petitioner was convicted of first-degree murder and sentenced to death in 1990 in Shasta

County Superior Court.[2]  *People v. Lewis*, 25 Cal. 4th 610, 623-28 (2001).  Petitioner appealed

his conviction and sentence to the California Supreme Court, which, in 2001, affirmed the

judgments in a written opinion.  LD 2-AOB; LD 2-APP.OPN.[3]

While petitioner's appeal was pending in the California Supreme Court, he filed, in 1998,

a petition for writ of habeas corpus in that court.  LD 4-1SHC.  In October 2001, a few months

after issuing its opinion on petitioner's direct appeal, the California Supreme Court denied

petitioner's petition for writ of habeas corpus summarily.  LD 4-1SHC.ORD.  Petitioner sought

certiorari from the United States Supreme Court, which was denied in November 2001.  LD 3-

PET.CERT; LD 3-USSC.ORD.

Petitioner commenced proceedings in this court in January 2002, with a request for a stay

of his death sentence and for appointment of counsel.  ECF Nos. 1, 2.  On March 31, 2003, he

filed a petition for writ of habeas corpus in this court and requested the court hold the proceeding

in abeyance while he exhausted claims in state court.  ECF Nos. 34, 35.  The court struck from

the petition those claims that were unexhausted and ordered the case stayed and held in abeyance

pending their exhaustion.  ECF Nos. 39, 43.

---

[2] The court has previously described the evidence adduced at petitioner's trial.  ECF No. 84 at 15-20 (quoting *People v. Lewis*, 25 Cal. 4th 610, 623-28 (2001)); *see* ECF No. 122 (adopting same).

[3] Respondent lodged the state-court record on May 10, 2005.  ECF No. 51.  Herein, the lodged documents are cited consistent with the numbering and naming convention respondent utilized in his *Index for Lodging of Documents in Paper*, which accompanied the lodging, except for citations to the trial record, which are cited simply as "RT" (Reporter's Transcript), "CT" (Clerk's Transcript), or "ACT" (Augmented Clerk's Transcript).  *Ibid.*

1    In April 2003, petitioner filed a second petition for writ of habeas corpus in the California

2    Supreme Court.  LD 5-2SHC.  The California Supreme Court denied the petition in full,

3    summarily, in December 2004.  LD 5-2SHC.ORD.

4    Petitioner filed a first amended petition for writ of habeas corpus in this court on

5    December 13, 2004.  ECF No. 44.  Approximately two months later, he moved for summary

6    judgment or, alternatively, for an evidentiary hearing on claims 1, 2, 3, and 7 in that petition.

7    ECF No. 45.  Respondent opposed petitioner's motion and cross-moved for summary judgment

8    on the same claims.  ECF No. 50.  The previously assigned magistrate judge issued findings and

9    recommendations recommending that petitioner's motions be denied and respondent's motion for

10   summary judgment be granted.  ECF No. 56.

11   Shortly thereafter, respondent filed an "abbreviated Answer" to petitioner's first amended

12   petition for writ of habeas corpus.  ECF Nos. 55, 61.  Pursuant to the scheduling order issued by

13   the previously assigned magistrate judge, this answer only set forth affirmative defenses to some

14   of the claims and asserted a general denial to all of them.  ECF Nos. 59, 61.  Respondent also

15   moved for summary judgment on claims 8, 25, 29, 33-68, and 71-101.  ECF No. 63.  Petitioner

16   opposed this motion and cross-moved for summary judgment on claims 33, 36-43, 46-65, 67, 71-

17   85, 87, 88, 91-93, 98, 99, and 101.  ECF Nos. 69, 70.

18   On January 23, 2007, the then-assigned magistrate judge issued findings and

19   recommendations addressing the pending summary judgment motions.  ECF No. 84.  He

20   reiterated his prior recommendation that summary judgment be granted in favor of respondent on

21   claims 1, 2, 3, and 7.  ECF No. 84 at 5.  He recommended that respondent's second motion for

22   summary judgment be granted in full and that petitioner's cross-motion for summary judgment be

23   denied in full.  *Id*. at 7-8.  The district judge adopted these recommendations by order issued

24   January 11, 2008, resulting in the dismissal of claims 1-3, 7, 8, 25, 29, 33-68, and 71-101 of the

25   amended petition.  ECF No. 122; *see* ECF 84 at 5-8.

26   The district judge directed petitioner to file a request for evidentiary hearing on the claims

27   that the magistrate judge had not recommended be dismissed in summary judgment, ECF No. 96;

28   petitioner filed this request on May 4, 2007.  ECF Nos. 102, 103.  Petitioner then moved to stay

3

1   proceedings on the basis of his present incompetence.  ECF No. 128.  After briefing by the

2   parties, the court held an evidentiary hearing on petitioner's competence on November 10, 2009.

3   ECF No. 142.  On January 26, 2010, the then-assigned magistrate judge issued findings and

4   recommendations wherein he recommended that petitioner be determined competent to continue

5   in the instant proceedings.  ECF No. 150.  Over petitioner's objections, the district judge adopted

6   these findings and recommendations in full on September 2, 2010.  ECF No. 153.  Petitioner

7   appealed this order, which the Court of Appeals denied.  ECF Nos. 154, 166, 167, 184, 185.

8        On November 8, 2010, the then-assigned magistrate judge granted in part petitioner's

9   request for evidentiary hearing on some of the claims that had not been previously adjudicated in

10  summary judgment.  ECF No. 160.  He ordered that evidentiary hearings be held on claims 10;

11  11; 12; 13; 14; 15(b); 16(a), (c), (g), (i); and 27, but not on the remainder of the claims for which

12  petitioner had sought hearings.[4]  *Id*. at 1-2, 33.  On April 19, 2011, the then-assigned magistrate

13  judge asked the parties to address in briefing the effect of *Cullen v. Pinholster*, 563 U.S. 170

14  (2011), on the pending proceedings, including the effect, if any, on petitioner's entitlement to

15  evidentiary hearings.  ECF No. 168.  The parties complied, ECF Nos. 169, 170, and the then-

16  assigned magistrate judge vacated the scheduled evidentiary hearings and ordered the parties

17  brief, pursuant to *Pinholster*, the application of 28 U.S.C. § 2254(d)(1) to the claims for which

18  evidentiary hearings had previously been granted.  ECF No. 175.  The parties again complied.

19  ECF Nos. 179, 182.

20       At the request of petitioner, on May 26, 2011, the then-assigned magistrate judge asked

21  that the parties brief the application of *Walker v. Martin*, 562 U.S. 307 (2011), on the

22  proceedings.  ECF No. 173.  Respondent submitted a responsive brief asserting that claims 4, 5,

23  15(c), 15(d), 16(a), 16(b), 16(c), 16(d), 16(e), 17, 18, 19, 20, 21, 30, 31, and 103 were

24  procedurally barred under *Walker*.  ECF No. 176.  Petitioner filed an opposition brief and

25  respondent filed a reply.  ECF Nos. 180, 181.

26

27       [4] Petitioner had not sought an evidentiary hearing on four claims—claims 69, 70, 103, and
     15(d) of the first amended petition—and thus the then-assigned magistrate judge indicated that
28   they would be adjudicated on the record after evidentiary hearings were held.  ECF No. 160 at 2.

1    On May 9, 2019, the then-assigned magistrate judge observed that respondent had only

2    filed an "abbreviated answer," but not an answer on the merits, to some of the claims that had

3    survived summary judgment; these were claims 4, 5, 6, 9, 14, 17, 18, 19, 20, 21, 22, 23, 24, 26,

4    28, 30, 31, 32, 69, 70, 102 and 103.  ECF No. 196.  He directed respondent to file an answer and

5    petitioner to file his response, if any, in a traverse.  *Id.*  Respondent filed an answer to the claims

6    at issue on September 30, 2019, ECF No. 205, and petitioner filed a traverse on October 30, 2020.

7    ECF No. 218.

8        The undersigned was assigned to this proceeding on October 1, 2020.  ECF No. 214.  On

9    February 13, 2024, the undersigned directed both parties to submit to the court statements

10   addressing their interest in participating in a settlement conference, pursuant to petitioner's

11   request for same made in his traverse.  ECF No. 219; *see* ECF No. 218.  In response, respondent

12   indicated that he did not seek to participate in a settlement conference, while petitioner indicated

13   an interest in doing so.  ECF Nos. 220, 221.  Because the court finds it unfruitful to refer a case

14   for settlement when both parties are not amenable to it, the court refrains from directing the

15   parties to settlement discussions.[5]

16                                   **ANALYSIS**

17       In the briefing pending before the court, respondent asserts that some claims should be

18   dismissed out of deference to the state court's application of a procedural bar to them, ECF Nos.

19   176, 181, and some out of deference to the state court's denials of the claims on the merits.  ECF

20   Nos. 182, 205.  The undersigned considers each set of arguments in turn.

21   **I.       PROCEDURALLY DEFAULTED CLAIMS**

22       Respondent has asserted that claims 4, 5, 15(c), 15(d), 16(a), 16(b), 16(c), 16(d), 16(e),

23

24       ───────────────
         [5] The previously assigned magistrate judge asked the parties to address the effect, if any,
25   on the instant proceedings of the California Governor's declaration of a moratorium on all
     executions.  *See* ECF No. 196 at 4.  Since then, the Court of Appeals has held that the Governor's
26   moratorium does not render moot a challenge to execution methods because the moratorium
     could be lifted at any time.  *Cooper v. Newsom*, 13 F.4d 857 (9th Cir. 2021).  In briefing,
27   respondent represents that the moratorium has no effect on respondent's own interest in defending
     the judgments in this case.  ECF No. 205 at 1-2.  The undersigned therefore concludes that the
28   moratorium on executions neither renders moot nor otherwise alters the proceedings in this case.

                                        5

1   17, 18, 19, 20, 21, 30, 31, and 103 of the amended petition should be dismissed because the state

2   court properly denied them as untimely when raised in that court.  ECF No. 61 at 26-28; ECF No.

3   176.  Petitioner argues that the state court's ruling did not constitute a denial for untimeliness, or,

4   if it did, the timeliness bar does not deserve deference by this court.  ECF No. 180 at 1-16.

5   Petitioner further asks this court to defer ruling until a later date on the question of whether the

6   procedural bar should not be applied due to a showing of cause and prejudice or a fundamental

7   miscarriage of justice.  *Id.* at 17.  The undersigned concludes that the state court's application of

8   the timeliness bar to claims 4, 5, 15(c), 15(d), 16(b), 16(d), 16(e), 17, 18, 19, 20, 21, 30, 31, and

9   103 (except to the extent it alleges ineffective assistance of prior habeas counsel) of the amended

10  petition deserves deference and recommends that these claims and subclaims be dismissed.

11          *A.  Legal Standard*

12          As a matter of comity, the federal courts "will not review a question of federal law

13  decided by a state court if the decision of that court rests on a state law ground that is independent

14  of the federal question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S.

15  722, 729 (1991), *superseded on other grounds by* 28 U.S.C. § 2254(b) and *overruled on other*

16  *grounds by Martinez v. Ryan*, 566 U.S. 1 (2012).  For a claim to be procedurally barred, the

17  petitioner must have actually violated a state procedural rule, *see Wells v. Maass*, 28 F.3d 1005,

18  1008 (9th Cir. 1994), and the highest state court to consider the claim must have actually relied on

19  the procedural default to deny the claim.  *See Harris v. Reed*, 489 U.S. 255, 261-62 (1989);

20  *Loveland v. Hatcher*, 231 F.3d 640, 643 (9th Cir. 2000).  For a state procedural rule to be found

21  "independent of the federal question," *Coleman*, 501 U.S. at 729, the state law basis for the

22  decision must not be interwoven with federal law.  *Cooper v. Neven*, 641 F.3d 322, 332 (9th Cir.

23  2011); *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003); *LaCrosse v. Kernan*, 244 F.3d 702,

24  704 (9th Cir. 2001).  To be "adequate to support the judgment," *Coleman*, 501 U.S. at 729, the

25  rule must be "firmly established and regularly followed" at the time of the purported

26  default.  *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (quoting *Lee v. Kemna*, 534 U.S. 362, 376

27  (2002)); *see Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir. 1997) (holding that the question of

28  whether a state procedural bar is clear, consistently applied, and well-established is determined as

1  of the time the purported default occurred, not when a state court applied the bar to a claim).

2  The state bears the initial burden of pleading the existence of an independent and adequate

3  state procedural ground. *Williams v. Filson*, 908 F.3d 546, 577 (9th Cir. 2018); *Bennett*, 322 F.3d

4  at 585-86.  If the state makes this initial showing, the burden shifts to the petitioner to

5  demonstrate that the procedural ground is not adequate, for example because it was not

6  consistently applied at the time of the state court adjudication. *Williams*, 908 F.3d at 577.  If the

7  petitioner makes such a showing, the burden shifts back to the state to make a showing in rebuttal.

8  *Ibid*.

9  A federal court may elect not to apply an otherwise-valid procedural bar in two narrow

10  circumstances: if the petitioner can demonstrate cause for the default and prejudice as a result of

11  the alleged violation of federal law, or if the petitioner can show that failure to consider the claim

12  will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *see also Martinez*,

13  566 U.S. at 9-10; *Maples v. Thomas*, 565 U.S. 266, 280 (2012).  Ineffective assistance of counsel,

14  violating a petitioner's Sixth Amendment rights in the state direct appeal or habeas corpus

15  litigation, may constitute cause for the federal court excusing an otherwise valid procedural

16  default. *See Martinez*, 566 U.S. 1.

17  If the federal court finds a state's procedural default inapplicable, then the federal court

18  reviews the claim de novo. *Cone v. Bell*, 556 U.S. 449, 472 (2009); *Pirtle v. Morgan*, 313 F.3d

19  1160, 1167 (9th Cir. 2002).  Correspondingly, where a claim is meritless, the federal court may

20  deny it on that basis without first determining the adequacy, independence, and applicability of

21  any procedural bars asserted for the claim. *See, e.g.*, *Franklin v. Johnson*, 290 F.3d 1223, 1232

22  (9th Cir. 2002) ("[A]ppeals courts are empowered to, and in some cases should, reach the merits

23  of habeas petitions if they are, on their face and without regard to any facts that could be

24  developed below, clearly not meritorious despite an asserted procedural bar."); *see also Bell v.*

25  *Cone*, 543 U.S. 447, 451 n.3 (2005) (holding that an application for habeas corpus may be denied

26  on the merits even if unexhausted in state court).

27  Here, respondent asserts that the California Supreme Court denied the claims at issue

28  through application of the state's timeliness rules.  In California, a convicted person seeking

1   review of their judgment or sentence via writ of habeas corpus must file a petition in the state

2   court "as promptly as the circumstances allow," *In re Clark*, 5 Cal. 4th 750, 765, n. 5 (1993), and

3   "without substantial delay." *In re Robbins*, 18 Cal. 4th 770, 780 (1998); *see Walker v. Martin*,

4   562 U.S. 307, 310 (2011) (citing same).  In 2003, there was a presumption that a petition in a

5   capital case would be considered "filed without substantial delay if it [was] filed within 180 days

6   after the final due date for the filing of appellant's reply brief on the direct appeal . . . ." Cal.

7   Supreme Court Policies Regarding Cases Arising From Judgments of Death, Policy 3, Standard

8   1-1.1 (2002).[6]  If a habeas corpus petitioner files a petition with substantial delay, the state court

9   may nevertheless consider it if the petitioner shows that he delayed filing his petition because

10  "(1) he had good reason to believe other meritorious claims existed, and (2) the existence of facts

11  supporting those claims could not with due diligence have been confirmed at an earlier time."

12  *Clark*, 5 Cal. 4th at 781.  "Claims substantially delayed without justification," however, "may be

13  denied as untimely," under California's rules.  *Walker*, 562 U.S. at 310 (citing *Robbins*, 18 Cal.

14  4th at 780 and *Clark*, 5 Cal. 4th at 765 n.5).  Finally, even if the state court concludes that the

15  petition was filed with a substantial delay that was unjustified, it may nevertheless opt to ignore

16  the time bar and consider the petition's merits where, either, (i) a constitutional error created a

17  trial so fundamentally unfair that, absent the error, no reasonable judge or jury would have

18  convicted the petitioner; (ii) the petitioner is innocent; (iii) the sentencing judge or jury had such a

19  grossly misleading profile of the petitioner that absent the error, no reasonable sentencer would

20  have imposed a sentence of death; or (iv) "the petitioner was convicted or sentenced under an

21  invalid statute."  *Clark*, 5 Cal. 4th at 797-98.

22      *B. The State Court Did Not Apply a Timeliness Bar to Subclaims 16(a) or 16(c) of the*

23          *Amended Petition*

24      As a threshold matter, the federal court may only defer to the state court's denial of a

25  claim on state-law, procedural grounds if the state court, as a matter of historical fact, actually did

26  _____

27      [6] Petitioner does not dispute that the claims raised in his second state habeas corpus
    petition were not timely under California rules.  *See* ECF No. 180 at 2-17; *see generally* Cal.
    Supreme Court Policies Regarding Cases Arising From Judgments of Death, Policy 3, Standard

28  1-1.1 (1998 & 2002 rev'ns).

1    rely on such grounds to deny relief on the claim. *Harris v. Reed*, 489 U.S. 255, 261 (1989);

2    *Caldwell v. Mississippi,* 472 U.S. 320, 327 (1985); *Cnty. Ct. of Ulster Cnty., N. Y. v. Allen*, 442

3    U.S. 140, 150-52 (1979). Here, respondent argues that claims 4, 5, 15(c), 15(d), 16(a), 16(b),

4    16(c), 16(d), 16(e), 17, 18, 19, 20, 21, 30, 31, and 103 of the amended petition had been

5    previously raised in petitioner's second petition for writ of habeas corpus in the state court and

6    that the state court denied them as untimely. ECF No. 61 at 23-24, 26-28; ECF No. 176 at 3-5.

7    Review of the record indicates that respondent is incorrect as to subclaims 16(a) and 16(c) of the

8    amended petition. Respondent argues that these subclaims were raised in state court as claim 6 of

9    petitioner's second state court petition for writ of habeas corpus. ECF No. 61 at 24. In fact,

10   subclaim 16(a) of the amended petition was first raised in state court as subclaim 9(a) of

11   petitioner's first petition for writ of habeas corpus in state court. *Compare* ECF No. 44 at 88-92

12   *with* LD 4-1SHC at 43-46. Subclaim 16(c) of the amended petition in this court was raised in

13   state court as subclaim 9(b) of petitioner's first petition for writ of habeas corpus filed in the

14   California Supreme Court. *Compare* ECF No. 44 at 101-104 *with* LD 4-1SHC at 46-50. Claim 6

15   of petitioner's second state court petition for writ of habeas corpus is raised in this court as

16   subclaim 16(b) of the amended petition. *Compare* ECF No. 44 at 92-101 *with* LD 5-2SHC at 48-

17   58. Review of the state court record further reveals that the California Supreme Court did not

18   deny subclaim 16(a) or 16(c)—i.e., subclaims 9(a) and 9(b) of petitioner's first state habeas

19   corpus petition—for untimeliness. *See* LD 4-1SHC.ORD. Respondent has therefore failed to

20   show that subclaims 16(a) and 16(c) should be dismissed out of deference to the state court's

21   application of the timeliness bar to these subclaims. *See Harris*, 489 U.S. at 261.

22           *C. The State Court Denied The Claims At Issue As Untimely, And This Determination*

23                *Deserves Deference By This Court*

24           *1. The California Supreme Court's Ruling Constituted a Denial for Untimeliness*

25           Claims 4, 5, 15(c), 15(d), 16(b), 16(d), 16(e), 17, 18, 19, 20, 21, 30, 31, and 103 of the

26   amended petition were raised in the California Supreme Court in petitioner's second petition for

27   writ of habeas corpus and were denied summarily. LD 5-2SHC at 19-32, 45-75, 78-108; LD 5-

28   2SHC.ORD; *see* ECF No. 44 at 17-19; ECF No. 180 at 2. Petitioner argues that the California

1 | Supreme Court's order denying these claims did not clearly and expressly indicate they were

2 | denied due to untimeliness, thus precluding deference to that bar by this court. The undersigned

3 | concludes that the state court's order reflected an application of a state-law procedural bar, as the

4 | state court denied relief due to the petition's untimeliness, in the alternative to also denying relief

5 | on the merits.

6 | Because the procedural bar doctrine relies, as a threshold matter, on the state court having

7 | actually denied the claim through the invocation of a state-law procedural bar, ambiguity may

8 | arise where the state court has provided multiple reasons for its denial of the claim. Where the

9 | state court has denied the claim on the merits and, alternatively, through application of a

10 | procedural bar, the federal court will defer to the state-law grounds if the state court "'clearly and

11 | expressly' states that its judgment rests on a state procedural bar," even if as an alternative

12 | holding. *Harris*, 489 U.S. at 263 (quoting *Michigan v. Long*, 463 U.S. 1032, 1041 (1983)); *see*

13 | *also Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

14 | Here, the state court's order denying petitioner's habeas corpus petition stated, in its

15 | entirety:

16 | 
17 | 
18 | The petition for writ of habeas corpus filed on April 1, 2003, is
denied. Each claim is denied on the merits for failure to state a
prima facie case for relief. Each claim is barred as untimely (*see
In re Robbins* (1998) 18 Cal.4th 770, 780-781; *In re Clark* (1993) 5
Cal.4th 750, 763-799) except claim 18 insofar as it alleges
ineffective assistance of prior habeas counsel. Each claim is
barred as successive (*see In re Clark*, *supra*, 5 Cal.4th at p. 767-
768) except claim 18 insofar as it alleges ineffective assistance of
prior habeas counsel and claim 6 insofar as it alleges ineffective
assistance of trial counsel in failing to investigate and present
evidence of petitioner's mental state during the crimes.
Insofar as it alleges ineffective assistance of trial counsel in failing
to investigate and present evidence of petitioner's mental state
during the crimes, claim 6 is barred as repetitive of a claim
presented in a prior petition. (*In re Miller* (1941) 17 Cal.2d 734,
735.) Claim 16 is barred because, being based entirely on the facts
in the appellate record, it could have been, but was not, raised on
appeal. (*See In re Harris* (1993) 5 Cal.4th 813, 825, fn. 3; *In re
Dixon* (1953) 41 Cal.2d 756, 759.) Claim 10 is barred because it
was not asserted at trial and it does not depend substantially on
facts that petitioner was unaware of and could not reasonably have

known at trial. (*In re Seaton* (2004) 34 Cal.4th 193, 200.).

LD 5-2SHC.ORD; *see also* ECF No. 180 at fn.3 (citing same).  Petitioner argues that the language employed by the California Supreme Court in invoking the timeliness bar does not indicate that it actually—clearly and expressly—denied relief on the basis of its application of this bar.  ECF 180 at 5-12.  The undersigned cannot agree.  To be sure, in some cases, a state court has been more explicit that its invocation of a procedural bar was an alternative holding to a denial on the merits, or vice versa.  *See, e.g.*, *Ayala v. Chappell*, 829 F.3d 1081, 1093 (9th Cir. 2016); *Loveland v. Hatcher*, 231 F.3d 640, 642 (9th Cir. 2000); *Bargas v. Burns*, 179 F.3d 1207, 1213-14 (9th Cir. 1999).  Nevertheless, the California Supreme Court's ruling here that each claim "is denied on the merits" and also "is barred as untimely," LD 5-2SHC.ORD, seems plainly to convey that these are alternative holdings, either one of which was sufficient to justify the denial of the petition.  *See generally Moore v. Maricopa Cnty. Sheriff's Off.*, 657 F.3d 890, 895 (9th Cir. 2011); *see, e.g.*, *Zapata v. Vasquez*, 788 F.3d 1106, 1111-12 (9th Cir. 2015); *Bennett v. Mueller*, 322 F.3d 573, 578 (9th Cir. 2003).  This seems quite different than those cases where the state court acknowledges briefly that a claim was unpreserved, but nevertheless engages in a substantial discussion of the federal constitutional merits of the claim.  In those cases, the reviewing courts have concluded that the state-court denial was, at base, a merits denial, due to the length and depth of the federal law discussion, although the state court had also mentioned or cited state-law principles.  *See, e.g.*, *Harris*, 489 U.S. 255; *Caldwell*, 472 U.S. at 327; *Nunnemaker v. Ylst*, 896 F.2d 1200, 1203-04 (9th Cir.), *opinion amended and superseded,* 904 F.2d 473 (9th Cir. 1990); *cf. Long*, 463 U.S. at 1043-44.  Here, the state court did not engage in a lengthy discussion of the merits of any of the claims at issue; its statements that the petition was denied on the merits and each claim was barred as untimely are equally terse.  It did not indicate that it was merely acknowledging the possible applicability of the timeliness rule to petitioner's claims, but, instead, forthrightly declared that each claim was barred as untimely.  Although the state court could have made more explicit that its holdings were in the alternative, the totality of language employed by the state court in its order indicates that petitioner's claims were denied

11

1    both on their merits and because they were untimely under state rules.  Thus, the undersigned

2    finds that the California Supreme Court denied claims 4, 5, 15(c), 15(d), 16(b), 16(d), 16(e), 17,

3    18, 19, 20, 21, 30, 31, and 103 (except insofar as it alleges ineffective assistance of prior habeas

4    counsel), of the amended petition through the application of California's timeliness rules

5    governing habeas corpus filings.

6            *2.  California's Timeliness Bar Was Independent and Adequate at the Time of the Default*

7            Respondent has pled that California's timeliness bar was an adequate state procedural

8    ground as applied to petitioner.  ECF No. 176 at 2-5; *see Williams*, 908 F.3d at 577; *Bennett*, 322

9    F.3d at 585-86.  In *Walker v. Martin*, 562 U.S. 307, 317-21 (2011), the Supreme Court

10   specifically considered California's timeliness bar and concluded that it was "adequate" under the

11   procedural bar doctrine at the time of petitioner's default in 2002, as it was both firmly

12   established and consistently followed at that time.  *Walker*, 562 U.S. at 317-21.  Petitioner has

13   made no showing that *Walker* is somehow distinguishable from his case.  *See* ECF 180 at 3-4, 12-

14   17; *Williams*, 908 F.3d at 577 (describing petitioner's burden at this stage).  The undersigned

15   finds, therefore, that California's timeliness bar was adequate at the time of the default in

16   petitioner's case.

17           Petitioner argues that California's timeliness bar does not deserve deference because it is

18   not independent of federal law, since, in deciding whether to apply an exception to the timeliness

19   rule, the state court would have considered the merits of the federal claims.  ECF No. 180 at 13-

20   17.  Petitioner's argument has been foreclosed by the Ninth Circuit.  In *Bennett v. Mueller*, 322

21   F.3d 573 (9th Cir. 2003), the Ninth Circuit considered the California Supreme Court's application

22   of timeliness bars in opinions it issued in habeas corpus cases after August 3, 1998, and

23   concluded that this bar "is not interwoven with federal law, [but] it is an independent state

24   procedural ground" for the denial of a claim.  322 F.3d at 581.  The Ninth Circuit observed that,

25   prior to that date, the California Supreme Court had "previously considered the federal

26   constitutional merits of the petitions in determining whether the petitions qualified for an

27   exception to the rule of procedural default."  *Ibid*.  On August 3, 1998, however, the California

28   Supreme Court issued its decision in *Robbins*, 18 Cal. 4th 770, in which it expressly disavowed

1   this practice.  It held that, when applying any of the first three exceptions set forth in *Clark*, 5 Cal.

2   4th at 797-98, it would consider state law.[7]  *Robbins*, 18 Cal. 4th at 812 n.32; *see Bennett*, 322

3   F.3d at 582.  Moreover, when considering the first *Clark* exception—whether the error

4   "constitutes 'error of constitutional magnitude' leading to 'a trial that was so fundamentally unfair

5   that absent the error no reasonable judge or jury would have convicted the petitioner,'" *Robbins*,

6   19 Cal. 4th at 811 (quoting *Clark*, 5 Cal. 4th at 811)—it specifically would "assume, for the

7   purpose of addressing the procedural issue, that a federal constitutional error is stated" and then

8   determine if, as a matter of state law, such an error was of the nature as to satisfy the remaining

9   language of the exception.  *Robbins*, 19 Cal. 4th at 811.  The Ninth Circuit rejected the argument

10  that the California Supreme Court's consideration of the state constitutional basis for habeas

11  claims necessarily implicated comparable federal constitutional principles.  *Bennett*, 322 F.3d at

12  582.  Here, petitioner filed his second state habeas corpus petition in on April 1, 2003, almost five

13  years after the California Supreme Court's issuance of *Robbins*, and, given the procedural posture

14  of his case in state court, the principles set forth in *Robbins* would have been applied by the

15  California Supreme Court to his second state habeas corpus petition.  *See id.* at 579-82; LD 2-

16  ARB (petitioner's reply brief on direct appeal filed Aug. 3, 1998); Cal. Supreme Court Policies

17  Regarding Cases Arising From Judgments of Death, Policy 3, Standard 1–1.1 (1998 & 2002

18  rev'ns) (habeas petition timely if filed 90 or 180 days, respectively, from the filing of direct

19  appeal reply brief).  Therefore, per *Bennett*, at the time of the purported default in petitioner's

20  case, California's timeliness bar was independent of federal law

21         Accordingly, respondent has met his burden to show that the timeliness bar was

22

23         [7] As noted above, under *Clark*, the California courts may choose not to apply the
    timeliness bar to a habeas petition filed with an unjustified, substantial delay if (i) a constitutional
24  error created a trial so fundamentally unfair that, absent the error, no reasonable judge or jury
    would have convicted the petitioner; (ii) the petitioner is innocent; (iii) the sentencing judge or
25  jury had such a grossly misleading profile of the petitioner that absent the error, no reasonable
    sentencer would have imposed a sentence of death; or (iv) "the petitioner was convicted or
26  sentenced under an invalid statute."  *Clark*, 5 Cal. 4th at 797-98.  In *Bennett*, as here, petitioner
    did not invoke the fourth *Clark* exception.  *Bennett*, 322 F.3d at 582 n.1; *see* LD 5-2SHC at 106;
27  ECF No. 180 at 2-17.

28

1   independent and adequate relative to petitioner's second petition for writ of habeas corpus in state

2   court, and petitioner has not rebutted this showing. *See Williams*, 908 F.3d at 577; *Bennett*, 322

3   F.3d at 585-86. This court has no reason not to defer to the timeliness bar that the state court

4   applied to claims 4, 5, 15(c), 15(d), 16(b), 16(d), 16(e), 17, 18, 19, 20, 21, 30, 31, and 103 (except

5   insofar as it alleges ineffective assistance of prior habeas counsel), of the amended petition. *See*

6   *Coleman*, 501 U.S. at 729.

7              *3.  No Showing of Cause and Prejudice or a Fundamental Miscarriage of Justice*

8         Finally, petitioner seeks leave of court to brief separately the issues of whether this court

9   should decline to defer to the procedural bar at issue because the bar resulted from a violation of

10  federal constitutional law or because application of the bar would result in a fundamental

11  miscarriage of justice. *See* ECF 180 at 17; *Martinez*, 566 U.S. at 9-10; *Schlup v. Delo*, 513 U.S.

12  298, 315 (1995); *Coleman*, 501 U.S. at 750. Petitioner neither provides an explanation of why he

13  was unable to address these issues in his brief, nor makes any showing that further deferring

14  resolution of these issues is warranted under law, serves judicial economy, or is otherwise

15  appropriate. *See generally Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (in habeas corpus

16  cases, federal courts "ordinarily should" resolve procedural bar issues first). The undersigned is

17  unpersuaded that further deferring resolution of the procedural bars issue is justified.

18        For these reasons, the undersigned recommends that respondent's request to dismiss

19  claims 4, 5, 15(c), 15(d), 16(b), 16(d), 16(e), 17, 18, 19, 20, 21, 30, 31, and 103 (except insofar as

20  it alleges ineffective assistance of prior habeas counsel), of the amended petition be granted.

21  **II.      APPLICATION OF 28 U.S.C. § 2254(d)**

22        Respondent argues that claims 4, 5, 6, 9, 10, 11, 12, 13, 14, 15(b), 16(a), 16(c), 16(g),

23  16(i), 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 30, 31, 32, 69, 70, 102, and 103 should be denied

24  pursuant to 28 U.S.C. § 2254(d)(1) because the state court's merits denial of these claims was not

25  contrary to, or an unreasonable application of, clearly established federal law. ECF Nos. 182,

26  205. The undersigned has concluded that some of these claims—claims 4, 5, 17, 18, 19, 20, 21,

27  30, 31, and some of the allegations comprising claim 103—should be dismissed because the state

28  court, in addition to summarily denying them on their merits, denied them in the alternative

1  through the application of the independent and adequate state procedural bar of untimeliness.

2  Thus, the undersigned considers whether section 2254(d)(1) is satisfied for the remaining

3  identified claims.

4  **A.  LAW GOVERNING THE APPLICATION OF 28 U.S.C. § 2254(d)**

5  Title 28 U.S.C. § 2254 confers upon a federal district court the jurisdiction to consider a

6  petition for writ of habeas corpus challenging a state court conviction.  A writ of habeas corpus is

7  available under section 2254 only on the basis of some transgression of federal law binding on the

8  state courts.  *See Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1994); *Middleton v. Cupp*, 768 F.2d

9  1083, 1085 (9th Cir. 1985).  A federal writ is not available for alleged error in the interpretation

10  or application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v.*

11  *California*, 202 F.3d 1146, 1149 (9th Cir. 2000); *Middleton*, 768 F.2d at 1085.

12  Where a state court resolves a federal constitutional claim on the merits, the petitioner in

13  federal court may not succeed on that claim absent a showing that the state court resolution of the

14  claim was contrary to law or unreasonable.  28 U.S.C. § 2254(d).  Congress adopted this standard

15  when it revised the habeas statutes in 1996 as part of the Anti-terrorism and Effective Death

16  Penalty Act ("AEDPA").  To meet the standards, a petitioner must establish that the state court's

17  adjudication of the claim

18
19  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

20
21  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

22  28 U.S.C. § 2254(d).  Section 2254(d) is a gateway.  If a petitioner satisfies either subsection (1)

23  or (2) for a claim, then the federal court considers that claim de novo.  *See Panetti v. Quarterman*,

24  551 U.S. 930, 953 (2007); *Frantz v. Hazey*, 533 F.3d 724, 737 (9th Cir. 2008).

25  Under AEDPA, the state court's determination is given a high degree of deference and, in

26  considering whether either subsection of 2254(d) is met, the focus of the federal court's inquiry is

27  only the record that had been before the state court at the time of its adjudication.  *Cullen v.*

28  *Pinholster*, 563 U.S. 170, 180-82 (2011).  In order to satisfy section 2254(d), the petitioner "must

15

1   show that the state court's ruling on the claim being presented in federal court was so lacking in

2   justification that there was an error well understood and comprehended in existing law beyond

3   any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011);

4   *see also Amado v. Gonzalez*, 758 F.3d 1119, 1131-32 (9th Cir. 2014).  Thus, federal habeas relief

5   is precluded if "'fairminded jurists could disagree' on the correctness of the state court's

6   decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

7   This objective standard of reasonableness applies to review under both subsections of 28 U.S.C.

8   § 2254(d).  *See Hibbler v. Benedetti*, 693 F.3d 1140, 1146-47 (9th Cir. 2012).

9           The federal court must engage in the deferential review even where the state court has not

10  provided a reasoned decision.  *Richter*, 562 U.S. at 99-100.  The state court's summary denial of a

11  habeas corpus clam is presumed to be a denial on the merits and the federal court must defer to

12  the state court's denial if review of the state court record shows any "reasonable basis for the state

13  court to deny relief."  *Richter*, 562 U.S. at 98.  The federal court "must determine what arguments

14  or theories . . . could have supported . . . the state court's decision; and then it must ask whether it

15  is possible fairminded jurists could disagree that those arguments or theories are inconsistent with

16  the holding in a prior decision of [the Supreme] Court."  *Id.* at 102.  The petitioner bears "the

17  burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'"

18  *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

19          When reviewing the California Supreme Court's summary denial of a petition for writ of

20  habeas corpus that had been brought in state court, this court must consider that

21          the California Supreme Court's summary denial of a habeas petition
            on the merits reflects that court's determination that "the claims
22          made in th[e] petition do not state a prima facie case entitling the
            petitioner to relief."  It appears that the court generally assumes the
23          allegations in the petition to be true, but does not accept wholly
            conclusory allegations, and will also "review the record of the trial .
24          . . to assess the merits of the petitioner's claims."

25  *Pinholster*, 563 U.S. at 188 n.12 (quoting *In re Clark*, 5 Cal. 4th 750, 770 (1993), and citing

26  *People v. Duvall*, 9 Cal. 4th 464, 474 (1995)).  Accordingly, in these instances, the absence of a

27  prima facie case is the state-court determination that this court reviews under section 2254(d) and

28  that determination is considered a denial "on the merits" for the purposes of AEDPA.  *See*

16

1    *Pinholster*, 563 U.S. at 190; *Ochoa v. Davis*, 50 F.4th 865, 888 (9th Cir. 2022); *Nunes v. Mueller*,

2    350 F.3d 1045, 1054-55 (9th Cir. 2003).  A petitioner establishes a prima facie case of a

3    constitutional violation if he made allegations sufficient to support the claim and demonstrated

4    that "he ha[s] sufficient evidence for a reasonable fact finder to conclude" that he can prove his

5    claim.  *Nunes*, 350 F.3d at 1054-55.  If this court finds that petitioner had unarguably presented a

6    prima facie case for relief on a claim to the state court, the state court's summary rejection of that

7    claim was unreasonable. *Id.*

8            Under section 2254(d), the state court decision is not entitled to deference if either

9    subsection (d)(1) or (d)(2) is met. *See* 28 U.S.C. § 2254(d) (listing subsections in the disjunctive).

10   Subsection (d)(1) states that no deference is owed if the state court decision reflects "a decision

11   that was contrary to, or involved an unreasonable application of, clearly established Federal law."

12   28 U.S.C. § 2254(d)(1).  "Clearly established Federal law" is that which was set forth in the

13   United States Supreme Court's "applicable holdings," *Carey v. Musladin*, 549 U.S. 70, 74 (2006),

14   rather than dicta, at the time the state court decided the issue.  *Cannedy v. Adams*, 706 F.3d 1148,

15   1157 (9th Cir. 2013); *see also Stanley v. Schriro*, 598 F.3d 612, 617 (9th Cir. 2010)), *amended on*

16   *other grounds*, 733 F.3d 794 (9th Cir. 2013).  While "circuit court precedent may be persuasive in

17   determining what law is clearly established and whether a state court applied that law

18   unreasonably," *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010), circuit precedent may not be

19   "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal

20   rule that th[e] [Supreme] Court has not announced."  *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)

21   (citing *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam)).  Additionally, where courts

22   of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly

23   established Federal law" governing that issue.  *Carey*, 549 U.S. at 77.

24           A state court decision is "contrary to . . . clearly established Federal law" under subsection

25   (d)(1) if it applies a rule contradicting a holding of the Supreme Court or reaches a result different

26   from Supreme Court precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S.

27   634, 640 (2003).  A state court decision is an "unreasonable application" of clearly established

28   federal law if "the state court correctly identifies the governing legal principle . . . but

17

1  unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002)

2  (citing *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000)).  When the federal court reviews the

3  summary denial of a habeas corpus petition by the state court—where, by virtue of it having been

4  a summary denial, the state court made no factual findings—the federal court analyzes the state-

5  court decision under 2254(d)(1), because the state court's determination that petitioner's

6  allegations if true did not state a prima facie case for relief is a legal determination, rather than a

7  factual one.  *Prescott v. Santoro*, 53 F.4th 470, 479 (9th Cir. 2022).

8         Subsection 2254(d)(2) provides that an unreasonable factual determination by the state

9  court is not entitled to deference.  *See* 28 U.S.C. § 2254(d)(2).  There are two ways a petitioner

10  may satisfy subsection (d)(2): he may show the state court's findings of fact "were not supported

11  by substantial evidence in the state court record" or he may "challenge the fact-finding process

12  itself on the ground it was deficient in some material way."  *Hibbler*, 693 F.3d at 1146 (citing

13  *Taylor v. Maddox*, 366 F.3d 992, 999-1001 (9th Cir. 2004), *abrogated on other grounds by*

14  *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014)); *see also Hurles v. Ryan*, 752 F.3d 768,

15  790-91 (9th Cir. 2014).  A state court need not hold an evidentiary hearing if the evidence already

16  on the record suffices to resolve the relevant factual question.  *Hibbler*, 693 F.3d at 1147; *Earp*,

17  431 F.3d at 1167-70; *Perez v. Rosario*, 459 F.3d 943, 951 (9th Cir. 2006) (holding no hearing

18  necessary where "the record conclusively establishes a fact or where petitioner's factual

19  allegations are entirely without credibility"); *cf. Landrigan v. Schriro*, 550 U.S. 465, 474 (2007)

20  (in federal habeas corpus proceedings, a district court may decline to hold an evidentiary hearing

21  "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief").

22         If a petitioner shows that section 2254(d)(1) or (d)(2) is satisfied, this court may review

23  the merits of the claim de novo.  28 U.S.C. § 2254(d); *see Panetti*, 551 U.S. at 953; *Frantz*, 533

24  F.3d at 737.

25  **B.  CLAIMS FOR RELIEF**

26  **Claim 6**

27         In Claim 6, petitioner alleges that his trial counsel had a conflict of interest that prevented

28  him from effectively representing him.  ECF No. 44 at 50-52.  Specifically, he alleges that trial

18

1   counsel's past representation of Roger Beard in a drug-related misdemeanor case engendered in

2   counsel a conflict, causing him to choose not to present the testimony of Mr. Beard, or other

3   evidence, to establish that Mr. Beard was a drug dealer with a violent past, whom petitioner had

4   reason to fear at the time of the crimes.  *Id.* at 51-52.  Petitioner presented this claim to the

5   California Supreme Court in his first petition for writ of habeas corpus in that court, which denied

6   it summarily on the merits.  LD 4-1SHC at 73-76; LD 4-1SHC.ORD.  That denial was reasonable

7   and is entitled to deference under 28 U.S.C. § 2254(d).

8       A.    *Legal Standard*

9       The Sixth Amendment's guarantee of effective assistance of counsel includes, as a

10  prerequisite, that defense counsel does not labor under a conflict of interest at the time of their

11  representation of a criminal defendant.  *Mickens v. Taylor*, 535 U.S. 162, 166 (2002).  The United

12  States Supreme Court has held that reversal is automatic where defense counsel actively,

13  simultaneously represented parties with adverse interests and objected contemporaneously to the

14  appointment.  *Holloway v. Arkansas*, 435 U.S. 475 (1978); *see Mickens*, 535 U.S. at 168.  Where

15  there was no objection at trial, however, the habeas corpus petitioner may only win relief if he

16  shows that defense counsel had "an actual conflict of interest [that] adversely affected his . . .

17  performance."  *Cuyler v. Sullivan*, 446 U.S. 335, 348-49 (1980).  The Supreme Court has

18  recognized that a defense counsel's concurrent representation of parties with adverse interests

19  creates an actual conflict of interest, requiring reversal under *Sullivan*.  *Mickens*, 535 U.S. at 168;

20  *see Rowland v. Chappell*, 876 F.3d 1174, 1191-93 (9th Cir. 2017) ("[I]n *Mickens*, the Supreme

21  Court explicitly limited this presumption of prejudice for an actual conflict of interest (also

22  known as the '*Sullivan* exception') to cases involving 'concurrent representation.'"); *Earp v.*

23  *Ornoski*, 431 F.3d 1158, 1184 (9th Cir. 2005) ("The *Mickens* Court specifically and explicitly

24  concluded that *Sullivan* was limited to joint representation[.]").  In contrast, the Supreme Court

25  has not recognized that successive representation of parties with adverse interests necessarily

26  creates an actual conflict for the later-represented parties.  *Mickens*, 535 U.S. at 176 (describing

27  this as "an open question").  In such circumstances, the habeas petitioner would have to prove

28  that the successive representation created an actual conflict, i.e., had an adverse effect on his

1  counsel's performance.  *See id.* at 175-76; *see Rowland*, 876 F.3d at 1192-93; *Alberni v.*

2  *McDaniel*, 458 F.3d 860, 872, 874 (9th Cir. 2006)

3      *A.  The California Supreme Court's Denial of Claims 6 Was Reasonable*

4      The state court's summary denial of this claim was reasonable under clearly established

5  federal law.  In state court, petitioner theorized that his trial counsel had necessarily learned of

6  Mr. Beard's felony record while representing him, that this record contained convictions for

7  violent crimes, and that reasonable defense counsel would have adduced evidence of this history

8  to show that petitioner was reasonable when he armed himself before seeking to confront Mr.

9  Beard.  LD 4-1SHC at 74-76.  Because the alleged conflict arose out of successive, rather than

10  simultaneous, representation of criminal defendants, it would have been consistent with Supreme

11  Court precedent for the state court to have required petitioner to plead facts tending to show that

12  an actual conflict had existed at the time of counsel's representation of petitioner.  *See Mickens*,

13  535 U.S. at 175-76; *Rowland*, 876 F.3d at 1192-93; *Alberni*, 458 F.3d at 872, 874.

14      For several reasons, the state court may have reasonably determined that petitioner's

15  factual allegations, even if fully credited, did not demonstrate an actual conflict constituting a

16  violation of his Sixth Amendment rights.  *See Mickens*, 535 U.S. at 166.  Petitioner's counsel—

17  even if he had learned of Mr. Beard's criminal record while representing him—would not have

18  been ethically barred from presenting evidence of Mr. Beard's criminal convictions at petitioner's

19  trial, because such information would have been a matter of public record and not protected by

20  the attorney-client privilege arising from his relationship with Mr. Beard.  *See, e.g.*, *United States*

21  *v. Shwayder*, 312 F.3d 1109, 1119 (9th Cir. 2002), *opinion amended on denial of reh'g*, 320 F.3d

22  889 (9th Cir. 2003).  Moreover, the record does not support petitioner's theory that any conflict of

23  interest had an adverse effect on defense counsel's representation of him.  Petitioner alleged that

24  reasonable counsel would have presented evidence of Mr. Beard's violent criminal history in

25  support of his defense of mistake, but this would seem to be contradicted by petitioner's own

26  testimony at trial, wherein he asserted that he had armed himself not out of fear of Mr. Beard

27  from knowledge of Mr. Beard's violent past, but because petitioner expected Mr. Beard to be

28  violent because he himself would react violently if he were in Mr. Beard's position.  10 RT 3407,

1    3447.  Petitioner offered no theory in state habeas corpus why reasonable defense counsel would

2    have tendered evidence that appears to contradict the testimony of the defendant himself.

3    Furthermore, petitioner's testimony indicated that he had met Mr. Beard only shortly before the

4    crimes at issue and had had limited interactions with him, *see* 10 RT 3398-3407, and petitioner

5    offered no theory in state habeas of the relevance—and, thus, admissibility—of Mr. Beard's

6    criminal history to petitioner's mistake defense, given that there was nothing to indicate petitioner

7    had known of this history.  *See, e.g.*, *People v. Pearson*, 165 Cal. App. 4th 740, 747 (2008), *as*

8    *modified on denial of reh'g* (Aug. 28, 2008) (evidence of victim's criminal history only relevant

9    to assailant's state of mind if assailant knew of the history).  For this reason, too, counsel's failure

10   to present evidence of Mr. Beard's criminal history could not reasonably to attributed to any

11   conflict of interest.  *See Mickens*, 535 U.S. at 172-73.

12           Finally, the state court may have reasonably concluded that the theory underlying this

13   claim was not reasonably likely to lead to a more favorable verdict, such that defense counsel was

14   reasonable in not adducing more evidence to support it.  *See Foote v. Del Papa*, 492 F.3d 1026,

15   1029-30 (9th Cir. 2007).  Fundamentally, this claim alleges that more evidence was available to

16   support petitioner's defense of mistake in fact, i.e., that he had armed himself while preparing to

17   confront Mr. Beard, but mistakenly entered the Rumseys' apartment instead.  *See* LD 4-1SHC at

18   74-76.  As the court has previously found in this case, this theory was undermined forcefully at

19   trial by evidence tending to show that, irrespective of petitioner's state of mind when arming

20   himself, at the time that he entered the Rumseys' apartment, petitioner knew it was their

21   apartment, knew the Rumseys had money, and had formed an intent to steal from them.  *See* ECF

22   No. 160 at 16-17.  Petitioner's Sixth Amendment rights were not violated by defense counsel

23   failing to adduce additional evidence in support of a strategy that was unlikely, in light of the

24   totality of evidence presented, to result in more favorable verdicts.  *See Mickens*, 535 U.S. at 166.

25   The California Supreme Court was reasonable under clearly established, governing law if it

26   denied relief on this claim on this basis.  *See* 28 U.S.C. § 2254(d)(1).

27           The undersigned therefore recommends that Claim 6 be dismissed.

28   **Claim 9**

1      In claim 9, petitioner alleges that he did not receive a valid mental health examination, in

2  violation of his constitutional rights.  ECF No. 44 at 56-70.  The undersigned concludes that the

3  state court's summary denial of this claim was a reasonable application of clearly established

4  federal law and deserves deference.  *See* 28 U.S.C. § 2254(d)(1).

5      In *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985), the Supreme Court held that, "when a

6  defendant['s] . . . sanity at the time of the offense is to be a significant factor at trial, the State

7  must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an

8  appropriate examination and assist in evaluation, preparation, and presentation of the defense"

9  and the denial of such access may deprive a defendant of his due process rights.  Thus, to state

10  claim under *Ake*, a petitioner must prove that some action or inaction by the State had deprived

11  him of access to a competent psychiatrist and appropriate examination and assistance.  *See*

12  *McWilliams v. Dunn*, 582 U.S. 183, 199 (2017); *see, e.g.*, *Harris v. Vasquez,* 949 F.2d 1497, 1516

13  (9th Cir. 1991).

14      The state court may have reasonably concluded that petitioner's allegations failed to state

15  a cognizable claim under *Ake*'s standard.  In state court, petitioner alleged that defense counsel

16  did retain a psychiatric expert pretrial to assist in the preparation of the defense, but that that

17  person made recommendations to counsel for further investigation and preparations, which

18  counsel never performed.  LD 4-1SHC at 27-31.  Petitioner did not allege that the state limited

19  petitioner's access to a competent expert or appropriate examination and defense assistance, but

20  rather that defense counsel unreasonably failed to follow up on the expert's recommendations.

21  *See id.*  This is beyond the ambit of *Ake*'s holding, and it was not unreasonable for the California

22  Supreme Court to fail to extend *Ake* to encompass the error petitioner pled in his case.  *See*

23  *Harris,* 949 F.2d at 1516 (holding petitioner's "*Ake* claim to psychiatric assistance . . . fails

24  because the state did in fact provide [petitioner] with psychiatric assistance"); *Wilson v. Greene*,

25  155 F.3d 396, 401 (4th Cir. 1998) (refusing to extend *Ake* to a claim that alleges, essentially, that

26  a defense psychiatric expert performed ineffectively); *Clisby v. Jones*, 960 F.2d 925, 934 (11th

27  Cir. 1992) (same, where the record indicated no notice to the trial court that the expert was

28  unqualified); *Silagy v. Peters*, 905 F.2d 986, 1012 (7th Cir. 1990) (holding that petitioner failed to

1    state a claim under *Ake* where he alleged that defense was provided with psychiatric experts, but

2    they rendered unreasonable and ill-informed opinions); *see generally Maxwell v. Roe*, 606 F.3d

3    561, 567 (9th Cir. 2010) ("circuit court precedent may be persuasive in determining what law is

4    clearly established and whether a state court applied that law unreasonably").  The California

5    Supreme Court therefore was reasonable in concluding that petitioner had not pled a prima facie

6    case of a constitutional violation under *Ake* and, accordingly, its summary denial of this claim

7    deserves deference.  *See* 28 U.S.C. § 2254(d)(1).

8    **Claim 10, 11, 12 and 15(b)**

9         In claims 10, 11, 12, and 15(b) of the amended petition, petitioner challenges the use of

10   his self-incriminatory statements as evidence against him at trial.  During the guilt phase of the

11   trial, petitioner testified in his own defense, and, during cross-examination, the prosecutor

12   impeached him with statements that he made to law enforcement investigators on December 25,

13   1988.  10 RT 3437-85, 3492-93.  In his first petition for writ of habeas corpus, petitioner alleged

14   that the introduction of these statements violated his due process rights because they had been

15   obtained without a valid *Miranda* waiver (claim 10) and involuntarily (claim 11).  ECF No. 44 at

16   70-73; LD 4-1SHC at 21-24; *see also* LD 4-1SHC.RIR at 11-22.  He also alleged that his trial

17   counsel performed ineffectively by failing to investigate the circumstances in which the

18   statements were made and, thereafter, move to suppress their introduction (claims 12 and 15(b)).

19   ECF No. 44 at 73-75, 81-82; LD 4-1SHC at 18-20; *see also* LD 4-1SHC.RIR at 22-24.  The state

20   court denied these claims summarily, on the merits, LD 4-1SHC.ORD, and the undersigned

21   concludes the state court's summary denial was reasonable.

22        *1.   The State Court's Summary Denials of Claims 10 and 11 Were Reasonable*

23             *Applications of Clearly Established Federal Law*

24        Both claims 10 and 11 allege that petitioner's constitutional rights were violated by the

25   introduction of an involuntary confession against him at trial, with claim 10 containing the

26   additional allegations that the police investigators should have known petitioner's *Miranda*

27   waiver was invalid due to the same factors that rendered the entire confession involuntary.  ECF

28   No. 44 at 70-73; LD 4-1SHC at 21-24.  The state court could have reasonably concluded that

1    petitioner failed to make a prima facie showing of his entitlement to relief on either claim.

2            *a. Legal Standard*

3            As a matter of due process, a defendant cannot have used against him his inculpatory

4    statements that were obtained in a manner that is fundamentally "offensive to a civilized system

5    of justice." *Miller v. Fenton,* 474 U.S. 104, 109 (1985); *see also Colorado v. Connelly*, 479 U.S.

6    157, 163 (1986) (citing same). These include those statements that were obtained involuntarily,

7    i.e., where the statement was not the product of the defendant's "rational intellect and free will."

8    *Blackburn v. State of Ala.*, 361 U.S. 199, 208 (1960); *Lee v. State of Miss.*, 332 U.S. 742, 745

9    (1948) (confession must be "the product of . . . reasoned and voluntary choice" to be admissible

10   under the due process clause). To assess whether a statement was voluntarily made, the court

11   should consider the totality of circumstances, including the physical or mental condition of the

12   defendant and the actions of law enforcement in conducting the interrogation. *See Jackson v.*

13   *Denno*, 378 U.S. 368, 391-92 (1964); *Blackburn*, 361 U.S. at 207-10; *Lyons v. State of Okl.*, 322

14   U.S. 596, 602 (1944); *Lisenba v. People of State of Cal.*, 314 U.S. 219 (1941). While no single

15   factor may be dispositive, involuntariness can only be found where there has been some form of

16   coercive act by the state actors in obtaining the confession. *Connelly*, 479 U.S. at 164 ("Absent

17   police conduct causally related to the confession, there is simply no basis for concluding that any

18   state actor has deprived a criminal defendant of due process of law.") To be admitted, the

19   prosecutor bears the burden show that the statement was voluntary by a preponderance of the

20   evidence. *Lego v. Twomey*, 404 U.S. 477, 486 (1972). These standards apply regardless of

21   whether the confession is introduced in the prosecutor's case-in-chief or as impeachment. *Harris*

22   *v. New York*, 401 U.S. 222, 224-26 (1971); *see also Vega v. Tekoh*, 597 U.S. 134, 135 (2022).

23            *b. The State Court May Have Reasonably Concluded Petitioner Failed to Make a*
24            *Prima Facie Showing of Entitlement to Relief on Claim 10 or 11*

25            Respondent first argues that petitioner's claims necessarily fail because the statements at

26   issue were not "confessions" so as to implicate petitioner's due process rights by their

27   introduction. ECF No. 182 at 46. The state court would have been unreasonable to summarily

28   deny petitioner relief on this basis, however. A "confession," in the context of the clearly

                                                                  24

1   established federal law on this issue, does not require the declarant to have made statements

2   admitting his guilt for the charged crimes—it is enough that his statements contain some kind of

3   incriminating facts, even circumstantially so.  Thus, in *Ashcraft v. State of Tennessee*, 327 U.S.

4   274, 278 (1946), the Supreme Court held that the defendant's due process rights were implicated

5   by a statement he had made to investigators that he knew the identity of his wife's killer, where

6   the defendant had spent "ten days following his wife's death, . . . purport[ing] to help the officers

7   in their efforts to solve the crime, and for the first twenty-eight hours of his jail interrogation he

8   had not only stoutly maintained his own innocence whenever it was questioned, but had also

9   denied any knowledge whatever as to the identity of the murderer."  In this context, the

10  defendant's eventual statement that he did in fact know the identity of his wife's killer "was the

11  strongest possible evidence against" him, as it tended to show a willful concealment of material

12  facts suggestive of guilt.  *Ibid.*; *see also Escobedo v. State of Ill.*, 378 U.S. 478, 486 (1964)

13  (holding that suspect's statements that he knew who had committed the crime was inculpatory

14  enough to constitute a "confession" for due process purposes); *cf. Miranda v. Arizona*, 384 U.S.

15  436, 477 (1966) ("In *Escobedo* itself, the defendant fully intended his accusation of another as the

16  slayer to be exculpatory as to himself" and thus could only be admitted against him if voluntarily

17  made).

18        In arguing that petitioner's statements to law enforcement officers on December 25, 1988

19  were not confessions within the meaning of due process jurisprudence law, respondent first cites

20  California model jury instructions, which define "confessions" and "admissions" per state statute,

21  the former of which requires the declarant to acknowledge his guilt, while the latter merely tend

22  to imply guilt when considered with all of the evidence.  CALJIC 2.70.  This statutory distinction,

23  however, is immaterial to the federal constitutional analysis, which holds that involuntary

24  admissions are inadmissible in the same manner and for the same reason involuntary confessions

25  are excluded.  The Supreme Court made this explicit in *Miranda*, when describing the scope of

26  the accused's interest in his involuntary statements not being used against him at trial:

27              No distinction can be drawn between statements which are direct
28              confessions and statements which amount to 'admissions' of part

1

2

3

4

5

6

7

8

> or all of an offense. The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination. Similarly, for precisely the same reason, no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.' If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word . . . .

9

10  *Miranda*, 384 U.S. at 476-77. Given this precedent, it would have been unreasonable for the

11  California Supreme Court to have summarily denied petitioner's claim because, in his police

12  statement, petitioner did not acknowledge his guilt, but rather made statements that merely tended

13  to inculpate him when considering other evidence or could impeach his trial testimony wherein he

14  denied culpability. Even if petitioner's statements would be properly characterized as

15  "admissions" under state law, petitioner's due process rights would nevertheless have been

16  violated if such admissions were involuntarily disclosed and later used against petitioner at trial.

17  *See id.*; *Ashcraft*, 327 U.S. at 278.

18          Respondent also argues that the statements at issue should not be considered confessions

19  for due process purposes, because they had no inculpatory nature, as petitioner had simply told

20  police he had become angry on the night of the crimes and "blacked out" such that he could not

21  remember what had occurred. ECF No. 182 at 46. Review of the record belies this

22  characterization, and thus it would have been unreasonable for the California Supreme Court to

23  have summarily denied relief on this basis. *See Pinholster*, 563 U.S. at 188 n.12. During cross-

24  examination, the prosecutor referenced several portions of the December 25, 1988 statement that

25  had an inculpatory character. This included an excerpt of the interrogation wherein petitioner

26  purportedly described needing money at the time of the crime—a concept that the prosecutor later

27  argued indicated petitioner's motive for the charged crimes. 10 RT 3437-39, 3483; *see* 10 RT

28

3429-30; 11 RT 3636-38.  The prosecutor also referenced portions of the December 25, 1988 statement in which petitioner described arming himself with a knife before leaving Ms. Baker's apartment, leading to testimony by petitioner that would be relevant to the jury's assessment of his mental states at the time of the charged crimes.  10 RT 3446-48; 11 RT 3632-33.  The prosecutor referenced portions of the statement wherein petitioner described events, including an uncharged assault against a third party, immediately prior to the charged crimes, implicitly calling into question petitioner's representations that he could not remember what had occurred during the crimes.  10 RT 3438-41, 3457-58.  The prosecutor referenced other portions of the statements that petitioner disavowed in his testimony, further serving to impeach his credibility generally. *See* 10 RT 3450-52, 3455-57.  Although respondent is correct that the prosecutor also referenced some portions of the statement in which petitioner attested that he had no recollection of the events that had transpired during the charged crimes, the prosecutor then further elicited from petitioner his testimony that he had not been entirely truthful with the officers and had crafted his responses to them with an eye towards evading prosecution.  10 RT 3444-46, 3453-54, 3492-93.  This line of questioning, then, far from being exculpatory for petitioner, served to impeach petitioner's credibility for the jury, on the most critical, material dispute that the jurors would consider at the guilt phase, viz, petitioner's mental state at the time of the charged crimes.  *See* 11 RT 3634-38, 3645-51.  Taken within the context of the entirety of the evidence that the jury heard, and particularly given that petitioner's testimony was among the only evidence propounded by the defense at the guilt phase and that the defense's guilt-phase theory relied wholly on the jury making favorable deductions about petitioner's mental states at the time of the crimes, the prosecutor's utilization of the December 25, 1988 statements placed before the jury statements that were inculpatory in nature, such that petitioner's due process interest attached. *See generally Miranda*, 384 U.S. at 476-77 ("[S]tatements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication.  These statements are incriminating in any meaningful sense of the word . . . .").  The state court was unreasonable if it concluded otherwise.

27

1          The state court may, however, have reasonably concluded that petitioner had not made a

2     prima facie showing that his December 25, 1988 statements were involuntary, so as to have

3     violated his due process rights when he was impeached with them, because he had made no

4     showing that his statements were made pursuant to coercive police action.  To be sure, petitioner

5     pled that, at the time of the interrogation, he possessed personal features that may very well have

6     made him more susceptible to coercion, including his suicidality that same day, his recent

7     ingestion of methamphetamine, and his long-standing neuropsychological impairment.  LD 4-

8     1SHC at 18-24.  At the time of the state court adjudication, however, the state court may have

9     reasonably concluded that no habeas claim could lie where petitioner failed to show that the

10    police engaged in some sort of coercive activity during their interrogation of him.  *Dickerson v.*

11    *United States,* 530 U.S. 428, 434 (2000); *Colorado v. Connelly*, 479 U.S. 157, 163-65 (1986).  In

12    cases where involuntariness has been found, such police coercion had taken the form of physical

13    coercion, i.e., violence towards the accused, *Brown v. Mississippi,* 297 U.S. 278 (1936); or

14    investigators' use of certain psychologically manipulative tactics, such as threats of violence or

15    guarantees of leniency.  *See Hutto v. Ross*, 429 U.S. 28, 30 (1976); *Gallegos v. Colorado,* 370

16    U.S. 49, 52-53 (1962); *United States v. Harrison*, 34 F.3d 886, 891 (9th Cir. 1994).  Petitioner's

17    allegations did not allege any of these forms of coercion.  Instead, petitioner alleged that police

18    interrogators' awareness of petitioner's suicidality and possible drug intoxication, and petitioner

19    seeming confused at times during the interrogation, rendered the entire interrogation necessarily

20    coercive.  LD 4-1SHC at 22-24; *see also* ECF No. 179 at 30.  Petitioner cites no authority that

21    this alone suffices to show "coercion" in the confession context, under clearly established federal

22    law.  *See* ECF No. 179 at 26-31.  In fact, petitioner's argument appears squarely foreclosed by the

23    Supreme Court in *Colorado v. Connelly*, 479 U.S. 157, 163-65 (1986), wherein the Supreme

24    Court explained that, even if the accused were mentally, physically, or emotionally frail at the

25    time of the interrogation, and even if interrogators were aware of that condition, any statements of

26    the accused would not be involuntary unless the interrogators engaged in some form of coercive

27    tactics by which an inculpatory statement was elicited.  Coercive tactics reflect "police

28    overreaching" and encompass, for example, a multi-hour interrogation by numerous officers

28

1   while isolating the accused from family and counsel, or officers involuntarily medicating the

2   accused with a "truth serum," but does not encompass any interrogation of a person suffering a

3   mental health crisis—even a severe one—at the time of his questioning.  *Connelly*, 479 U.S. at

4   160-66; *see also Clabourne v. Lewis,* 64 F.3d 1373, 1379 (9th Cir. 1995) (holding that the fact

5   that defendant was under the influence of drugs at the time of his confession "does not alone

6   render his confession involuntary"); *United States v. Miller*, 984 F.2d 1028, 1032 (9th Cir. 1993)

7   (holding that "mere emotionalism and confusion" do not render a confession inadmissible);

8   *Elliott v. Williams*, 248 F.3d 1205, 1211, 1213 (10th Cir. 2001) (holding confession by suspect

9   under the influence of heroin, who had contemplated suicide that day, was voluntary and did not

10  involve coercive police activity); *United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995)

11  ("[T]he fact that [the petitioner] was suffering severe depression does not render his statements

12  involuntary unless the agents took advantage of his mental illness.").  Given this precedent, the

13  state court may have reasonably concluded that petitioner's allegations, even if fully credited, did

14  not allege that the investigators engaged in any coercive tactics against him simply because they

15  interrogated him while he was in a vulnerable state.

16          To the extent that petitioner alleged in state court that the interrogators behaved coercively

17  because they asked him leading questions, *see* LD 4-1SHC.RIR at 12-22, the state court may have

18  reasonably concluded that this tactic was not coercive under clearly established federal law, even

19  taking into account petitioner's alleged vulnerabilities and frailties at the time of the questioning.

20  Clearly established federal law recognizes as non-coercive a variety of police tactics that seem

21  plainly more manipulative than the use of leading questions alleged here.  For instance, an

22  interrogator "[r]eciting potential penalties or sentences does not constitute coercion," *United*

23  *States v. Haswood*, 350 F.3d 1024, 1029 (9th Cir. 2003) (citations omitted), nor is it coercive for

24  the interrogator to exaggerate the strength of the evidence against a suspect.  *Frazier v. Cupp*, 394

25  U.S. 731, 739 (1969); *see also Pollard v. Galaza,* 290 F.3d 1030, 1034 (9th Cir. 2002), *cert.*

26  *denied,* 537 U.S. 981 (2002) ("misrepresentations made by law enforcement in obtaining a

27  statement, while reprehensible, does not necessarily constitute coercive conduct").  It is not

28  coercive for an interrogator to promise that he will recommend leniency to the prosecutor, *United*

1    *States v. Harrison*, 34 F.3d 886, 891 (9th Cir. 1994), or to tell the accused that he will help him if

2    helps himself.  *See Ortiz v. Uribe*, 671 F.3d 863, 871 (9th Cir. 2011).  An officer may "continue

3    to question a suspect after the suspect claims he is innocent" without such a tactic being deemed

4    coercive.  *Cunningham*, 345 F.3d at 810.  An officer may trick, deceive, and even engage in

5    impersonations without these ploys being deemed coercive, so long as they do not reach the

6    depths of unlawful threats or promises.  *United States v. Crawford,* 372 F.3d 1048, 1060-61 (9th

7    Cir. 2004) (en banc).  In short, given the state of the law on this issue at the time of the state court

8    adjudication, the state court may have reasonably concluded that the officers' mere use of leading

9    questions when interrogating petitioner was not an improper tactic reflective of "police

10   overreaching," *see Connelly*, 479 U.S. at 163, but was well within the ambit of acceptable police

11   investigative stratagems.  The state court was reasonable if it concluded that these allegations did

12   not make a prima facie showing that petitioner's confession was obtained involuntarily.

13        For the same reason, the state court may have reasonably denied claim 10 summarily, as

14   well.  In claim 10, petitioner alleged that the features that rendered his confession involuntary also

15   rendered his *Miranda* waiver involuntary.  LD 4-1SHC at 21-24; LD 4-1SHC.RIR at 11-22.  A

16   defendant's waiver of his *Miranda* rights is valid only if it was made voluntarily, knowingly, and

17   intelligently.  *Miranda v. Arizona,* 384 U.S. 436, 444, 475 (1966).  This standard is met where the

18   totality of the circumstances show that the waiver was "the product of a rational intellect and a

19   free will" and the suspect having been under the influence of drugs or in the midst of mental

20   health crisis is only one of the circumstances to consider when determining the validity of the

21   purported waiver.  *See Mincey v. Arizona,* 437 U.S. 385, 396-402 (1978) (quoting *Townsend v.*

22   *Sain,* 372 U.S. 293, 307 (1963)); *see also United States v. George,* 987 F.2d 1428, 1430-31 (9th

23   Cir. 1993); *United States v. Lewis,* 833 F.2d 1380, 1384-85 (9th Cir. 1987); *United States v.*

24   *Martin,* 781 F.2d 671, 673-74 (9th Cir. 1985).  Here, the state court may have reasonably

25   concluded that the record before it did not make a prima facie showing that his waiver of his

26   *Miranda* rights was not voluntary, knowing, and intelligent.  Although petitioner may have been

27   suffering from a mental health crisis and from long-term and acute methamphetamine

28   intoxication, the transcript of his interrogation indicated he understood the questions being asked

1    of him and was capable of responding lucidly.  *See* LD 4-1SHC.EX1 at Ex. 21.   He was coherent

2    throughout the interrogation and appeared to demonstrate awareness of the nature of the right

3    being abandoned and the consequences of his decision to abandon it.  *See Moran,* 475 U.S. at

4    421; *Shackleford v. Hubbard*, 234 F.3d 1072, 1080-81 (9th Cir. 2000).  As set forth above, the

5    interrogation itself was not intrinsically coercive—per clearly established federal law—such that

6    petitioner's waiver should be understood as necessarily involuntary, as well.  For all of these

7    reasons, the state court was reasonable in summarily denying relief on claim 10 of the amended

8    petition.  *See* 28 U.S.C. § 2254(d)(1).

9        *2.   The State Court's Summary Denials of Claims 12 and 15(b) Were Reasonable*

10           *Applications of Clearly Established Federal Law*

11           *a.   Legal Standard*

12        Under clearly established federal law, to prevail on a claim of ineffective assistance of

13    counsel, a petitioner must show that his trial counsel's performance "fell below an objective

14    standard of reasonableness" and that "there is a reasonable probability that, but for counsel's

15    unprofessional errors, the result of the proceeding would have been different."  *Strickland v.*

16    *Washington*, 466 U.S. 668, 687-88, 694 (1984).

17        Under the first prong of the *Strickland* test, a petitioner must show that counsel's conduct

18    failed to meet an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687.  There is "a

19    'strong presumption' that counsel's representation was within the 'wide range' of reasonable

20    professional assistance."  *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689).

21    Petitioner must rebut this presumption by demonstrating that his counsel's performance was

22    unreasonable under prevailing professional norms and was not the product of "sound trial

23    strategy."  *Strickland*, 466 U.S. at 688-89.  Where a petitioner alleges that counsel unreasonably

24    failed to investigate, the court must consider whether the limited investigation was itself

25    reasonable under objective standards, as "strategic choices made after thorough investigation of

26    law and facts relevant to plausible options are virtually unchallengeable," but "strategic choices

27    made after less than complete investigation are reasonable precisely to the extent that reasonable

28    professional judgment supports limitations on investigation."  *Id*. at 690-91; *see also Wiggins v.*

1    *Smith*, 539 U.S. 510, 522-23 (2003) (where trial counsel is alleged to have failed to introduce

2    favorable evidence due to his failure to uncover it through reasonable investigation, the operative

3    inquiry into deficient performance under *Strickland* is "not whether counsel should have

4    presented" the evidence they could have found, but rather "whether the investigation supporting

5    counsel's decision not to introduce [the] evidence [at issue] *was itself reasonable*" (italics in

6    original).)

7        The second prong of the *Strickland* test requires a petitioner to show that counsel's

8    conduct prejudiced him. *Strickland*, 466 U.S. at 691-92. Prejudice is found where "there is a

9    reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

10   would have been different." *Id.* at 694. A reasonable probability is one "sufficient to undermine

11   confidence in the outcome." *Id.* at 693. "This does not require a showing that counsel's actions

12   'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice

13   standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'"

14   *Richter*, 562 U.S. at 112 (quoting *Strickland*, 466 U.S. at 693). "The likelihood of a different

15   result must be substantial, not just conceivable." *Id.*

16       Under clearly established federal law, in considering whether counsel's deficient

17   performance was reasonably probable to have affected the jury's verdict, the prejudice from

18   individual instances of deficient performance should be considered cumulatively. *Strickland*, 466

19   U.S. at 695-96 ("Taking the unaffected findings as a given, and taking due account of the effect

20   of the errors on the remaining findings, a court making the prejudice inquiry must ask if the

21   defendant has met the burden of showing that the decision reached would reasonably likely have

22   been different absent the errors."). Thus, the court "must analyze each of [petitioner's] claims

23   separately to determine whether his counsel was deficient, but 'prejudice may result from the

24   cumulative impact of multiple deficiencies.'" *Boyde v. Brown*, 404 F.3d 1159, 1175 (9th Cir.

25   2005) (quoting *Cooper v. Fitzharris*, 586 F.2d 1325, 1333 (9th Cir. 1978) (en banc)); *see also*

26   *Michaels v. Davis*, 51 F.4th 904, 930 (9th Cir. 2022); *Lang v. Cullen*, 725 F. Supp. 2d 925, 970-

27   71 (C.D. Cal. 2010).

28

When a court is considering a claim of ineffective assistance of counsel through the AEDPA lens, the court's analysis is "doubly . . . deferential," *Richter*, 562 U.S. at 105, because, in order to grant relief, the court must consider not only whether <u>Strickland</u>'s substantive standard has been met, but whether each prong has been met so unequivocally that no reasonable jurist could conclude otherwise. *Id.* Where, as here, the state court has denied relief without a reasoned opinion, the habeas court must determine whether there was any reasonable basis for the denial, consistent with clearly established federal law. *Richter*, 562 U.S. at 98; *Kipp*, 971 F.3d at 948. Thus, if the state court could have reasonably found there was a lack of a prima facie showing of relief on either the deficiency or prejudice prong of the *Strickland* inquiry, the denial is entitled to deference. *Shinn v. Kayer*, 592 U.S. 111, 119-20 (2020); *cf. Strickland*, 466 U.S. at 697 (because petitioner bears the burden on both prongs, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

> *b.   The California Supreme Court May Have Reasonably Determined That Petitioner Failed to Make a Prima Facie Showing of Entitlement to Relief*

In both claims 12 and 15(b), petitioner alleges that defense counsel was ineffective for failing to move to suppress petitioner's December 25, 1988 statement on the grounds set forth in claims 10 and 11. As a matter of law, however, counsel is also not deficient for failing to make futile arguments, motions, or objections. *See Jones v. Barnes*, 463 U.S. 745 (1983) (holding that the Sixth Amendment's guarantee of effective assistance of counsel does not encompass a requirement that counsel raise frivolous arguments); *Leavitt v. Arave*, 646 F.3d 605, 611 (9th Cir. 2011) ("Counsel need not file motions that are likely to lose, because doing so may cost the defendant some of his lawyer's credibility with the judge."); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) (counsel does not perform deficiently when, based on experience and research, he declines to file motion to suppress that he believes will be unsuccessful); *see, e.g.*, *Ochoa v. Davis*, 50 F.4th 865, 889 (9th Cir. 2022); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996). Here, reasonable defense counsel may have concluded that any such motion would be futile due

1   to lack of evidence of police interrogators' coercive tactics, for the reasons set forth above.  The

2   state court's summary denial of these allegations, contained in claims 12 and 15(b), therefore was

3   reasonable and is entitled to deference.[8]

4       For these reasons, the undersigned recommends dismissal of claims 10, 11, 12, and 15(b)

5   of the amended petition.

6   **Claims 13 and 16(g)**

7       In claim 13, petitioner alleges that his constitutional rights were violated when he was

8   tried while incompetent.  ECF No. 44 at 76-77.  In subclaim 16(g), he alleges that he was denied

9   effective assistance of counsel by defense counsel's failure to adequately investigate and present

10  evidence of his incompetence.[9]  ECF No. 44 at 115-16.  He raised these allegations in state court

11  in his first petition for writ of habeas corpus, which the California Supreme Court denied

12  summarily on the merits.  LD 4-1SHC at 24-26.  The undersigned concludes that those denials are

13  entitled to deference under 28 U.S.C. section 2254(d)(1).

14      *1.  Legal Standards*

15          *a.  Substantive Due Process Right to Be Tried Only While Competent*

16      Under clearly established federal law, the trial of an incompetent defendant violates his

17  substantive rights to due process under the Fifth and Fourteenth Amendments.  *Indiana v.*

18  *Edwards*, 554 U.S. 164 (2008); *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *Drope v.*

19  *Missouri*, 420 U.S. 162, 171 (1975).  A defendant is incompetent if "he lacks the capacity to

20  understand the nature and object of the proceedings against him, to consult with counsel, and to

21

22      [8] Claim 15(b) contains a few additional allegations of defense counsel's deficient
    performance, which assail vaguely various aspects of trial counsel's performance.  ECF No. 44 at
23  81-82; *see* ECF No. 160 at 21.  Aside from those allegations concerning suppression of the
    confession, however, petitioner makes no argument to demonstrate that the state court's denial of
24  relief on the remaining allegations comprising claim 15(b) should not receive deference under 28
    U.S.C. § 2254(d).  *See* ECF No. 179 at 26-31; *Walker*, 709 F.3d at 939 (describing petitioner's
25  burden at this stage).  The undersigned's independent review of the record indicates that the state
    court may have reasonably rejected these allegations as conclusory, when petitioner presented
26  them in state habeas corpus proceedings.  *See Pinholster*, 563 U.S. at 188 n.12.
27      [9] In petitioner's brief addressing the application of *Pinholster* to subclaim 16(g), petitioner
    appears to mistakenly identify it as subclaim 16(i).  *Compare* ECF No. 44 at 115-16 *and* 119-29
28  *with* ECF No. 179 at 31; *see* ECF No. 182 at 4 n.3.

1   assist in preparing his defense." *Drope*, 420 U.S. at 171; *see also Dusky v. United States,* 362

2   U.S. 402, 402 (1960) (per curiam) (a criminal defendant is competent to stand trial where he has

3   "sufficient present ability to consult with his lawyer with a reasonable degree of rational

4   understanding . . . [and] a rational as well as factual understanding of the proceedings against

5   him").  California statute provides the mechanism for determining a criminal defendant's

6   incompetence to stand trial, including setting forth a presumption that the defendant is presumed

7   competent that the defendant may overcome by a showing of incompetence by a preponderance

8   of the evidence.  *Medina v. California*, 505 U.S. 437, 440 (1992); Penal Code § 1369(f).  This

9   standard itself comports with the requirement of due process.  *Medina*, 505 U.S. 437.

10          *b.  Sixth Amendment Right of Effective Assistance of Counsel*

11          California statute permits defense counsel to seek a hearing on defendant's competence if

12  she believes the defendant may be incompetent.  Under Penal Code section 1368,

13                  At the request of the defendant or his or her counsel or upon its
14                  own motion, the court shall recess the proceedings . . . to permit
                    counsel to confer with the defendant and to form an opinion as to
15                  the mental competence of the defendant at that point in time . . . .
                    If counsel informs the court that he or she believes the defendant is
16                  or may be mentally incompetent, the court shall order that the
                    question of the defendant's mental competence is to be determined
17                  in a hearing.

18

19  A trial counsel's failure to declare a doubt as to a defendant's competency constitutes ineffective

20  assistance in violation of the Sixth Amendment when "'there are sufficient indicia of

21  incompetence to give objectively reasonable counsel reason to doubt the defendant's competency,

22  and there is a reasonable probability that the defendant would have been found incompetent to

23  stand trial had the issue been raised and fully considered.'"  *Stanley v. Cullen*, 633 F.3d 852, 862

24  (9th Cir. 2011) (quoting *Jermyn v. Horn*, 266 F.3d 257, 283 (3rd Cir. 2001)); *see also Clark v.*

25  *Arnold*, 769 F.3d 711, 730 (9th Cir. 2014) (to succeed in establishing ineffectiveness for counsel's

26  failure to declare a doubt as to competency a petitioner "has to show not only that the trial court

27  would have ordered a reevaluation, but also that there was a reasonable probability that the

28

1    defendant would have been found incompetent to stand trial had the issue been raised and fully

2    considered." (internal quotation marks and citation omitted)); *see generally Strickland*, 466 U.S.

3    668.

4        2.    *The State Court's Ruling Was Not Unreasonable or Contrary to Clearly Established*

5               *Federal Law in Summarily Denying Relief on the Allegations That the Petitioner Was*

6               *Incompetent at Trial*

7               The state court was not unreasonable for summarily denying petitioner relief on his claim

8    that he was incompetent at the time of trial, thereby violating his substantive due process rights,

9    as the court could reasonably have found that petitioner failed to make a prima facie showing of

10   his incompetence by a preponderance of the evidence.  *See Medina*, 505 U.S. at 440; *Drope*, 420

11   U.S. at 171.  In state court, petitioner alleged that he suffered from "lifelong mental disabilities,

12   psychological and psychiatric impairments, and neuropsychological defects" that rendered him

13   incompetent at the time of trial.  LD 4-1SHC at 24-25; *see also* LD 4-1SHC.RIR at 28-36.  In

14   support, he tendered the declaration of Dr. Nell Riley, a neuropsychologist who conducted a

15   neuropsychological examination of petitioner post-trial and concluded that petitioner is of normal

16   intelligence but displayed brain disfunction in the area of verbal memory.  LD 4-1SHC.EX1 at

17   Ex. 13 ¶¶ 7-12.  He also tendered the declaration of Dr. Cecil Whiting, a psychologist who, after

18   petitioner's trial, conducted a "multigenerational psychosocial history of [petitioner] and his

19   family, identifying the social, psychological and cultural factors affecting his development and

20   functioning."  LD 4-1SHC.EX1 at Ex. 15 ¶ 5.  Based on his review of relevant records, interviews

21   with petitioner and his family members, and testing performed on petitioner, Dr. Whiting

22   concluded that petitioner displayed some brain impairment and mental health problems, viz,

23   "mild brain based cognitive impairment," which would be exacerbated by alcohol or drug use;

24   mild to moderate clinical depression; and symptoms of post-traumatic stress disorder.  *Id*. at ¶¶ 6-

25   8, 62-74.  Dr. Whiting opined on petitioner's mental state at the time of the charged crimes but

26   rendered no opinion on petitioner's functioning at the time of trial.  *Id*. at ¶¶ 74-90.  As final

27   evidence of petitioner's incompetence, petitioner argued that his "passive" and "compliant"

28   responses during colloquies with the court, his decision to wear prison clothing during trial, and

1    his purported confusion during his post-arrest interview with police officers also indicated that he

2    did not understand the trial proceedings in which he participated.  LD 4-1SHC.RIR at 28-34.

3         The California Supreme Court could reasonably have concluded that none of these

4    materials, even taken together and considered with the entirety of evidence in the trial record, met

5    the standard of making a prima facie showing that petitioner, at the time of trial, "lack[ed] the

6    capacity to understand the nature and object of the proceedings against him, to consult with

7    counsel, and to assist in preparing his defense."  *See Drope*, 420 U.S. at 171.  This is a narrow,

8    specific standard, which a defendant must meet by a preponderance of the evidence.  *Medina*, 505

9    U.S. at 440.  While the courts must be careful in determining matters of competence, they also

10    cannot project notions of incompetence onto defendants without adequate evidentiary support.

11    *See Atkins*, 536 U.S. at 318; *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279-80

12    (1942).  Here, none of petitioner's materials, even if fully credited by a fact-finder, indicated that

13    he could meet this stringent standard.  Dr. Whiting's declaration, while probative of petitioner's

14    functioning generally and at the time of the crimes specifically, was silent on the issue of

15    petitioner's functioning at the time of trial; its relevance to the question of competence, then, was

16    minimal and at most showed that petitioner possessed long-standing impairments that, if

17    exacerbated by certain external stressors, might impair his judgment and decision-making

18    capacities.  Dr. Riley's opinion identified specific brain impairments that petitioner appeared to

19    display in post-trial testing, but the impairments he identified were mild and, even if fully

20    credited, did not demonstrate that petitioner was so impaired as to have been incapable of

21    understanding the nature and object of trial proceedings, to consult with counsel, or to assist in

22    preparing his defense.  Finally, the trial record does not contain indicia of petitioner's

23    incompetence.  His "compliant," LD 4-1SHC.RIR at 31, answers during colloquies with the court

24    do not demonstrate an incapacity to understand the colloquy or the proceedings generally.  His

25    decision to wear prison clothing during trial may have been ill-advised, but that does not indicate

26    he was not competent to make that, or any, decision.  *See United States v. Martinez*, 883 F.2d

27    750, 761 (9th Cir. 1989), *vacated on other grounds*, 928 F.2d 1470 (9th Cir. 1991) (observing that

28    the Supreme Court has "rejected this kind of paternalistic projection of incompetence on to a

1   criminal defendant" and holding that a defendant's action that is strategically unwise, self-

2   defeating, or resulted in "consequences [that were] not what [the defendant] would wish" is not

3   necessarily an act born from legal incompetence) (citing *Adams*, 317 U.S. at 279).  And the fact

4   that petitioner purported to have memory problems during police questioning of him is little

5   evidence of petitioner's functioning at the time of his trial, and, regardless, the total contents of

6   that interview appear to undermine petitioner's argument, insofar as petitioner disclosed during

7   the interview that he was crafting his responses to investigators with the goal of helping his

8   eventual defense should he be prosecuted.  *See* 10 RT 3444-46, 3453-54, 3492-93.

9          In sum, state court was neither unreasonable nor acted contrary to clearly established

10  federal law if it concluded that the materials petitioner had proffered in support of his allegations

11  failed to make even a prima facie showing that he could meet his stringent burden to prove he

12  was actually incompetent at the time of his trial.  *See, e.g.*, *Stanley v. Cullen*, 633 F.3d 852, 862-

13  63 (9th Cir. 2011).  Deference to the state court's summary denial of this subclaim is warranted.

14  *See Richter*, 562 U.S. at 98-103.[10]

15        *3.   The State Court's Ruling Was Not Unreasonable or Contrary to Clearly Established*

16              *Federal Law in Summarily Denying Relief on the Allegations That the Defense Counsel*

17              *Was Ineffective In Failing to Demonstrate Petitioner's Incompetence to the Trial Court*

18         The California Supreme Court was not unreasonable in summarily denying petitioner's

19  allegations that his trial counsel was ineffective in investigating and presenting to the trial court

20  evidence of petitioner's incompetence.  *See* LD 4-1SHC at 53-55.  To make a prima facie

21  showing, petitioner was required to demonstrate both deficient performance and prejudice, which

22  ─────────────────

23  [10] This finding is not contrary to the previously assigned magistrate's order that petitioner
    had made a showing of his entitlement to an evidentiary hearing on this claim.  *See* ECF No. 160
24  at 19-20.  In proceedings in this court, petitioner supported his allegations of incompetence with
    materials that had not been provided to the state court—namely, a declaration by Dr. Pablo
25  Stewart—and the previously-assigned magistrate concluded that on the basis of this declaration
    alone, petitioner had shown an evidentiary hearing was warranted.  *Ibid.*; *compare* ECF No. 44 at
26  58-70, 76-77 *and* ECF No. 118 *with* LD 4-1SHC at 24-25 *and* LD4-1SHC.EX1 at Exs. 13, 15.
    The question of whether the gateway of section 2254(d) has been met can only be answered with
27  the materials that were before the trial court at the time of its adjudication, however, and thus the
    undersigned cannot consider Dr. Stewart's declaration when determining whether that standard
28  has been satisfied.  *Pinholster*, 563 U.S. 170.

1    specifically required a showing that "there are sufficient indicia of incompetence to give

2    objectively reasonable counsel reason to doubt the defendant's competency, and there is a

3    reasonable probability that the defendant would have been found incompetent to stand trial had

4    the issue been raised and fully considered." *Stanley*, 633 F.3d at 862; *see generally Strickland*,

5    466 U.S. at 691-92.  For the reasons set forth above, the state court could have concluded,

6    consistent with governing Supreme Court precedent, that the record did not contain sufficient

7    indicia of incompetence such that all reasonable trial counsel would have doubted petitioner's

8    competence to stand trial and to participate in trial proceedings.  For the same reasons, the record

9    before the state court also failed to show prejudice, in that petitioner had not made a prima facie

10   showing that there was a reasonable probability that he would have been found incompetent had

11   available evidence been presented to the trial court.  *See Clark v. Arnold*, 769 F.3d 711, 730 (9th

12   Cir. 2014).  The state court's summary denial of this subclaim, therefore, is entitled to deference.

13   *See Richter*, 562 U.S. at 98-103.

14        For the foregoing reasons, the undersigned recommends that claims 13 and 16(g) be

15   dismissed.  *See* 28 U.S.C. § 2254(d)(1).

16   **Claim 14**

17        In claim 14, petitioner alleges that his conviction for first-degree murder and death

18   sentence are unconstitutional because, as a factual matter, he lacked the requisite intent.  ECF No.

19   44 at 78.  Respondent urges dismissal of the claim on the basis that it fails to set forth a claim for

20   relief under federal law or, in the alternative, because the state court's denial of this claim when

21   raised in state court proceedings was reasonable.  ECF No. 205 at 22-35.  The undersigned

22   concludes that the state court's denial of this claim was reasonable and is entitled to deference.

23        Petitioner pleads this claim as one of actual innocence, not sufficiency of the evidence: he

24   argues that the evidence developed post-trial demonstrates he did not have the requisite intent at

25   the time of the homicide of Mr. Rumsey and thus he is legally innocent of first-degree murder.

26   ECF No. 44 at 78-80; ECF No. 218 at 14.[11]  He argues that clearly established federal law has

27   _____

28        [11] The court has previously determined the evidence was sufficient to support petitioner's
     conviction for the murder of Mr. Rumsey.  ECF No. 84 at 32-37; *see* ECF No. 122 (adopting

1    held "that it would be unconstitutional to execute and imprison innocent people even if their trials

2    are otherwise constitutionally sound," citing *Hererra v. Collins*, 506 U.S. 390 (1993) and *Schlup*

3    *v. Delo*, 513 U.S. 298 (1995).  ECF No. 218 at 14; *see* LD 4-1SHC at 32-36; LD 4-SHC.RIR at

4    40.

5             The state supreme court may have reasonably concluded that neither of these precedents,

6    nor any other United States Supreme Court precedent, had created clearly established federal law

7    recognizing a freestanding actual innocence claim as a basis for habeas corpus relief.  Federal law

8    is only "clearly established" where it is "embodied in a holding" of the Supreme Court.  *Thaler v.*

9    *Haynes*, 559 U.S. 43, 47 (2010) (per curium); *see also Wright v. Van Patten*, 552 U.S. 120, 125

10   (2008) (a rule has not been "clearly established" by Supreme Court precedent if "[n]o decision of

11   th[e] Court . . . squarely addresses the issue in this case" or the case law "provide no categorical

12   answer to [petitioner's] question"); *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (explaining that

13   "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta,

14   of this Court's decisions as of the time of the relevant state-court decision"); *see also Knowles v.*

15   *Mirzayance*, 556 U.S. 111, 122, (2009) (a legal rule was not "clearly established" Supreme Court

16   precedent if it had not been "squarely established" by Court's holdings).  In neither *Hererra* nor

17   *Schlup* did the Supreme Court squarely hold that a claim of factual innocence was cognizable as a

18   federal constitutional violation giving rise to habeas corpus relief.  In *Hererra*, "a majority of the

19   Supreme Court assumed, without deciding, that execution of an innocent person would violate the

20   Constitution" and opined that a habeas corpus petitioner would have to make an "extraordinarily

21   high" evidentiary showing to prove that he is actually innocent so as to merit habeas relief.

22   *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (citing *Herrera*, 506 U.S. at 476).  The

23   Supreme Court did not hold that such a claim was cognizable, but rather held that the petitioner's

24   showing of innocence had been too minimal to warrant further evidentiary development in habeas

25   corpus, "in order to trigger the sort of constitutional claim which we have assumed, *arguendo,* to

26   exist."  *Herrera*, 506 U.S. at 418-19.  This reflected that the Supreme Court had "left open" the

27

28   same); *see also* ECF No. 160 at 20.

1    question of whether such a claim is cognizable, not that it had held that it was. *House v. Bell*, 457

2    U.S. 518, 554-55 (2006); *see also Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S.

3    52, 71 (2009) ("Whether such a federal right [to habeas corpus relief upon a showing of actual

4    innocence] exists is an open question. We have struggled with it over the years, in some cases

5    assuming, *arguendo,* that it exists while also noting the difficult questions such a right would

6    pose and the high standard any claimant would have to meet.").

7          It is also not the case that the Supreme Court in *Schlup* held that a free-standing claim of

8    actual innocence was cognizable as a federal claim. In *Schlup*, the Supreme Court held that a

9    habeas court may reach the merits of an otherwise-barred claim if petitioner shows he is actually

10   innocent of the crime of conviction. *Schlup*, 513 U.S. at 316. Ergo, the question before the

11   Court, which it resolved, in no way implicated the cognizability of actual innocence as its own

12   substantive claim, but was confined merely to whether actual innocence could be a reason for the

13   federal court to reach the merits of any habeas claim that was otherwise procedurally barred.

14   Hence, *Schlup* did not create clearly established federal law—i.e., precedent through its holding,

15   *see Carey*, 549 U.S. at 74 —on the issue of whether factual innocence is itself a constitutional

16   claim. *See House*, 547 U.S. at 554.

17         For these reasons, the state court may have reasonably concluded that no clearly

18   established federal law existed at the time to establish that petitioner's claim was cognizable as a

19   grounds for habeas corpus relief. *See Young v. Gipson*, 163 F. Supp. 3d 647, 745 (N.D. Cal.

20   2015) (finding same); *Rowland v. Chappell*, 902 F. Supp. 2d 1296, 1336 (N.D. Cal. 2012), aff'd,

21   876 F.3d 1174 (9th Cir. 2017) (same); *Fonseca v. Hall*, 568 F. Supp. 2d 1110, 1128 (C.D. Cal.

22   2008) (same).[12] As such, the California Supreme Court's summary denial of this claim in state

23   _____

24       [12] The previously assigned magistrate judge had acknowledged that Ninth Circuit case law
     both recognizes the cognizability of this claim and establishes a standard of proof that a petitioner

25   must meet to demonstrate entitlement to relief. ECF No. 160 at 20-21 (citing *Carringer v.
     Stewart*, 132 F.3d 463 (9th Cir. 1997)). That order, however, did not address whether the

26   California Supreme Court's denial was reasonable under AEDPA, as the issue was not before the
     court. *See ibid*. The fact that a Court of Appeals cognizes a habeas corpus claim is not relevant

27   to the question of whether the claim has been clearly established by the United States Supreme
     Court, *see Marshall*, 569 U.S. at 64; *Parker*, 567 U.S. at 48-49, and thus the court's prior order

28   granting an evidentiary hearing on this claim does not preclude the instant finding, that the state

1    proceedings was neither contrary to, nor an unreasonable application of, clearly established

2    federal law and is entitled to deference.  The undersigned recommends that the claim be

3    dismissed.

4    **Claims 16(a) and 16(c)**

5           In subclaims 16(a) and 16(c), petitioner alleges that defense counsel was ineffective in his

6    investigation and presentation of available guilt-phase defenses.  In subclaim 16(a), petitioner

7    alleges that defense counsel unreasonably failed to investigate a mental state defense, despite

8    constructive knowledge of both petitioner's mental impairments and his voluntary intoxication at

9    the time of the crimes.  ECF No. 44 at 88-92.  In subclaim 16(c), petitioner reiterates these

10   allegations to an extent, and further alleges that defense counsel unreasonably and prejudicially

11   failed to investigate his neuropsychological functioning and to present expert testimony

12   concerning his impairments, to bolster a defense that he did not have specific intent to commit a

13   burglary or robbery when entering the victims' apartment, or that his attack on Mr. Rumsey

14   reflected imperfect self-defense.  ECF No. 44 at 101-04; *see* ECF No. 179 at 22-26.  Petitioner

15   presented these claims in his first petition for writ of habeas corpus in state court, which the state

16   court denied summarily.  LD 4-1SHC at 43-50; LD 4-1SHC.ORD.  The undersigned concludes

17   that the state court's denial of these subclaims is entitled to deference.

18          In order to make a prima facie showing of his entitlement to relief on these subclaims,

19   petitioner had to show both that no reasonable defense counsel would have failed to adduce the

20   evidence at issue and, had such evidence been presented, there is a reasonable probability of a

21   more favorable verdict.  *See Hinton v. Alabama*, 571 U.S. 263 (2014); *Strickland*, 466 U.S. at

22   687-88.  This is true even where the deficient performance allegations posit that defense counsel

23   unreasonably failed to investigate a particular area; in order to succeed, the habeas petitioner

24   needs to show that the fruits of that investigation would have somehow borne on the trial

25   presentation such that *Strickland* prejudice can be shown.  *See Bemore v. Chappell*, 788 F.3d

26

27   court's denial of this claim is deserving of deference under AEDPA.  *See generally Richardson v.*
     *United States*, 841 F.2d 993, 996 (9th Cir. 1988).

28

1151, 1169 (9th Cir. 2015) (citing *Wiggins*, 539 U.S. at 535-36); *see also Wong v. Belmontes*, 558 U.S. 15, 19-20 (2009) (per curiam). Thus, in order to succeed in state court at the pleading stage, petitioner had to make a prima facie showing that, had defense counsel properly investigated petitioner's psychosocial, neuropsychological, and cognitive functioning at the time of the crimes, they would have discovered information so helpful to the defense that no reasonable defense counsel would have failed to present it and, if presented, there is a reasonable probability of a more favorable guilt-phase verdict. *See Wong*, 558 U.S. at 19-20; *Bemore*, 788 F.3d at 1169.

Intrinsic to both of these determinations is the recognition that the reviewing court is bound by the trial record. The Supreme Court made this explicit in *Strickland*, in describing the prejudice inquiry:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. *Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings*, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 695-96 (italics added). It is in consideration of this fundamental aspect of petitioner's burden that the state court may have reasonably concluded that petitioner had not made a prima facie showing of prejudice under *Strickland*. The specific prejudice allegations of these subclaims were that, had defense counsel reasonably investigated, they would have consulted with qualified experts who could have opined, inter alia, that during the crimes petitioner's "judgment and sensory perceptual ability had deteriorated and he was experiencing a condition known as sensory numbing," meaning "he was operating in a sensory fog and [was]

1    not aware of what he was doing and may not have been aware of whom he was with" and he

2    "likely . . . would have experienced psychosis" during this time.  LD 4-1SHC.EX1 at Ex. 15 ¶¶

3    81, 85; LD 4-1SHC at 43-50; *see also* LD 4-1SHC.EX1 at Ex. 13.  Petitioner alleged that such

4    evidence could have supported several viable defenses.  LD 4-1SHC at 45-50.

5         The problem with these allegations, which the state court may have reasonably perceived,

6    is that petitioner failed to show that, taking the record as a whole, either that reasonable defense

7    counsel would have introduced and relied on such evidence or that the jury would have been

8    reasonably likely to be swayed by it.  *See Wong*, 558 U.S. at 19-20; *Strickland*, 466 U.S. at 695-

9    96; *Bemore*, 788 F.3d at 1169.  As the previously assigned magistrate has observed, petitioner's

10   allegations on this issue fail to account for the entirety of the evidence the jury also heard that

11   would have influenced their consideration of the proposed evidence.  *See* ECF No. 84 at 33-37.

12   The central crux of both subclaims is petitioner's postconviction expert's opinion that, because of

13   petitioner's long-standing neuropsychological, mental health, and cognitive impairments and

14   because of the drugs he had ingested the day of the crimes, he was in a "sensory fog" wherein he

15   was unaware of his actions, may have even been unaware of his surroundings, and did not form

16   any intent to do anything, including commit any felony against Mr. Rumsey or kill him.  LD 4-

17   1SHC at 43-50; LD 4-1SHC.EX1 at Ex. 15 ¶¶ 81, 85.  The jury heard, however, ample evidence

18   that would call into question the expert's deduction that petitioner had been untethered to reality

19   and in a mental fog during the crimes.  *See* ECF No. 122 at 3-8 (finding same, in rejecting

20   petitioner's claim that he was prejudiced by trial court's failure to instruct on involuntary

21   manslaughter).  Among this was Amy Hadix's testimony describing petitioner's behavior

22   immediately prior to, during, and after the crimes, *see* 9 RT 3165-3223; *see also* ECF No. 122 at

23   6-7, ECF No. 84 at 37; Helen Rumsey's description of petitioner's behavior during his attack on

24   her, *see* 10 RT 3302-3335; petitioner's own detailed testimony describing the crimes, including

25   that he had armed himself with a knife before the crimes, that he had planned to challenge a drug

26   dealer about a drug sale, and the details of his attack on Helen Rumsey after killing Mr. Rumsey,

27   *see* 10 RT 3392-3494; *see also* ECF No. 122 at 7-8, ECF No. 84 at 35, 37; and evidence that

28   petitioner had attacked and robbed another person just a few hours before attacking the Rumseys.

1      *See* 10 RT 3438, 3485, 3491; *see also* ECF No. 84 at 35.  Petitioner's allegations do not account

2  for this, or any other, of the instances of petitioner having acted in an apparently self-directed,

3  aware manner at the time of the crimes.  *See* LD 4-1SHC at 43-50.  With such an obvious source

4  of impeachment, the state court may have reasonably concluded that petitioner could not show

5  that every reasonable defense counsel would have adduced the expert testimony—and the factual

6  basis thereof—that he proffered in habeas corpus.  *See Wong*, 558 U.S. at 19-20; *Bemore*, 788

7  F.3d at 1169.  For the same reason, too, the jury may reasonably have discounted such evidence

8  because it seemed to conflict with other evidence they heard, including some of petitioner's own

9  testimony, such that the state court may reasonably have concluded that petitioner had not made a

10 prima facie showing of prejudice.  *See ibid.*; *cf.* ECF No. 122 at 3-8.

11     For these reasons, the state court reasonably applied clearly established federal law if it

12 summarily denied subclaims 16(a) and 16(c) for lack of a prima facie showing of prejudice.  *See*

13 28 U.S.C. § 2254(d)(1).  The undersigned recommends that these subclaims be dismissed.

14 **Claim 16(i)**

15     In subclaim 16(i), petitioner alleges that defense counsel performed ineffectively at the

16 guilt phase of his trial on an assortment of factual bases, ECF No. 44 at 119-29, but argues that

17 just one of these bases was unreasonably denied by the state court: that trial counsel unreasonably

18 failed to investigate and present evidence of Ms. Baker's and Ms. Hadix's roles as accomplices in

19 the charged crimes, which prejudiced petitioner at the penalty phase of his trial.  ECF No. 179 at

20 19-22.[13]  After review of the state court record, the undersigned concludes that the state court's

21 summary denial of this subclaim was reasonable, as the state court may have reasonably

22 concluded petitioner failed to make a prima facie showing of deficient performance.

23     In the amended petition, petitioner alleges that defense counsel were unreasonable in

24 failing to adduce evidence that Ms. Baker and Ms. Hadix were "accomplices" to the charged

25 crimes, in that they had greater involvement in the attacks on and robbery of the victims than the

26 jury was led to believe.  ECF No. 44 at 121-22.  Relative to Ms. Baker, petitioner alleges defense

27

28     [13] As noted in footnote 9, *ante*, in his briefing petitioner appears to mistakenly transpose "16(g)" and "16(i)" in his discussion of these subclaims.

1   counsel were deficient for failing to adduce evidence that Tim Smith—who lived in the victims'

2   apartment complex—had heard Ms. Baker suggest, in petitioner's presence, that "we" should rob

3   the Rumseys.  ECF No. 44 at 122.  Relative to Ms. Hadix, petitioner alleges that defense counsel

4   were deficient for failing to adduce evidence that the victims' blood was found on her pants and

5   that her father and Mr. Smith had observed her after the crimes and perceived her to be calm.

6   ECF No. 44 at 121.  He pled the same allegations in his first petition for writ of habeas corpus in

7   state court, which that court denied summarily.  LD 4-1SHC at 58-63; LD 4-1SHC.ORD.

8        The state court was reasonable in concluding that petitioner's allegations did not make a

9   showing of deficient performance, given the entirety of the record before it.  Under clearly

10   established federal law, there is "a 'strong presumption' that counsel's representation was within

11   the 'wide range' of reasonable professional assistance," *Richter*, 562 U.S. at 104 (quoting

12   *Strickland*, 466 U.S. at 689), and defense counsel's "strategic choices . . . are virtually

13   unchallengeable," where counsel has conducted a reasonable investigation into the case.

14   *Strickland*, 466 U.S. at 690.  Thus, for example in *Strickland*, the Court held defense counsel

15   operated "well within the range of professionally reasonable judgments" in deciding how much

16   evidence to propound on a particular point, including opting to forego the presentation of

17   additional evidence on an issue for which the jury had already heard some evidence.  *Id.* at 699;

18   *see also Richter*, 562 U.S. at 111 (holding it was reasonable for lower court to find trial defense

19   counsel reasonable for failing to offer particular affirmative evidence in support of the defense,

20   instead relying on cross-examination and argument).

21        Here, as in *Strickland*, some of the allegations concerning Ms. Hadix and proffered

22   evidence in support thereof were fundamentally cumulative with evidence the jury had already

23   heard, rendering it reasonable for defense counsel to fail to adduce the evidence specified by this

24   clam.  *See Strickland*, 466 U.S. at 690.  The jury was aware that Ms. Hadix had been present

25   during petitioner's attack on Mr. Rumsey, so the fact that blood was later found on her pants

26   would have been cumulative to that evidence.  *See* 9 RT 3179-80, 3216-17; 10 RT 3381-85.

27   Similarly, the jury had heard testimony that Ms. Hadix behaved calmly the morning after the

28   crimes, and thus it was well within reasonable professional judgment for defense counsel to

1    choose not to adduce additional testimony on this point.  *See* 9 RT 3104-07.

2            It was also reasonable for defense counsel to elect not to present the testimony of Tim

3    Smith that he perceived Ms. Hadix as calm immediately after the crimes, given that this testimony

4    may have been impeached readily with contrary evidence.  *See* 9 RT 3231.  *See Strickland*, 466

5    U.S. at 698-99 (holding trial counsel exercises reasonable professional judgment in not presenting

6    evidence that could be impeached in very damaging way); *see also Richter*, 562 U.S. at 108

7    (holding same, where defense counsel had not presented available expert testimony).

8            More fundamentally, the state court may have reasonably viewed with dubiousness the

9    underlying premise of this subclaim, that it would have been valuable to the defense for Ms.

10    Hadix's credibility to be impeached generally.  The potential value the evidence purporting to

11    impeach Ms. Hadix—evidence that she had blood on her pants after the crimes and that some

12    witnesses observed her to be calm—to the defense theory must be understood within the universe

13    of petitioner's habeas allegations and the evidentiary record at trial.  The previously assigned

14    magistrate judge has described the multiplicity of petitioner's theories in habeas corpus

15    purporting to identify defects with the evidence presented at the guilt phase, and that these

16    theories contradict each other and, at times, the trial record.  *See* ECF No. 84 at 33-34, 48-49, 51-

17    52; ECF No. 160 at 22-29.  In his briefing and his amended petition, in this court and in state

18    court, petitioner has neither acknowledged these inconsistencies nor made clear whether his

19    argument is that defense counsel could have presented any of these trial defenses in the

20    alternative, or that they should have presented all of them to the jury.  *See generally* ECF No. 44;

21    ECF No. 179; ECF No. 218; LD 4-1SHC.  If the latter, petitioner offers no argument or theory as

22    to why the jury would have been moved to more favorable verdicts had trial counsel employed

23    such a scattershot, internally inconsistent theory of the defense, or why reasonable defense

24    counsel would have chosen such a strategy at all.  *See generally ibid.*; ECF No. 44.  To the extent

25    that petitioner's theory in habeas corpus is that defense counsel should have propounded all the

26    various theories of defense he identifies in habeas corpus, that strategy itself would appear to fall

27    outside the bounds of reasonable trial tactics.  *See, e.g., Dunn v. Reeves*, 594 U.S. 731, 738 (2021)

28    (defense counsel is reasonable when he avoids presenting evidence that risks "'harm[ing] the

1  defense' by undermining credibility with the jury," quoting *Richter*, 562 U.S. at 108).  Moreover,

2  the sum of petitioner's allegations appear to undermine his deficient performance allegations on a

3  fundamental level: how could petitioner show that trial counsel was objectively unreasonable for

4  electing a particular strategy, while petitioner elsewhere in his petition argues for the

5  reasonableness of an entirely contrary strategy; in so doing, petitioner would appear to

6  demonstrate the truth of the Supreme Court's observation that "[t]here are countless ways to

7  provide effective assistance in any given case [and] [e]ven the best criminal defense attorneys

8  would not defend a particular client in the same way."  *Strickland*, 559 U.S. at 689-90, citing

9  Goodpaster, *The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases*, 58

10  N.Y.U. L. Rev. 299, 343 (1983); *see* ECF No. 160 at 26-28.

11         Specific to the allegations at issue in the relevant subclaim, some of petitioner's

12  incompatible habeas corpus theories argue that defense counsel was deficient for failing to

13  impeach a witness, but that the jury should have otherwise relied on the testimony of that witness;

14  this is the case with petitioner's arguments in habeas corpus concerning Ms. Hadix's testimony.

15  *See* ECF No. 160 at 26-27.  Petitioner provides no explanation as to why all reasonable defense

16  counsel would have impeached Ms. Hadix, if counsel also intended for the jury to rely on her

17  testimony to corroborate critical pieces of petitioner's testimony or the theory of defense more

18  generally.  *See ibid*.  All of these reasons cause the undersigned to conclude that it would seem of

19  tenuous value to the defense for counsel to have presented evidence that Ms. Hadix was calm

20  after the crimes, to contradict her testimony that she was agitated and scared, or to have presented

21  evidence that she had blood on her pants, and thereby suggest close proximity to petitioner while

22  he attacked the Rumseys.

23         The state court was also reasonable if it determined that petitioner failed to make a prima

24  facie showing that defense counsel were deficient by failing to propound evidence that Ms. Baker

25  had suggested the robbery of the Rumseys before the crime.  This evidence, if propounded, would

26  have conflicted with petitioner's own testimony at trial, which was that he had not gone to the

27  Rumseys' apartment to rob them, but rather because he had mistaken it for another person's

28  apartment, where he intended to initiate a dispute about drug quality.  10 RT 3400-12.  He

1    specifically testified, on redirect examination, that Ms. Baker had not suggested that he steal

2    money from the Rumseys.  10 RT 3490-91.  Petitioner offered to the state court no argument as to

3    why reasonable trial counsel would have adduced evidence that would have contradicted the

4    defense theory and petitioner's own testimony.  The state court was not unreasonable if it

5    concluded that, given this, petitioner had not made a prima facie showing that he had overcome

6    the "strong presumption" that trial counsel's strategic choices were reasonable relative to the

7    evidence at issue.  *See Strickland*, 559 U.S. at 689-90.

8         Thus, because the petitioner has not shown that state court's summary rejection of these

9    allegations was unreasonable under clearly established federal law, the state court's denial of this

10   subclaim is entitled to deference.  *Richter*, 562 U.S. at 98.  The undersigned recommends that

11   subclaim 16(i) be dismissed.

12   **Claim 22**

13        In claim 22, petitioner alleges that the prosecutor wrongfully withheld from the defense

14   material impeachment information concerning Roger Beard, James Rumsey, Robert Southard,

15   June Rice, and Marie Baker.  ECF No. 44 at 157-59.  Petitioner raised this claim in his first

16   petition for writ of habeas corpus in state court, which the California Supreme Court denied

17   summarily on the merits.  LD 4-1SHC at 135-41; LD 4-1SHC.ORD.  The undersigned concludes

18   that denial was a reasonable application of clearly established federal law and is entitled to

19   deference.

20        In light of the evidentiary record before it, the state court may have reasonably concluded

21   that petitioner failed to make a prima facie showing of a constitutional violation.  *See* 28 U.S.C.

22   § 2254(d)(1).  Under *Brady v. Maryland*, 373 U.S. 83 (1963), the due process clause requires a

23   prosecutor to disclose to a criminal defendant all evidence favorable to the accused, whether it is

24   material to guilt or penalty.  "To establish a *Brady* violation, a defendant must show that: (1) the

25   evidence at issue is favorable to the accused, either because it is exculpatory or because it is

26   impeaching; (2) the evidence was suppressed by the government, regardless of whether the

27   suppression was willful or inadvertent; and (3) the evidence is material to the guilt or innocence

28   of the defendant."  *United States v. Sedaghaty*, 728 F.3d 885, 899 (9th Cir. 2013) (citing *Brady*,

1  373 U.S. at 87).

2          The state supreme court was reasonable if it concluded that petitioner's allegations failed

3  to make a prima facie showing of materiality as to Roger Beard, James Rumsey, and Roger

4  Southard.  None of these persons were testifying witnesses; consequently, there was nothing to

5  impeach even had petitioner been armed with the information he alleges was wrongfully

6  withheld.  Given this, the state supreme court may have reasonably concluded that these

7  allegations failed as a matter of law to state a claim under *Brady*.  *See Giglio v. United States*, 405

8  U.S. 150 (1972) (holding *Brady* obligations apply to impeachment information concerning

9  testifying witnesses); *see, e.g.*, *United States v. Raymundi-Hernandez*, 984 F.3d 127, 163 (1st Cir.

10  2020) (holding that no *Brady* violation occurred where undisclosed information was valuable as

11  impeachment for a person who "did not ultimately testify in the trial and thus did not need to be

12  impeached"); *United States v. Larrahondo*, 885 F. Supp. 2d 209, 218 (D.D.C. 2012) (holding

13  *Brady* obligation extends to impeachment information for testifying witnesses or non-testifying

14  witnesses whose statements are introduced at trial).

15          To the extent that petitioner's allegations should have been understood more broadly to

16  allege not that Messrs. Beard, Rumsey, and Southard would have been impeached per se, but that

17  their respective criminal histories supported the defense theory more generally and thus were

18  material in that way, the state court was reasonable in rejecting this theory.  Petitioner alleged in

19  habeas corpus that the criminal history information of Messrs. Beard and Rumsey would have

20  substantiated his defenses that he was reasonable in arming himself and that he had attacked Mr.

21  Rumsey in self-defense.  LD 4-1SHC at 138-39; *see* ECF No. 44 at 158.  These theories,

22  however, conflicted with his testimony at trial: as described above, petitioner testified that his

23  arming himself was in no way related to any knowledge he had of Mr. Beard's criminal history,

24  but out of expectations based on his own behavior.  Similarly, he testified that he attacked Mr.

25  Rumsey not as a result of the latter's provocation, but because he mistakenly believed Mr.

26  Rumsey to be Mr. Beard.  *See* 10 RT 3473-75, 3483.  Given this evidence, the state court could

27  have reasonably rejected the notion either that petitioner's defense would have been aided in any

28  material way by the defense's knowledge of Mr. Rumsey's or Mr. Beard's criminal histories, or

1  that presentation of such evidence to the jury in some form would have had any reasonable

2  likelihood of altering their verdicts.

3         The state supreme court reasonably could have reached the same conclusion about the

4  criminal history evidence of Mr. Southard.  Petitioner's own testimony was that Mr. Southard was

5  a stranger to him and that they engaged in conflict after Mr. Southard used racial epithets against

6  him.  10 RT 3438, 3485.  In light of this, Mr. Southard's criminal history would appear irrelevant,

7  and, furthermore, petitioner provided the state court no theory as to how this evidence—even if it

8  was admitted in some form—was reasonably likely to have led to a more favorable verdict, in

9  light of the totality of evidence the jury would have heard.

10        The state supreme court may also have concluded that petitioner failed to make a prima

11 facie showing that the prosecution suppressed impeachment information for prosecution

12 witnesses Marie Baker and June Rice.  In state court, petitioner alleged that the state "failed to

13 disclose that June Rice and Marie Baker were convicted criminals."  LD 4-1SHC at 139.  The

14 record, however, contradicted the allegation that this information was suppressed.  *See Brady*, 373

15 U.S. at 87 (actual suppression of the information by the state is a required element of the claim).

16 During his direct examination of Ms. Baker, the prosecutor elicited her testimony that she had

17 been convicted of multiple offenses and was, in fact, serving a sentence at the time of her

18 testimony.  9 RT 3128-29; *see also* 9 RT 3164.  Ms. Rice similarly testified on direct examination

19 that she had been convicted of multiple offenses and was incarcerated at the time she testified.  9

20 RT 3238-39; *see also* 9 RT 3152 (Ms. Baker also testifies that Ms. Rice was presently in jail with

21 her).  Petitioner's allegation that this information was suppressed, therefore, was contradicted by

22 the trial record, and the state court was reasonable in relying on the record.  *See Pinholster*, 563

23 U.S. at 190-94; *Landrigan*, 550 U.S. at 475-77.  Accordingly, the state court may have reasonably

24 concluded that these subclaims failed on the essential element of the material at issue having been

25 actually suppressed.  *See Brady*, 373 U.S. at 87.

26        For these reasons, the state court's summary denial of this claim was reasonable under

27 clearly established federal law.  *See* 28 U.S.C. § 2254(d)(1).  The undersigned recommends that it

28 be dismissed.

51

1    **Claim 23**

2       In claim 23, petitioner alleges that his constitutional rights were violated by the

3    prosecutor's introduction of false testimony and interference with witnesses.  ECF No. 44 at 159.

4    The California Supreme Court denied this claim summarily on the merits, when it was raised in

5    that court in petitioner's first petition for writ of habeas corpus.  LD 4-1SHC at 141-49; LD 4-

6    1SHC.ORD.  Respondent argues that that denial is entitled to deference and, in response,

7    petitioner argues that the state court's denial was unreasonable for four sets of factual allegations

8    included in this claim: that the prosecutor knowingly introduced, or failed to correct, false

9    testimony concerning the police statements of witnesses Hadix and Rice, Ms. Baker's drug use,

10   petitioner's knowledge of the victims' money, and petitioner's use of a knife during the crimes.

11   ECF No. 218 at 54-60.  By failing to challenge the state court's summary denial of the other

12   subclaims contained in this claim, *see* ECF No. 44 at 159-66; LD 4-1SHC at 142, 144, petitioner

13   implicitly concedes the reasonableness of those denials.  *See Richter*, 562 U.S. at 98; *Walker*, 709

14   F.3d at 939.  After review of the state-court record, the undersigned concludes that the state

15   court's denials of the remaining allegations comprising this claim were reasonable and are

16   entitled to deference.  *See* 28 U.S.C. § 2254(d).

17      *A. Legal Standard*

18       Under clearly established federal law, a criminal defendant's due process rights under the

19   Fourteenth Amendment are violated if he is convicted "through use of false evidence."  *Napue v.*

20   *Illinois*, 360 U.S. 264, 269 (1959); *see also United States v. Agurs*, 427 U.S. 97 (1976) ("[A]

21   conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must

22   be set aside if there is any reasonable likelihood that the false testimony could have affected the

23   judgment of the jury."); *Giglio v. United States*, 405 U.S. 150, 153 (1972) ("[D]eliberate

24   deception of a court and jurors by the presentation of known false evidence is incompatible with

25   'rudimentary demands of justice.'"); *Miller v. Pate*, 386 U.S. 1, 7 (1967) ("[T]he Fourteenth

26   Amendment cannot tolerate a state criminal conviction obtained by the knowing use

27   of false evidence.").  To obtain a reversal, "the petitioner must show that (1) the testimony [or

28   evidence] was actually false, (2) the prosecution knew or should have known that

52

1     the testimony [or evidence] was actually false, and (3) that the false testimony [or evidence] was

2     material." *Hein v. Sullivan*, 601 F.3d 897, 908 (9th Cir. 2010), *cert. denied*, 563 U.S. 935

3     (2011); *see Napue*, 360 U.S. at 269; *see also United States v. Bagley*, 473 U.S. 667 (1985) ("the

4     knowing use of false testimony to obtain a conviction violates due process regardless of whether

5     the prosecutor solicited the false testimony or merely allowed it to go uncorrected when it

6     appeared"); *Alcorta v. Texas*, 355 U.S. 28, 31 (1957).  Each element of the test must be satisfied

7     with competent evidence before a reversal may be granted.  *See, e.g.*, *Sanders v. Cullen*, 873 F.3d

8     778, 801 (9th Cir. 2017) (affirming denial of *Napue* claim when petitioner "did not support the

9     claim that [the witness] lied or that the prosecution knew his testimony was false"), *cert. denied*,

10    139 S. Ct. 778 (2019).

11        B.  *The State Court's Summary Denial of This Claim Was Reasonable*

12            1.  *Evidence Regarding Ms. Hadix's and Ms. Rice's Statements to Police*

13        Petitioner argues that his due process rights were violated under *Napue* when prosecution

14    witness Officer Chuck Lebak "testified that the statements of Hadix and Rice remained

15    essentially unchanged throughout the investigation."  ECF No. 218 at 54 (citing 9 RT 3104); LD

16    4-1SHC at 145-48 (citing same).  The state court may have reasonably concluded that petitioner

17    had not made a prima facie showing of his entitlement to relief on this subclaim.

18        At trial, Officer Lebak testified, on direct examination by the prosecutor, that he had

19    interviewed Ms. Rice at least three times and there was "no" difference in the content of her

20    responses as they "related to the specific aspects of [the criminal] investigation."  9 RT 3104.  He

21    also testified that he had interviewed Ms. Hadix at least four times, and, in those interviews, "her

22    statement has remained essentially the same."  *Ibid*.  In state post-conviction proceedings,

23    petitioner tendered to the state court reports from these interviews that indicated that Ms. Rice

24    had initially denied to investigators drugs were involved in events occurring before the crimes,

25    before eventually admitting it in her final interview.  LD 4-1SHC at 145-46.  He also alleged that

26    Ms. Hadix's statements to investigators had "varied on crucial points such as how far into the

27    Rumsey's apartment she went" and, thus, had not remained "essentially" the same.  *Id.* at 146.

28        The state court may have reasonably concluded that petitioner's allegations had not made

1   a prima facie showing that Officer Lebak's testimony was false within the meaning of *Napue*.

2   Under *Napue*, evidence is "false" if it "taken as a whole, g[ives] the jury the false impression" on

3   an issue of fact.  *Alcorta v. State of Tex.*, 355 U.S. 28, 31 (1957).  Here, the reviewing state court

4   could have reasonably concluded that neither piece of testimony in question met that standard.

5   Officer Lebak's testimony that Ms. Rice's statements had been consistent with one another on

6   "the specific aspects of [the] investigation" does not appear belied by the fact that Ms. Rice had

7   disclosed in only one of the interviews that petitioner had been involved in a drug dispute with a

8   third party in the hours before his attack on the Rumseys.  A similar result obtains concerning

9   Officer Lebak's testimony that Ms. Hadix's reports were "essentially the same" across her

10  interviews: that petitioner can highlight one fact that changed in those interviews—namely, Ms.

11  Hadix's report of her entry into the Rumsey's apartment—does not demonstrate the falsity of

12  Officer Lebak's perception that the reports were more consistent than inconsistent with one

13  another or, more generally, that the jury was left with a false impression of the facts due to

14  testimony elicited by the prosecution.  The state court's denial of this subclaim, therefore, was

15  reasonable.

16          2.  *Evidence Concerning Ms. Baker's Drug Use*

17          The state court may have reasonably reached a similar conclusion concerning petitioner's

18  allegations that his due process rights under *Napue* were violated by the prosecutor's failure to

19  correct Ms. Baker's testimony that she had not used drugs nineteen months prior to her testimony.

20  ECF No. 218 at 56; LD 4-1SHC at 145; *see* ECF No. 44 at 163.  The state court was reasonable if

21  it concluded that the allegations and evidence in support thereof that petitioner tendered to the

22  state court failed to make a prima facie showing of any of the elements of a *Napue* violation.

23          The state court may have reasonably concluded that petitioner's allegations failed to show

24  either that Ms. Baker testified falsely or that the prosecutor knew she testified falsely.  At trial,

25  Ms. Baker testified extensively about her drug use during the time of the crimes.  9 RT 3133-34,

26  3139-40, 3145-46.  During cross-examination, she testified that she had not used drugs since her

27  last arrest on February 21, 1989, which was approximately nineteen months prior to her

28  testimony.  9 RT 3148-50.  In state habeas corpus, petitioner alleged that this was false, and that

1    she had, in fact, used drugs more recently.  LD 4-1SHC at 145.  In support, petitioner tendered a

2    police report describing Ms. Baker's involvement with a portion of the criminal investigation into

3    the Rumsey homicide in December 1988, LD 4-1SCH.RIR at 94; LD 4-1SCH.RIR at Ex. 4 at 24,

4    and the court file relating to Ms. Baker's prosecution for her February 1989 arrest.  LD 4-

5    1SCH.RIR at 94; LD 4-1SCH.RIR at Ex. 14.  Neither of these documents appear to contain any

6    facts or evidence concerning Ms. Baker's drug use, let alone anything that tends to establish that

7    she was testifying falsely when, in September 1990, she testified that she had not used drugs since

8    February 1989.  *See* LD 4-1SCH.RIR at 94; LD 4-1SCH.RIR at Exs. 4 & 14.  As such, the state

9    court could also have reasonably concluded that petitioner had made no prima facie showing

10   either that Ms. Baker had testified falsely or that the prosecution had actual or constructive notice

11   of her false testimony.  *See ibid*.

12          Additionally, the state court may have reasonably concluded that petitioner had not made

13   a prima facie showing of materiality.  In state court, he offered no theory as to why Ms. Baker's

14   credibility on the issue of the length of her sobriety would have affected the viability of his

15   defense, at guilt or penalty, in any material way.  *See* LD 4-1SHC at 145-46.  Instead, he seemed

16   to argue that no reasonable defense counsel would have failed to impeach Ms. Baker on every

17   available basis, because her testimony was the lynchpin of the prosecution's case, and that Ms.

18   Baker's testimony was "needed" by the prosecution "to prove that Petitioner had washed his

19   bloody hands off in her apartment after the murder, and left the knife on her kitchen counter," as

20   "[n]either Hadix, Rice or [Helen] Rumsey indicated they saw petitioner with a knife or bloody

21   hands."  *See* LD 4-1SHC at 148.  These factual allegations, however, were contradicted by

22   evidence in the record, and the state court may have reasonably relied on the record.  *See*

23   *Pinholster*, 563 U.S. at 190-94; *Landrigan*, 550 U.S. at 475-77.  Contrary to petitioner's

24   allegation, Ms. Baker's testimony was not the only evidence connecting petitioner to a knife at

25   the time of the crimes: Amy Hadix testified she saw petitioner slit Mr. Rumsey's throat, 9 RT

26   3179; Helen Rumsey testified she saw petitioner stab Mr. Rumsey and experienced him stabbing

27   her, 10 RT 3321-24; and petitioner himself testified that he armed himself with a knife from Ms.

28   Baker's kitchen before going to the Rumseys' apartment, then attacked both victims with the

1    knife.  10 RT 3407-08, 3411-12.  In light of this, petitioner's argument that Ms. Baker's

2    testimony was essential to establishing petitioner's identity as the culprit seems wholly unfounded

3    and even at odds with the evidence.  As such, the state court was reasonable if it concluded that

4    petitioner had not made a prima facie showing of materiality on this subclaim.

5         *3.  Evidence Concerning Petitioner's Knowledge of the Victims' Money*

6         In this subclaim, petitioner alleges that Ms. Baker testified falsely that petitioner was

7    present for a conversation between the Rumseys and her on the day of the crimes, during which

8    the Rumseys discussed Ms. Baker's daughter having stolen from them and Mr. Rumsey gave Ms.

9    Baker $50 from his wallet.  ECF No. 218 at 57-58; ECF No. 44 at 161-62.  The state court was

10   reasonable in concluding that petitioner had not made a prima facie showing of entitlement to

11   relief.[14]

12        In state court, petitioner's allegations failed to show that he could, if permitted,

13   demonstrate that Ms. Baker's testimony on this point was false.  The only facts petitioner alleged

14   showed the falsity of Ms. Baker's statements were (1) this testimony conflicted with Ms.

15   Rumsey's report to investigators of when the conversation occurred (LD 4-1SHC at 143), and

16   (2) Ms. Baker's testimony was consistent with a statement she had previously given to

17   investigators, but that statements may have been coerced due to, per Ms. Baker, the police having

18   threatened her, the police possibly having left bruises on her body, and her young child being

19   present for the interview.  LD 4-1SHC at 147.  These factual averments, however, do not

20   demonstrate that Ms. Baker's testimony was false.  The fact that two witnesses professed

21   different recollections about when an event occurred does not, without more, demonstrate that

22   one witness was lying, or that the prosecutor should have known of it.  *See, e.g.*, *United States v.*

23   *Bingham*, 653 F.3d 983, 995 (9th Cir. 2011) ("Bingham points to nothing in the record that shows

24   the intentional use of perjured testimony. Certainly [the witness] made inconsistent statements,

25   but that is not enough for a *Napue* violation."); *United States v. Croft*, 124 F.3d 1109, 1119 (9th

26   _____

27        [14] In state court, petitioner also alleged that surviving victim Helen Rumsey testified
     falsely that Ms. Baker's daughter had stolen money from Ms. Baker.  LD 4-1SHC at 142.  In this
     proceeding, he does not challenge the reasonableness of the state court's summary rejection of
28   this portion of his *Napue* claim.  *See* ECF No. 218 at 56-59.

1   Cir. 1997) ("The fact that a witness may have made an earlier inconsistent statement, or that other

2   witnesses have conflicting recollections of events, does not establish that the testimony offered at

3   trial was false."); *United States v. Zuno-Arce*, 44 F.3d 1420, 1423 (9th Cir. 1995) ("Discrepancies

4   in the testimony about the details . . . could as easily flow from errors in recollection as from lies"

5   and holding that such discrepancies were "too weak" to show prosecutorial misconduct).

6   Certainly, the fact that Ms. Baker made a prior statement *consistent* with her trial testimony in no

7   way shows the latter's falsity, as petitioner made no allegations to show that whatever coercive

8   experiences Ms. Baker suffered—if any—somehow also caused her to disregard her oath and

9   testify falsely at trial.  *See generally United States v. Payne*, 944 F.2d 1458, 1470 (9th Cir. 1991)

10  (a prior consistent statement is, generally, useful to support the truthfulness of the testimony with

11  which it is consistent).

12          Moreover, petitioner's allegations of the falsity of Ms. Baker's testimony appear balanced

13  on a premise that is counterfactual.  In state habeas corpus proceedings, petitioner argued that he

14  had no knowledge of the Rumseys' possession of cash, prior to entering their apartment, and

15  posited that Ms. Baker's testimony on this point was essential to the prosecution proving

16  petitioner had the requisite mental state for the charged crimes.  LD 4-1SHC at 142-44.  In this

17  proceeding, petitioner presses the point more forcefully, arguing,

18              Respondent contends that it is "undisputed" that Petitioner knew
                that the Rumseys had money based upon the testimony of Baker
19              and Hadix that Petitioner was present when Connie told Baker that
                James Rumsey had "gobs" of money. ECF No. 205 at 78.  This
20              fact is quite disputed.  Petitioner had no such knowledge, and the
                State's case is premised completely upon Baker's false claim that
21              Petitioner was present.

22

23  ECF No. 218 at 58.  In fact, petitioner himself testified unequivocally and with detail that,

24  immediately prior to the crimes, he did know that the Rumseys had money in their apartment

25  because Ms. Baker had repeatedly conversed about it.  10 RT 3409 (petitioner testified that,

26  during the time he was staying with Ms. Baker, she "was insistent that there was definitely some"

27  money in the Rumseys' apartment, as Ms. Baker sent her "little girl, Connie, . . . down there

28  periodically through three days to steal some money from James Rumsey's wallet or steal

1    whatever she could find").  The state court was reasonable in relying on the evidence in the

2    record, in lieu of petitioner's unsupported allegations to the contrary.  *See generally Pinholster*,

3    563 U.S. at 190-94 (holding state court reasonable under section 2254(d)(1) for giving little

4    weight to habeas allegations that were inconsistent with the actual trial record); *Richter*, 562 U.S.

5    at 109 (in habeas review, court must adhere to the factual record before the state court and may

6    not grant relief based on speculation unsupported by the record).

7         For these reasons, petitioner has failed to demonstrate that the state court's summary

8    denial of this claim was contrary to, or an unreasonable application of, clearly established federal

9    law.  *See* 28 U.S.C. § 2254(d)(1).  Its denial of this claim is entitled to deference.

10        *4.  Evidence Concerning the Knife Used Against the Victims*

11        Petitioner alleges in this subclaim that Ms. Baker testified falsely that she saw petitioner

12   return to her apartment with a knife after he attacked the Rumseys.  ECF No. 44 at 162; ECF No.

13   218 at 59-60.  The state court's summary denial of this claim in state habeas corpus proceedings

14   was reasonable, as petitioner's allegations failed to demonstrate that he could prove that such

15   testimony was false nor that any such false testimony was materiality.  *See Nunes*, 350 F.3d at

16   1054-55.  In state court, the only factual averments on which these allegations were based were

17   that Ms. Baker's testimony on this point was inconsistent with prior statements she had given to

18   investigators, wherein she denied having seen the knife.  LD 4-1SHC at 144-45.  As both a

19   factual and legal matter, the fact that Ms. Baker made inconsistent statements does not, without

20   more, show that her latter statements were false.  *See, e.g.*, *Bingham*, 653 F.3d at 995; *Croft*, 124

21   F.3d at 1119; *Zuno-Arce*, 44 F.3d at 1423.  Additionally, whether Ms. Baker in fact saw petitioner

22   with a knife after the crimes appears immaterial to the guilt or penalty verdicts, given that it was

23   undisputed via petitioner's own testimony that he had attacked James and Helen Rumsey with a

24   knife.  *See* 10 RT 3407-08, 3411-12; *see also* 9 RT 3179 (testimony of Amy Hadix); 10 RT 3321-

25   24 (testimony of Helen Rumsey).  The state court's summary denial of this subclaim was

26   reasonable.

27        For the foregoing reasons, the state court's denial of claim 23 in this proceeding was

28   reasonable under clearly established federal law, *see* 28 U.S.C. § 2254(d)(1), and the undersigned

1    recommends that it be dismissed.

2    **Claim 24**

3    In claim 24, petitioner alleges that his death sentence should be set aside because the

4    prosecutor relied on unlawful aggravation evidence at the penalty phase, namely, two prior felony

5    convictions of petitioner that were obtained, petitioner alleges, while he was incompetent.  ECF

6    No. 44 at 167-69.  The California Supreme Court denied this claim summarily when petitioner

7    raised it in his first petition for writ of habeas corpus in that court.  LD 4-1SHC at 150-53; LD 4-

8    1SHC.ORD.  The undersigned finds that that denial is entitled to deference.

9    Under clearly established federal law, the state court may have reasonably rejected this

10   claim as non-cognizable.  In *Lackawanna Cnty. Dist. Attorney v. Coss,* 532 U.S. 394, 403-04

11   (2001), the Supreme Court held that "once a state conviction is no longer open to direct or

12   collateral attack in its own right because the defendant failed to pursue those remedies while they

13   were available (or because the defendant did so unsuccessfully), the conviction may be regarded

14   as conclusively valid," such that, "[i]f that conviction is later used to enhance a criminal sentence,

15   the defendant generally may not challenge the enhanced sentence through a petition" for writ of

16   habeas corpus  "on the ground that the prior conviction was unconstitutionally obtained."  *See*

17   *also Daniels v. United States,* 532 U.S. 374, 381-82 (2001) (same); *Zichko v. Idaho*, 247 F.3d

18   1015, 1020 (9th Cir. 2001), *as amended* (June 5, 2001) (same).  The Supreme Court recognized

19   that there may be exceptions to this prohibition, where the defendant had not been represented by

20   counsel in the prior proceeding, or where the defendant had "compelling evidence" that he was

21   actually innocent of his crime of conviction in the prior proceeding, and he could not have

22   uncovered that evidence in a timely manner.  *Lackawanna Cnty. Dist. Attorney*, 532 U.S. at 404-

23   05.

24   Given this authority, the state court may have reasonably concluded that petitioner had

25   failed to state a claim on which relief could be granted.  *Cf.* ECF No. 160 at 30-31.  The crux of

26   petitioner's claim was that his prior convictions were unlawfully obtained—both because he was

27   incompetent at the time of his pleas and because his counsel was ineffective for permitting him to

28   plead guilty despite evidence of his incompetence—and, as such, those convictions had

59

1    wrongfully been relied on to enhance his sentence on count one in the instant case.  *See* LD 4-

2    1SHC at 150-53.  He did not allege that he was unrepresented by counsel in the prior proceedings

3    or that he was factually innocent, the evidence of which had only newly become available.  *See*

4    *ibid*.  The state court, therefore, was reasonable if it concluded that petitioner's allegations, even

5    if fully credited, could not entitle him to any form of sentencing relief as a matter of law.  *See*

6    *Lackawanna Cnty. Dist. Attorney*, 532 U.S. at 404-05; *Daniels,* 532 U.S. at 381-82; *cf.* ECF No.

7    160 at 30-31.

8            The undersigned therefore recommends that claim 24 be dismissed.  *See* 28 U.S.C.

9    § 2254(d)(1).

10   **Claim 27**

11           In claim 27, petitioner alleges that his trial counsel performed ineffectively at the penalty

12   phase of his trial for failing to challenge aggravation evidence; failing to investigate and adduce

13   available mitigation evidence, including evidence of petitioner's psychosocial history, his mental

14   health and neuropsychological impairments, and his likelihood of his positive adjustment to

15   prison if given a life sentence; and failing to make a reasonable closing argument.  ECF No. 44 at

16   173-208.  Petitioner alleged that these failures individually and cumulatively prejudiced him and

17   rendered his trial fundamentally unfair.  *Ibid*.  He raised a version of this claim on direct appeal,

18   LD 2-AOB at 78-81, and the state court denied the claim on the grounds that the appellate record

19   did not demonstrate counsel's deficient performance or prejudice and indicated that a petition for

20   writ of habeas corpus was the proper vehicle for the claim.  *Lewis*, 25 Cal.4th at 674-75 & n.15.

21   He raised this claim again in state court in his first petition for writ of habeas corpus, LD 4-1SHC

22   at 77-129, which the state court denied summarily, on the basis that petitioner had failed to make

23   a prima facie showing of entitlement to relief.  LD 4-1SHC.ORD.  The undersigned concludes

24   that the state court was unreasonable under governing, clearly established federal law in

25   concluding that petitioner had failed to make a prima facie case showing that his counsel

26   performed ineffectively at the penalty phase of his capital trial.

27           *A.  Deficient Performance Allegations*

28           In subparts a, b, c, d, e, f, g, and h of claim 27, petitioner advances distinct theories of trial

60

1    counsel's deficient performance at the penalty phase, i.e., acts or omissions that fell below the

2    contemporaneous standard of care, which he alleges prejudiced him (subpart i), rendered his trial

3    fundamentally unfair (subpart j), and were without strategic purpose (subpart k).  ECF No. 44 at

4    173-208.  The undersigned considers each of the theories of deficient performance in turn, then

5    considers whether petitioner made a prima facie showing of prejudice in state court.[15]

6         *1.  The California Supreme Court Was Unreasonable If It Concluded Petitioner Had Not*

7              *Made a Prima Facie Showing of Deficient Performance in Subclaims 27(a), (c), (d)*

8              *and (e)*

9         Subclaims (a), (c), (d), and (e) of claim 27 allege that trial counsel performed deficiently

10   in investigating and presenting available evidence of petitioner's psychosocial history as

11   mitigation at the penalty phase of petitioner's trial.  ECF No. 44 at 173-99.  In subclaim (a),

12   petitioner alleges that trial counsel was ineffective for failing to investigate petitioner's personal

13   and familial history, including his cognitive and neuropsychological impairments, mental illness,

14   substance abuse history; and positive features, despite indications that such investigation would

15   be fruitful, and for failing to present evidence resultant from this investigation to the jury.  ECF

16   No. 44 at 173-87.[16]  In subclaims (c), (d), and (e), petitioner expands on these allegations.  In

17   subclaim (c), petitioner alleges that, due to trial counsel's unreasonably minimal investigation,

18   counsel unreasonably failed to present available mitigation evidence.  ECF No. 44 at 194-95.  In

19   _____

20        [15] Petitioner also argues that trial counsel's failures identified in claim 16(i) prejudiced
     him at the penalty phase.  ECF No. 179 at 19-22.  For the reasons explained *ante*, however, the
21   state court may have reasonably concluded that petitioner's allegations failed to make a prima
     facie showing of deficient performance for this subclaim.

22        [16] In subclaim (a), petitioner also alleges that trial counsel was deficient for failing to
     investigate these areas and present evidence thereof at the guilt phase, in support of a mental state
23   defense.  ECF No. 44 at 173-87.  In his brief addressing the application of section 2254(d) to
     claim 27, petitioner argued that the trial court's summary denial of this claim was only contrary
24   to, or an unreasonable application of, clearly established federal law insofar as petitioner had
     raised allegations concerning trial counsel's performance at the penalty phase and the resultant
25   prejudice in that phase.  ECF No. 179 at 19-22.  Because petitioner bears the burden to
     demonstrate that section 2254(d)'s gateway has been met, *see Walker*, 709 F.3d at 939, the
26   undersigned must treat petitioner's silence concerning his remaining allegations as indication that
     the state court was reasonable in summarily denying relief on this claim insofar as it alleged trial
27   counsel performed deficiently at the guilt phase of the trial and he was prejudiced at the guilt
     phase.
28

1    subclaim (d), he alleges that trial counsel unreasonably failed to investigate and present evidence

2    of his positive relationships with family members and other positive attributes.  ECF No. 44 at

3    196-98.  In subclaim (e), he alleges that trial counsel unreasonably failed to investigate and

4    present evidence of his other positive attributes, including attempts to better himself and positive

5    relationships with non-family members.  ECF No. 44 at 198-99.  Because all of these allegations

6    fall under the umbrella of trial counsel's duty, when preparing for the penalty phase of a capital

7    trial, to investigate his client's personal and psychosocial history—i.e., all the "facets of [his]

8    character," including the nature of his human "frailties," *Woodson v. North Carolina*, 428 U.S.

9    280, 304 (1976)—the undersigned considers them jointly and concludes that the state court was

10    unreasonable if it concluded that petitioner had failed to make a prima facie showing that his trial

11    counsel performed deficiently in this regard.

12          *a.  Legal Standard*

13          At the time of petitioner's trial in 1990, "prevailing professional norms imposed a duty on

14    counsel to adequately investigate, develop, and present mitigating evidence in capital sentencing

15    proceedings."  *Robinson v. Schriro*, 595 F.3d 1086, 1108 (9th Cir. 2010); *see Wiggins*, 539 U.S.

16    at 524 (holding counsel had a duty to "discover all reasonably available mitigating evidence" to

17    prepare for penalty phase of capital trial, considering 1989 trial); *Summerlin*, 427 F.3d at 630

18    (holding same regarding 1982 Arizona trial); *Ainsworth v. Woodford*, 268 F.3d 868, 877 (9th Cir.

19    2001) ("[Investigation] was as crucial in 1980 as it is today in order to assure individualized

20    sentencing and the defendant's right to a fair and reliable capital penalty proceeding."); ABA

21    Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases, Guideline

22    11.4.1(A), (C) (1989) ("Counsel should conduct independent investigations relating to the

23    guilt/innocence phase and to the penalty phase of a capital trial. Both investigations should begin

24    immediately upon counsel's entry into the case and should be pursued expeditiously . . . . The

25    investigation for preparation of the sentencing phase should be conducted regardless of any initial

26    assertion by the client that mitigation is not to be offered.  This investigation should comprise

27    efforts to discover all reasonably available mitigating evidence. . . ."); ABA Standards for

28    Criminal Justice 4–4.1 (2d ed. 1980) ("It is the duty of the lawyer to conduct a prompt

1   investigation of the circumstances of the case and to explore all avenues leading to facts relevant

2   to the penalty [phase].”); *see also Strickland*, 466 U.S. at 690-91.

3            Such mitigation investigation included, as its starting point, “a thorough investigation of

4   the defendant’s background” and “unique personal circumstances.”  *Williams v. Taylor*, 529 U.S.

5   362, 396, 415 (2000) (considering 1986 trial); *Wiggins*, 539 U.S. at 524 (under professional

6   norms in 1989, defense counsel must investigate capital defendant’s medical, educational,

7   employment, incarceration, family and social history, citing Am. Bar Ass’n, Standards for

8   Criminal Justice Providing Defense Services, Standard 4-4.1 (2d ed. 1982 Supp.)); *People v.*

9   *Deere*, 41 Cal. 3d 353, 366-67 (1985) (at the time of petitioner’s trial, California defense counsel

10   had a duty to investigate for mitigation purposes the defendant’s “past history and the unique

11   circumstances affecting his formative development,” including his “upbringing,” childhood

12   traumas, “and other formative influences,” citing Gary Goodpaster, *The Trial for Life: Effective*

13   *Assistance of Counsel in Death Penalty Cases*, 58 N.Y.U. L. Rev. 299, 335-36 (1983));

14   Goodpaster, *The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases*, 58

15   N.Y.U. L. Rev. at 323-24 (To prepare for the penalty phase, “[t]rial counsel has a duty to

16   investigate the client’s life history, and emotional and psychological make-up, as well as the

17   substantive case and defenses.  There must be an inquiry into the client’s childhood, upbringing,

18   education, relationships, friendships, formative and traumatic experiences, personal psychology,

19   and present feelings.”); ABA Guidelines for the Appointment and Performance of Counsel in

20   Death Penalty Cases, Guideline 11.4.1.D.2-3 (1989) (investigation into mitigation evidence for

21   the penalty phase should include investigation, from documentary sources and knowledgeable

22   witnesses, into the defendant’s “medical history, (mental and physical illness or injury of alcohol

23   and drug use, birth trauma and developmental delays); educational history (achievement,

24   performance and behavior) special educational needs including cognitive limitations and learning

25   disabilities); military history (type and length of service, conduct, special training); employment

26   and training history (including skills and performance, and barriers to employability); family and

27   social history (including physical, sexual or emotional abuse); prior adult and Juvenile record;

28   prior correctional experience (including conduct or supervision and in the institution/education or

1   training/clinical services); and religious and cultural influences"); Russell Stetler, *The Past,*

2   *Present, and Future of the Mitigation Profession: Fulfilling the Constitutional Requirement of*

3   *Individualized Sentencing in Capital Cases*, 46 Hofstra L. Rev. 1161, 1170-76 (2018) (describing

4   that, by the late-1980s, defense lawyers typically conducted an expansive investigation into their

5   clients' lives and functioning to develop mitigation evidence to present at the penalty phase of a

6   capital trial); Russell Stetler & Aurélie Tabuteau, *The ABA Guidelines: A Historical Perspective*,

7   43 Hofstra L. Rev. 731, 738-43 (2015) (same).  Many courts have underscored the importance of

8   counsel investigating the defendant's trauma history specifically.  *See, e.g.*, *Boyde v. California,*

9   494 U.S. 370, 382 (1990) ("[E]vidence about the defendant's background and character is

10  relevant because of the belief, long held by this society, that defendants who commit criminal acts

11  that are attributable to a disadvantaged background, or to emotional and mental problems, may be

12  less culpable than defendants who have no such excuse." (internal quotation and citation

13  omitted)); *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982) ("[T]here can be no doubt that

14  evidence of a turbulent family history, of beatings by a harsh father, and of severe emotional

15  disturbance is particularly relevant" to the capital sentencer); *Apelt v. Ryan*, 878 F.3d 800, 830

16  (9th Cir. 2017) ("it is difficult to imagine any rational basis for not investigating [the defendant's]

17  mental health and childhood[,] [given that the defendant] was facing the death penalty for

18  committing a horrendous, cold-blooded murder"); *see also Porter v. McCollum*, 558 U.S. 30, 33,

19  41 (2009); *Williams*, 529 U.S. at 373, 395; *Summerlin*, 427 F.3d at 630; *Boyde v. Brown*, 404

20  F.3d 1159, 1176 (9th Cir. 2005); *Ainsworth v. Woodford*, 268 F.3d 868, 877 (9th Cir. 2001);

21  *Deere*, 41 Cal.3d at 366-67; ABA Guidelines for the Appointment and Performance of Counsel in

22  Death Penalty Cases, Guideline 11.4.1.D.2 (1989).  Reasonable investigation into the defendant's

23  personal history must also specifically encompass the defendant's history of experiencing any

24  symptomology of mental illness or cognitive deficit, or treatment therefor.  *Porter*, 558 U.S. at

25  40-41; *Williams*, 529 U.S. at 395-96; *Lambright*, 490 F.3d at 1117; *Summerlin*, 427 F.3d at 630;

26  ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases,

27  Guideline 11.4.1.D.2 (1989).

28          A reasonable social history investigation includes interviewing witnesses who would have

1  knowledge of the defendant's life history experiences, including his family members.  *See, e.g.*,

2  *Andrus v. Texas*, 590 U.S. 806, 815-16 (2020) (holding mitigation investigation unreasonable

3  where counsel only interviewed the defendant's father and mother, but failed to interview other

4  "close family members" who had been present for some or all of the defendant's "upbringing");

5  *Sears v. Upton*, 561 U.S. 945, 952 (2010) (defense counsel's mitigation investigation "was on its

6  face . . . constitutionally inadequate" where it was limited to only interviewing a few witnesses

7  "selected by [the defendant's] mother," for 1993 trial); *Porter*, 558 U.S. at 39 (defense counsel

8  deficient under professional norms prevailing at time of petitioner's 1988 trial by failing to

9  "interview any members of [petitioner's] family" or acquire records relevant to his life history);

10  *Samayoa v. Ayers*, 649 F.3d 919, 929 n.2 (9th Cir. 2011) (describing mitigation investigation

11  occurring in 1986 and 1987 in preparation for California capital trial, which included multiple

12  interviews with many "immediate and extended family members").  It should also include

13  obtaining records relevant to the defendant's life history, including his school, employment,

14  military, medical, and mental health records.  *See Porter*, 558 U.S. at 39; *Williams*, 529 U.S. at

15  395-96; *Robinson*, 595 F.3d at 1108-09; *Lambright*, 490 F.3d at 1117; ABA Guidelines for the

16  Appointment and Performance of Counsel in Death Penalty Cases, Guideline 11.4.1.D.2 (1989).

17        During the course of such investigation, counsel must reasonably pursue leads or

18  directions of inquiry suggested by the information known to them.  Thus, for instance, in *Wiggins*,

19  the Supreme Court held defense counsel performed deficiently by failing to investigate the

20  defendant's mother's alcoholism, his series of failed foster home placements, educational and

21  physical neglect, and indications of his "emotional difficulties" in foster care, all of which were

22  suggested in the social service records that defense counsel possessed.  539 U.S. at 524-25; *see

23  also Rompilla v. Beard*, 545 U.S. 374, 387-89 (2005) (detailing mitigation leads defense counsel

24  could have learned had they investigated the court record of the prior conviction on which the

25  prosecutor intended to rely as aggravation); *Bemore*, 788 F.3d at 1171-72 (holding trial counsel's

26  investigation unreasonable where, despite having presented over forty witnesses at trial, counsel

27  failed to investigate a potential mental impairment theory suggested by a consulting forensic

28  psychologist); *Earp v. Ornoski*, 431 F.3d 1158, 1175-76 (9th Cir. 2005) ("The presence of certain

1  elements in a capital defendant's background, such as a family history of alcoholism, abuse, and

2  emotional problems, triggers a duty to conduct further inquiry before choosing to cease

3  investigating."); *Douglas v. Woodford*, 316 F.3d 1079, 1088-89 (9th Cir. 2003) (finding defense

4  counsel deficient where he was on notice of the defendant's "particularly difficult childhood" but

5  failed to contact pertinent witnesses, in preparation of 1984 California capital trial).

6         Informed by a reasonable investigation, defense counsel must then present to the jury a

7  compelling case for sparing the defendant's life.  *See Wiggins*, 539 U.S. at 532 (at the penalty

8  phase, defense counsel has "every incentive to make their mitigation case seem as strong as

9  possible"); *see generally Strickland*, 466 U.S. at 690 (at its core, the Sixth Amendment obligates

10  defense counsel "to make the adversarial testing process work in the particular case").  At the

11  time of petitioner's 1990 trial in Shasta County, defense counsel representing capitally-charged

12  defendants should have known that the fundamental objective of mitigation was to "'portray the

13  defendant as a human being with positive qualities'" and "'to show that the defendant's capital

14  crimes are humanly understandable in light of his past history and the unique circumstances

15  affecting his formative development. . . .'"  *Deere*, 41 Cal. 3d at 366-67 (quoting Goodpaster, *The*

16  *Trial for Life: Effective Assistance of Counsel in Death Penalty Cases*, 58 N.Y.U. L. Rev. at 335-

17  36); *see also People v. Pensinger*, 52 Cal.3d 1210, 1279-80 (1991).  Thus, defense counsel is

18  unreasonable if she fails to present at the penalty phase reasonably available evidence that was

19  known, or should have been known, to her, that would have been mitigating and would not have

20  exposed the defendant to harmful rebuttal.  *See Strickland*, 466 U.S. at 690-91, 698-99; *Williams*,

21  529 U.S. at 396 (counsel was unreasonable for failing to introduce evidence in their possession

22  that the defendant was "borderline mentally retarded"); *id.* at 399 (counsel has a duty not only to

23  investigate, but to present and "explain[] the significance of all the available [mitigating]

24  evidence"); *Frierson v. Woodford*, 463 F.3d 982, 993 (9th Cir. 2006) ("Because a sentencing jury

25  is given 'broad latitude to consider amorphous human factors, in effect, to weigh the worth of

26  one's life against his culpability,' the presentation of relevant mitigation evidence is of vital

27  importance to the jury's penalty determination." (quoting *Hendricks v. Calderon*, 70 F.3d 1032,

28  1044 (9th Cir. 1995)); *Caro v. Calderon*, 165 F.3d 1223, 1227 (9th Cir. 1999) ("It is imperative

66

1    that all relevant mitigating information be unearthed for consideration at the capital sentencing

2    phase."); *Deere*, 41 Cal. 3d at 366-67 (at time of petitioner's 1990 trial, the standard of care in

3    California for "effective assistance of counsel . . . entail[ed] at a minimum the attempt to gather

4    and present at least some evidence of the defendant's background which might serve to explain

5    the defendant's crimes and elicit a compassionate response from the sentencer").

6           *b.  Under Clearly Established Federal Law at the Time of the State Court Adjudication,*

7                *Petitioner Made a Prima Facie Showing of Deficient Performance*

8           In state court, petitioner made a prima facie showing that his counsel performed

9    deficiently in the investigation of his personal, psychosocial history, as measured against

10   contemporaneous professional norms and under clearly established federal law.  The state court

11   was unreasonable if it concluded otherwise.

12          In state court, petitioner presented detailed factual allegations that his defense counsel

13   failed to undertake a reasonable investigation into his psychosocial history, including failing to

14   investigate specific areas that counsel knew or reasonably should have known would likely lead

15   to the discovery of mitigation evidence.  LD 4-1SHC at 77-95, 109-20.  Petitioner pled that

16   defense counsel conducted no investigation into petitioner's life history, contacting no witnesses

17   whatsoever.  LD 4-1SHC at 85, 90-91, 110-11.  This included failing to interview any of

18   petitioner's relatives, including petitioner's own mother, who attended his trial; his father; his five

19   siblings; or his children, or any of petitioner's friends, his girlfriend, or other major figures in his

20   life.  LD 4-1SHC at 85, 90-91, 110-11.  Petitioner pled that two of defense counsel's consulting

21   experts recommended that counsel prepare a psychosocial history of and have neuropsychological

22   testing performed on petitioner, but counsel did neither.  *Id*. at 87-88, 91-92.  Petitioner pled that

23   defense counsel failed to investigate any of the significant life events of petitioner of which

24   counsel was aware, including petitioner's time in the California Youth Authority, incidents of

25   intrafamilial violence, his persistent medical problems, and his history of substance abuse.  *Id.* at

26   92-93.

27          Petitioner supported these allegations with "reasonably available documentary evidence"

28   tending to show that his allegations were not merely conclusory or speculative.  *See Duvall*, 9

1    Cal.4th at 474.  Petitioner tendered to the state court billing records from defense counsel's

2    investigator that indicated that he interviewed no witnesses and collected no records relating to

3    any mitigation investigation.  LD 4-1SHC at 80 n.4.  He tendered declarations from his mother,

4    father, sons, girlfriend, social worker relating to the foster placement of his children while he was

5    in custody, and foster parent of his children, in which they stated they were available and willing

6    to be interviewed and to testify on petitioner's behalf at the time of his trial, but that no one from

7    the defense team contacted them to learn about petitioner or his life experiences.  LD 4-

8    1SHC.EX1 at Exs. 1, 2, 3, 4, 5, 6, 7.  He tendered declarations from expert witnesses who averred

9    having recommended counsel investigate petitioner's life history and functioning, and have

10   neuropsychological testing conducted of him.  LD 4-1SHC.EX1 at Exs. 10, 15; see also LD 4-

11   1SHC.EX2 at Exs. 30, 31, 32.

12         Petitioner's allegations in the state court made a prima facie showing that defense

13   counsel—by having conducted no mitigation investigation—performed deficiently under

14   contemporaneous professional norms.  At the time of petitioner's 1990 trial, defense counsel had

15   an "obligation to conduct a thorough investigation of the defendant's background" in preparation

16   for the penalty phase, *Williams*, 529 U.S. at 396; here, petitioner alleged counsel conducted none.

17   At the time of petitioner's trial, as a matter both of clearly established federal law and of

18   empirical criminal defense practice in California, all reasonable defense counsel would have at

19   least interviewed the available family members of their client, particularly those who were closely

20   related to him, such as his parents, children, and siblings, in investigating his life history for

21   mitigation.  *Porter*, 558 U.S. at 39; *Samayoa*, 649 F.3d at 928 n.2; *Deere*, 41 Cal.3d at 367;

22   *People v. Frierson*, 25 Cal.3d 142, 164-66 (1979); *see also Andrus*, 590 U.S. at 815-16; *Sears*,

23   561 U.S. at 952; *Wong*, 558 U.S. at 20-21; *Burger v. Kemp*, 483 U.S. 776, 789-90 (1987); *In re*

24   *Fields*, 51 Cal.3d 1063, 1080 (1990).  Here, petitioner pled that counsel interviewed none of these

25   potential, available witnesses.  LD 4-1SHC at 85, 90-91, 110-11.  Reasonable defense counsel

26   would have pursued investigative leads known to them, such as those suggested by the

27   defendant's criminal record, *Rompilla*, 545 U.S. at 385-89; *Wiggins*, 539 U.S. at 524, or the

28   defendant's drug use, *Bemore*, 788 F.3d at 1171-72; *Frierson*, 463 F.3d at 989; *Wallace v.*

1    *Stewart,* 184 F.3d 1112, 1115 (9th Cir. 1999); *see* ABA Guidelines for the Appointment and

2    Performance of Counsel in Death Penalty Cases, Guideline 11.4.1.D.2-3 (1989).  In petitioner's

3    case, however, counsel allegedly pursued no such leads.  LD 4-1SHC at 92-93.  All reasonable

4    defense counsel, at the time of petitioner's trial, would have undertaken the investigation and

5    testing recommended by their consulting experts, unless there was an evident tactical

6    disadvantage to doing so.  *See Bemore,* 788 F.3d at 1171-72; *Heishman v. Ayers*, 621 F.3d 1030,

7    1039 (9th Cir. 2010); *Bean v. Calderon*, 163 F.3d 1073, 1080 (9th Cir. 1998); *Hendricks*, 70 F.3d

8    at 1043; *see In re Lucas*, 33 Cal.4th 682, 725 (2004); *see also Turner v. Duncan*, 158 F.3d 449,

9    456-57 (9th Cir. 1998); *see generally Strickland*, 466 U.S. at 690-91.  Here, petitioner alleged that

10    trial counsel failed to do so, for no tactical reason whatsoever.  LD 4-1SHC at 87-88, 91-92.  Any

11    of these omissions were unreasonable under the Supreme Court jurisprudence and professional

12    norms governing defense counsel's obligations at the time of petitioner's trial; in aggregate, they

13    reflect a level of inaction by defense counsel that "appear[s] astonishing at best, and purposeful

14    abandonment at worst."  ECF No. 160 at 32 n.16.  If the state court concluded petitioner's

15    allegations failed to state, even as a prima facie matter, that counsel performed deficiently, that

16    conclusion was an unreasonable application of the law governing this type of claim.

17          Respondent's arguments to the contrary do not provide reasonable grounds to defer to the

18    state court's summary denial of this subclaim.  Respondent first argues that the record contradicts

19    petitioner's allegation that counsel performed no investigation, citing in the state court record one

20    of the defense investigator's billing records, which indicated that the investigator had requested

21    petitioner's medical, arrest, and juvenile incarceration records and had spoken on the telephone to

22    petitioner's mother, for half an hour.  ECF No. 182 at 10-11, 22 (citing ACT 43).  Respondent

23    similarly argues that the fact that defense counsel consulted with some experts indicates that he

24    engaged in some preparation for the penalty phase.  ECF No. 182 at 12.  Even if respondent is

25    correct, that the record in fact shows that the defense investigator began the process of acquiring

26    some of petitioner's vital records and spoke to petitioner's mother once, for half an hour, about an

27    unknown topic; and even if defense counsel consulted with experts, these steps alone do not add

28    up to a mitigation investigation that was reasonable in its depth and breadth at the time of

1    petitioner's trial.  *See Andrus*, 590 U.S. at 815-16; *Sears*, 561 U.S. at 952; *Wong*, 558 U.S. at 20-

2    21; *Porter*, 558 U.S. at 39; *Rompilla*, 545 U.S. at 385-89; *Wiggins*, 539 U.S. at 524; *Williams*,

3    529 U.S. at 396; *Bemore*, 788 F.3d at 1171-72; *Samayoa*, 649 F.3d at 928 n.2; *Heishman*, 621

4    F.3d at 1039; *Deere*, 41 Cal.3d at 367; *Frierson*, 25 Cal.3d at 164-66.  Specific to the allegations

5    concerning the defense team's communications with petitioner's mother, the fact that the defense

6    investigator may have spoken to her for half an hour pretrial does not contradict the allegation

7    that no one on the defense team ever interviewed her to obtain relevant psychosocial history

8    information about petitioner.  In sum, the state court would have been unreasonable to conclude

9    that petitioner's factual allegations comprising this subclaim were contradicted by the record so as

10   to demonstrate his lack of entitlement to relief.  *See Duvall*, 9 Cal. 4th at 474.

11          Respondent also takes issue with the adequacy of the defense investigator's billing records

12   as supportive of petitioner's allegations, arguing that they suggest the investigator actually

13   performed more investigation than what was reflected in the records.  ECF No. 182 at 10.  The

14   fact that the billing records may contain ambiguity, however, would have demonstrated that

15   evidentiary development was in order, not why no prima facie showing was made.  If the

16   reviewing court found ambiguity in the materials tendered to support petitioner's allegations, or

17   believed further factual inquiry was necessary to resolve the truth of his allegations, then the

18   proper procedure would have been for the state court to order an evidentiary hearing.  *See, e.g.*,

19   *Alvernaz*, 2 Cal.4th at 930-33; *People v. Snyder*, 14 Cal. App. 4th 1166, 1177 (1993), *abrogated*

20   *on other grounds by People v. Brown*, 8 Cal. 4th 746 (1994); *see also People v. Langi*, 73 Cal.

21   App. 5th 972, 979-80, 984 (2022); *see generally Duvall*, 9 Cal.4th at 974-79 (describing the

22   elaborate fact-finding mechanisms under California habeas corpus procedure to test the veracity

23   of the allegations of the petition, all of which occur after the issuance of the order to show cause);

24   *cf. Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) (evidentiary

25   hearing required when ambiguities exist in pleadings or the evidentiary materials offered in

26   support thereof); *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal.4th 394, 414 (1996) (same).  This

27   argument, then, provides no basis for the court to defer to the state court's summary dismissal of

28   the subclaim.

1        Next, respondent speculates that petitioner may have somehow foreclosed counsel's

2   mitigation investigation or forbidden presentation of mitigation evidence on his behalf.  ECF No.

3   182 at 22-23.  Although the record before the state court was not inconsistent with this possibility,

4   there was no factual information before the state court showing in any way whatsoever that such

5   communications had, in fact, occurred, and petitioner was not required to disprove this—or any

6   other—speculation in order to make a prima facie showing of his entitlement to relief.  Rather,

7   under California law, a habeas corpus petition is only dismissed summarily under a few narrow

8   circumstances: if the allegations, even if credited, do not state a claim for relief, *Duvall*, 9 Cal.4th

9   at 474; if the allegations are conclusory, i.e., are "without any explanation of" their factual basis,

10  *ibid.*; or if Respondent though "citation to legal authority and by submission of factual materials"

11  in the informal response demonstrates that the claim is fundamentally meritless.  *People v.*

12  *Romero*, 8 Cal.4th 728, 742 (1994).  The state court, then, would not have rejected petitioner's

13  allegations simply on the basis of respondent's current factual conjectures or, more generally,

14  based on factual conjectures adverse to the petitioner and unsupported by the record before it.

15  *See Pinholster*, 563 U.S. at 188 (when considering the bases on which the state court may have

16  summarily denied relief, federal court presumes California Supreme Court follows those

17  procedures set forth in California decisional law); *In re Serrano*, 10 Cal. 4th 447, 465 (1995)

18  (holding that California law permits a habeas corpus petitioner to present more evidence at an

19  evidentiary hearing that he had included with his petition).  Speculation about what conversations

20  petitioner may have had with counsel about the mitigation investigation or presentation would not

21  have provided the state court a reasonable basis to summarily dismiss this subclaim.

22       Respondent also observes that petitioner did not support his allegations with a declaration

23  from trial counsel, suggesting that his allegations in state court were defective for that reason.

24  ECF No. 182 at 12.  Respondent does not cite any authority that California pleading rules require

25  a declaration from trial counsel to render allegations of ineffective assistance of counsel

26  adequately pled, *see ibid.*, and such a position appears contrary to California law.  *See Duvall*, 9

27  Cal. 4th at 483-85 (order to show cause properly issued despite petitioner not proffering a

28  declaration from trial counsel in support of his allegations of ineffective assistance of counsel);

1    *see generally Pinholster*, 563 U.S. at 188 n.12 (in determining what reasons could have supported

2    state court's sub silentio denial of habeas corpus relief, federal court considers state court practice

3    and procedural rules); *Richter*, 562 U.S. at 99-100 (same).  In any event, when the California

4    Supreme Court denied relief on this claim, it stated that the reason was petitioner's failure to

5    make out a prima facie case for relief, not for failure to support his allegations with available

6    documentary evidence.  LD 4-1SHC.ORD; *see, e.g.*, *Millan v. Marshal*, 677 F. Supp. 2d 1217,

7    1220 (C.D. Cal. 2009) (California Supreme Court cites to *People v. Duvall*, 9 Cal.4th 464 (1995),

8    to indicate a habeas corpus petition is denied for failure to support its allegations with available

9    documentary evidence).  It therefore would be unreasonable for this court to conclude that the

10   state court denied relief on the latter basis.

11          Finally, respondent argues that the defense's failure to present any evidence in mitigation

12   at the penalty phase may have been a reasonable strategic choice, as the proffered expert and lay

13   witnesses could have been impeached and the defense may have reasonably relied on the

14   mitigating evidence and argument the jury had heard at the guilt phase.  ECF No. 182 at 12-14,

15   24-26.  The state court may not have reasonably denied relief summarily on this basis.  At the

16   time of petitioner's trial, trial counsel had a duty to undertake reasonable investigations in order

17   to inform his decisions about the potential benefits or problems with presenting particular

18   evidence or pursuing a certain defense theory.  *Strickland*, 466 U.S. at 690-91.  The state court

19   would have acted contrary to clearly established federal law if it concluded that the record

20   suggested counsel's decision not to propound any mitigation evidence was strategically sound,

21   because it obviated the possibility of impeachment, as it would have been impossible for counsel

22   to have made such a strategic determination without a reasonable investigation informing it.  *See*

23   *ibid.*; *see, e.g.*, *Noguera v. Davis*, 5 F.4th 1020, 1042-43 (9th Cir. 2021) (where defense counsel

24   conducted no investigation into certain areas of potential mitigation, "counsel could not

25   reasonably have evaluated the benefit—or possible detriment—of" presenting evidence relating

26   to that area, and thus the failure to present such evidence cannot be deemed a "strategic choice");

27   *Turner v. Duncan*, 158 F.3d 449, 456 (9th Cir. 1998), *as amended on denial of reh'g* (Nov. 24,

28   1998) (holding that trial counsel's "inexplicable failure to do even the most minimal investigation

1  cannot be viewed as a strategic decision" under *Strickland*); *Seidel v. Merkle*, 146 F.3d 750, 756

2  (9th Cir. 1998) (where trial counsel "conducted no investigation to ascertain the extent or possible

3  ramifications of his client's psychiatric impairment," despite actual and constructive knowledge

4  of the possibility of such impairment, counsel's failure to present available evidence on this point

5  could not be viewed as "strategic," as he "failed to conduct even the minimal investigation that

6  would have enabled him to come to an informed decision" about its presentation).  Furthermore,

7  respondent's hypothesis that defense counsel may have reasonably opted to rely on his guilt-

8  phase presentation to serve as mitigation appears unsupported by the record, as counsel did not

9  make any argument at the penalty phase urging the jury to consider any guilt-phase argument or

10  evidence when determining petitioner's sentence.  *See* 12 RT 4005-07.

11       For these reasons, petitioner has shown that the state court was unreasonable under clearly

12  established federal law if it concluded that he had not made a prima facie showing that his

13  counsel was deficient by failing to perform a reasonable investigation into his psychosocial

14  history for the development of mitigation evidence.

15       2.  *The California Supreme Court Was Unreasonable If It Concluded Petitioner Had Not*

16            *Made a Prima Facie Showing of Deficient Performance in Subclaim 27(b)*

17       In subclaim 27(b), petitioner alleged that trial counsel was deficient in failing to

18  investigate and appropriately challenge the aggravation evidence presented by the prosecution at

19  the penalty phase.  LD 4-1SHC at 96-109.  The undersigned concludes that petitioner made a

20  prima facie showing of counsel's deficient performance such that the state court was

21  unreasonable if it concluded otherwise.

22       a.  *Legal Standard*

23       At the time of petitioner's trial, counsel representing a capitally charged person had a duty

24  to investigate the evidence on which the prosecution would rely in aggravation.  *Andrus*, 590 U.S.

25  at 818-19; *Rompilla*, 545 U.S. at 387 (citing ABA Standards for Criminal Justice 4–4.1 (2d ed.

26  1980)); *Wiggins*, 539 U.S. at 524 (citing ABA Guidelines for the Appointment and Performance

27  of Counsel in Death Penalty Cases 11.4.1(C), p. 93 (1989)); *see generally Kimmelman,* 477 U.S.

28  at 385 ("Respondent's lawyer neither investigated, nor made a reasonable decision not to

1  investigate, the State's case through discovery. Such a complete lack of pretrial preparation puts

2  at risk both the defendant's right to an ample opportunity to meet the case of the prosecution and

3  the reliability of the adversarial testing process.") (citations and internal quotation marks

4  omitted). The objectives of such investigation include both uncovering sources of impeachment

5  of the prosecution's intended evidence, as well as identifying evidence that may be itself

6  mitigating or lead to the discovery of mitigating evidence. For example, in *Rompilla*, 545 U.S.

7  374, the Supreme Court held that defense counsel performed ineffectively by failing to

8  investigate the records of their client's prior convictions, on which counsel knew the prosecution

9  would rely as aggravation in the penalty phase. All reasonable counsel would have taken this

10  step, the Supreme Court held, in order to determine if there were flaws or impeachable aspects in

11  the evidence the prosecution planned to present, and "to discover any mitigating evidence"

12  contained in those records. *Rompilla*, 545 U.S. at 385-89. On the latter point, the Supreme Court

13  observed that the records of the defendant's prior convictions contained "a range of mitigation

14  leads that no other source had opened up," which alone would have altered the evidentiary picture

15  at the penalty phase such that Mr. Rompilla was prejudiced and entitled to habeas relief. *Id*. at

16  390-93. Similarly, in *Andrus*, the Supreme Court held that defense counsel performed deficiently

17  by failing to independently investigate evidence of defendant's prior acts of violence that the

18  prosecution intended to introduce in aggravation. *Andrus*, 590 U.S. at 818-20. Any reasonable

19  counsel would have done so, in order to "rebut critical aggravation evidence" and to identify

20  evidence tending to show that the defendant deserved mercy. *Id*. at 819. Had counsel undertaken

21  a reasonable investigation, they would have learned of evidence that indicated petitioner may not

22  have even been culpable of one of the acts ascribed to him and that certain others—purportedly

23  aggressive acts committed while he was in juvenile detention—were perceived of as "notably

24  mild" "behavioral problems" by correctional staff. *Ibid.* Moreover, petitioner's juvenile

25  correctional records would have alerted counsel to mitigation evidence, namely, the "severe"

26  traumas petitioner experienced there and "with sufficient understanding of the violent

27  environments Andrus inhabited his entire life, counsel could have provided a counternarrative of

28  Andrus' later episodes in prison," thereby constituting mitigation evidence to advance the

74

1    defense's theme that petitioner would not be a danger to others if given a life sentence. *Ibid.*

2           *b.    Under Clearly Established Federal Law at the Time of the State Court Adjudication,*

3           *Petitioner Made a Prima Facie Showing of Deficient Performance*

4        In state court, petitioner made a prima facie showing that his counsel performed

5    deficiently by failing to investigate available evidence that would challenge the evidence the

6    prosecution offered in aggravation.  In state court, petitioner pled that counsel unreasonably failed

7    to learn of evidence that would impeach or rebut the prosecution's aggravation evidence, and also

8    failed to conduct a reasonable investigation into petitioner's life and functioning that would place

9    the aggravating events in a mitigating context.  LD 4-1SHC at 96-109.  On the latter point,

10   petitioner made a prima facie showing of his entitlement to evidentiary development for the

11   reasons set forth *ante*.  Counsel's duty to conduct a thorough investigation into the defendant's

12   life history—including investigating petitioner's experiences of trauma and deprivation, deficits

13   in his mental and cognitive functioning, and history of substance abuse—inhered in counsel's

14   duty to investigate mitigation evidence generally, irrespective of the aggravation evidence that the

15   prosecution would present.  *See Andrus*, 590 U.S. at 815-16; *Sears*, 561 U.S. at 952; *Wong*, 558

16   U.S. at 20-21; *Porter*, 558 U.S. at 39; *Rompilla*, 545 U.S. at 385-89; *Wiggins*, 539 U.S. at 524;

17   *Williams*, 529 U.S. at 396.  Once counsel had notice, however, of the events that the prosecution

18   intended to present as aggravating acts, counsel had a particular obligation to investigate those

19   events specifically, to learn of any aspects that would have lessened their aggravating impact to

20   the jury.  *See Andrus*, 590 U.S. at 819.  In state court, petitioner pled that counsel unreasonably

21   failed to investigate petitioner's history of substance abuse and addiction, despite knowing that

22   the prosecutor planned to introduce evidence that petitioner had been convicted of possession of

23   methamphetamine only a year before the crimes in the instant case, and that a prosecution witness

24   would testify that he observed marks from intravenous drug use on petitioner's arms.  LD 4-

25   1SHC at 100-01.  Had trial counsel investigated these leads, he could have developed available

26   mitigating evidence, including expert testimony, describing petitioner's mental health frailties

27   that led to a lifetime of addiction struggles.  *Ibid.*; LD 4-1SHC.EX1 at Ex. 15.  Similarly, had trial

28   counsel investigated the aggravating evidence that the prosecution intended to present

1    establishing that petitioner had assaulted his uncle, Leon Johnson, counsel would have learned of

2    a wealth of mitigating leads, including that petitioner's entire family struggled with alcohol abuse,

3    that "[d]runken, violent family fights were . . . not uncommon in petitioner's family," and that

4    petitioner's mother had behaved in an erratic way during the melee. LD 4-1SHC at 100; LD 4-

5    1SHC.EX1 at Ex. 9. These details may have diminished the aggravating weight that the jurors

6    gave to evidence of these events, with no evident tactical downside to the defense. *See Andrus*,

7    590 U.S. at 818-20; *Rompilla*, 545 U.S. at 393.

8        Petitioner also adequately pled that defense counsel unreasonably failed to investigate

9    available sources of impeachment of the prosecution's aggravating evidence and to offer such

10   impeachment at trial. *See Kimmelman*, 477 U.S. at 385; *Turner v. Duncan*, 158 F.3d 449, 456

11   (9th Cir. 1998), *as amended on denial of reh'g* (Nov. 24, 1998). In state court, petitioner pled

12   that a percipient witness was available to dispute the testimony of prosecution witness Willie

13   Shumlai, who testified describing the aggravating incident wherein petitioner assaulted his uncle,

14   Leon Johnson. The available witness could have testified that, rather than petitioner having

15   attacked Mr. Johnson unprovoked, it was an instance of mutual combat with both parties

16   intoxicated at the time. LD 4-1SHC at 100; LD 4-1SHC.EX1 at Ex. 9. Counsel was

17   unreasonable in failing to investigate the strength of the prosecution's evidence of its witness's

18   version of these events. *See Andrus*, 590 U.S. at 818-20; *Kimmelman*, 477 U.S. at 385; *Turner*,

19   158 F.3d at 456.

20       To be sure, not all of petitioner's allegations in state court made a prima facie showing of

21   counsel's deficient performance. In addition to alleging counsel's investigative failures,

22   petitioner also alleged that trial counsel unreasonably failed to seek a bifurcated jury for the

23   penalty phase; to move to exclude the aggravating evidence under *People v. Phillips*, 41 Cal.3d

24   29 (1985); to request particular jury instructions about the aggravating evidence; and to raise

25   certain evidentiary and jurisdictional objections to the evidence the prosecution presented. LD 4-

26   1SHC at 97-99, 101-07. The state court, however, may have reasonably concluded that petitioner

27   failed to show that any of these acts were warranted under state or federal law, such that all

28   reasonable defense counsel would have taken these steps. *See* ECF No. 182 at 17-22. The state

1    court may have reasonably found that these of petitioner's allegations did not make a prima facie

2    showing of counsel's deficiency.

3        Nonetheless, petitioner's allegations that defense counsel failed to investigate the

4    aggravating evidence, and thus failed to uncover available evidence that could have impeached it

5    or could have contributed to the defense's mitigation presentation, stated a prima facie case of

6    defense counsel's deficient performance under clearly established federal law.  The state court

7    was unreasonable if it denied relief summarily on this basis.

8        *3.   The California Supreme Court Was Unreasonable If It Concluded Petitioner Had Not*

9        *Made a Prima Facie Showing of Deficient Performance in Subclaims 27(g) and (h)*

10       In subclaims 27(g) and 27(h), petitioner alleges that his trial counsel performed deficiently

11   in his penalty-phase closing argument because he failed to ask that the jury not render a death

12   sentence, was unreasonably brief, and failed to discuss any evidence specific to petitioner as a

13   reason to induce any of the jurors to select a life sentence.  ECF No. 44 at 201-05.  Petitioner

14   raised this claim in his first petition for writ of habeas corpus in state court, LD 4-1SHC at 124-

15   29, and the undersigned concludes that the state court could not have reasonably concluded,

16   consistent with governing Supreme Court authority, that petitioner failed to make a prima facie

17   showing that his counsel performed deficiently in this regard.

18       *a.   Legal Standard*

19       Under clearly established federal law, defense counsel has a duty to challenge the

20   prosecution's case and, in a capital case, to present a powerful case for a life sentence.  *Wiggins*,

21   539 U.S. 510; *Strickland*, 466 U.S. at 688.  This encompasses making strategically-sound choices

22   about use of the defense penalty phase closing argument.  *See generally Herring v. New York*, 422

23   U.S. 853, 858-59 (1975) ("There can be no doubt that closing argument for the defense is a basic

24   element of the adversary factfinding process in a criminal trial."); *United States v. Swanson*, 943

25   F.2d 1070, 1075 (9th Cir. 1991) (describing defense closing argument as a "critical stage of [trial]

26   proceedings" that requires counsel to advocate for her client).   It is unreasonable, for example,

27   for defense counsel in penalty phase closing argument to minimize the import of a death sentence,

28   *Wade v. Calderon*, 29 F.3d 1312, 1324-25 (9th Cir. 1994), and in closing argument at the penalty

1    phase of a capital case, most reasonable defense counsel would at least address mitigating factors

2    and how they relate to the evidence in the case.  *Mayfield v. Woodford*, 270 F.3d 915, 928 (9th

3    Cir. 2001); *Hall v. Washington*, 106 F.3d 742, 750 (7th Cir. 1997); *In re Marquez*, 1 Cal. 4th 584

4    (1992).  Nonetheless, defense counsel has "wide latitude" in choosing a particular approach to

5    closing argument, *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003), and whether counsel's tactical

6    decisions in crafting and delivering a closing argument were reasonable will depend on the entire

7    evidentiary record before the reviewing court.  *See, e.g.*, *Yarborough*, 540 U.S. at 5-8 (holding

8    that, based on the evidence that was presented at trial, defense counsel were reasonable in

9    discussing only a few key evidentiary issues in closing argument); *Bell*, 535 U.S. at 700-02

10   (holding counsel may have been reasonable to forego closing argument at the penalty phase,

11   where he had put on powerful and extensive mitigation evidence, the state had adduced only

12   "rather brief[]" aggravation evidence, and the prosecutor had delivered a mild opening

13   summation); *United States v. Swanson*, 943 F.2d 1070, 1075 (9th Cir. 1991) (holding that,

14   depending on the evidence adduced, counsel may have valid tactical reasons for conceding in

15   argument that certain elements of a charged crime are undisputed).  At the time of petitioner's

16   trial, it was typical that defense counsel would utilize their closing argument to focus the jury's

17   attention on the strengths of the defense case, and there were manifold resources available to

18   attorneys to assist in the construction of such arguments.  *See* Anthony Amsterdam, *Trial Manual*

19   *5 For the Defense of Criminal Cases*, §§ 444, 446-48 (1988) (collecting authorities).

20            b.    *Under Clearly Established Federal Law at the Time of the State Court Adjudication,*

21                  *Petitioner Made a Prima Facie Showing of Deficient Performance*

22            In state court proceedings, petitioner made a prima facie showing that defense counsel

23   performed deficiently in the execution of his closing argument at the penalty phase, and the state

24   court was unreasonable if it concluded otherwise.  Defense counsel's argument was extremely

25   brief, spanning just two transcript pages, and was comprised almost entirely of quotes—from

26   Shakespeare extoling mercy and a quote from James Wendell Johnson retelling a portion of the

27   Christian creation story.  12 RT 4005-07.  Counsel did not discuss any of the evidence that the

28   jury had heard, let alone any that had related to petitioner specifically and that could have

1    mitigated his sentence, if such evidence had been adduced in an earlier phase.  Although there

2    may be circumstances where a brief or impersonal closing argument may be strategically

3    advantageous to the defense, *see Yarborough*, 540 U.S. at 5-8; *Bell*, 535 U.S. at 700-02, here, per

4    the record before the state court, there was no obvious tactical advantage to counsel's wan

5    argument—for example, no forceful rebuttal argument it was designed to obviate, or powerful

6    mitigation evidence presented to the jury that counsel could have concluded spoke for itself.

7    Taken together with petitioner's allegations that defense counsel conducted no reasonable

8    mitigation investigation—including failing to conduct a basic social history investigation and

9    failing to investigate petitioner's mental functioning despite ample leads suggesting such

10   investigation—and the reality that no mitigation evidence was presented at trial, petitioner made a

11   prima facie showing that counsel's choice of closing argument was not the result of reasonable,

12   informed trial tactics that accorded with contemporaneous professional norms, but was simply the

13   product of neglect.  *See* ECF No. 160 at 32 n.16.  Petitioner's allegations were adequate to plead,

14   as a prima facie matter, that counsel's actions were deficient under *Strickland*.

15         *4.    The California Supreme Court Was Unreasonable If It Concluded Petitioner Had Not*

16              *Made a Prima Facie Showing of Deficient Performance in Subclaim 27(f)*

17         In subclaim 27(f), petitioner alleges that counsel was ineffective for failing to investigate

18   and present mitigating evidence concerning his adaptability to prison if sentenced to life without

19   the possibility of parole.  ECF No. 44 at 199-201.  The undersigned concludes that the state court

20   could not have reasonably concluded that petitioner had failed to make a prima facie showing of

21   his counsel's deficient performance in this regard.

22         The Supreme Court has recognized that a capital defendant's good behavior in jail is

23   "relevant evidence in mitigation of punishment" because the jury could infer that the defendant's

24   good behavior would continue if he were sentenced to life in prison.  *Skipper v. South Carolina*,

25   476 U.S. 1, 4 (1986); *see also Williams*, 529 U.S. at 396 (failure to present, *inter alia*, prison

26   guard testimony that defendant was not dangerous or violent as well as prison records

27   demonstrating good behavior contributed to finding of deficient performance).  Consistent with

28   counsel's overarching duties of investigation and presentation of mitigation evidence at the

1    penalty phase, counsel should reasonably investigate this potential area of mitigation and make

2    reasonable tactical decisions in its presentation.  *See, e.g.*, *Williams*, 529 U.S. at 396; *Skipper*, 476

3    U.S. at 5; *Waidla v. Davis*, 68 F.4th 575, 589-90 (9th Cir. 2023).

4            Here, the state court was unreasonable if it concluded that petitioner failed to make a

5    prima facie showing that trial counsel performed deficiently by failing to investigate and present

6    evidence that petitioner could successfully adjust to life in prison if given a life sentence.  In state

7    court, petitioner alleged that trial counsel conducted no investigation into this area of mitigation,

8    LD 4-1SHC at 79, and that, without strategic purpose, he failed to follow the recommendation of

9    defense consulting expert Dr. Deana Logan, who had advised counsel consult with an expert who

10   could opine on petitioner's possibility of successful adjustment to prison.  LD 4-1SHC at 87, 121-

11   22.  Had counsel undertaken these tasks, he would have uncovered reasonably available

12   mitigation evidence.  *Id.* at 121-23.  Respondent did not rebut these allegations with any contrary

13   factual materials.  *See People v. Romero*, 8 Cal.4th 728, 742 (1994); LD 4-1SHC.IR at 149-56.

14           These failures reflect a prima facie showing of deficient performance under clearly

15   established federal law.  Petitioner's allegations that counsel failed to conduct any investigation

16   into this area of mitigation, alone, state a prima facie case of counsel's deficient performance.

17   *See Wiggins*, 539 U.S. at 524; *Williams*, 529 U.S. at 396.  Petitioner's allegations that counsel

18   unreasonably failed to consult with a prison adjustment expert, as recommended by one of the

19   defense's consulting experts, to determine whether mitigating evidence on this point could be

20   offered—and thereby failed to uncover available mitigation information—also made a prima facie

21   showing that counsel's representation of petitioner fell below contemporaneous professional

22   norms at the time of trial.  *See Bemore*, 788 F.3d at 1171-72; *Heishman v. Ayers*, 621 F.3d 1030,

23   1039 (9th Cir. 2010).

24           Respondent argues that the state court may have reasonably concluded that petitioner did

25   not make a prima facie showing that his counsel performed deficiently, because his counsel may

26   have reasonably determined that the potential benefit of presenting the proffered expert testimony

27   would have been outweighed from the harm to the defense case from the state's cross-

28   examination of the expert or presentation of rebuttal evidence.  ECF No. 182 at 27-28.  This is

1    unpersuasive.  Petitioner's allegations in state court were that defense counsel performed no

2    investigation whatsoever into this area of mitigation, and thus his decision to not present any form

3    of evidence on this point was not tactical.  *See generally Richter*, 562 U.S. at 109 ("[C]ourts may

4    not indulge 'post hoc rationalization' for counsel's decisionmaking that contradicts the available

5    evidence of counsel's actions." (quoting *Wiggins*, 539 U.S. at 526-27, 123 S.Ct. 2527)); *Silva v.*

6    *Woodford*, 279 F.3d 825, 846 (9th Cir. 2002) ("an attorney's performance is not immunized from

7    Sixth Amendment challenges simply by attaching to it the label of 'trial strategy'"); *see, e.g.*,

8    *Waidla*, 68 F.4th at 591; *Noguera*, 5 F.4th at 1042-43; *Turner*, 158 F.3d at 456; *Seidel*, 146 F.3d

9    at 756.

10          Furthermore, respondent's depiction of the strategic calculus counsel may have employed,

11   had he conducted a reasonable investigation, to justify the failure to present *Skipper* evidence

12   offers no reasonable basis to defer to the state court's summary denial of this claim.  To the extent

13   that respondent suggests that *Skipper* evidence was unlikely to have had any particular mitigating

14   effect on the jury, *see* ECF No. 182 at 27, such an assertion "is untenable. . . .[and it] would be

15   difficult to reconcile that view with *Skipper*'s holding that good behavior evidence must be

16   admitted as mitigation, *see* 476 U.S. at 5, 106 S.Ct. 1669, let alone *Williams*'s holding that

17   counsel was deficient in part for not gathering such evidence."  *Waidla*, 68 F.4th at 590-91 (citing

18   *Deck v. Missouri*, 544 U.S. 622, 633 (2005) (noting that whether the defendant is "a danger to the

19   community" is "nearly always a relevant factor in jury decisionmaking, even where the State does

20   not specifically argue the point")).  To the extent respondent's argument is that expert

21   testimony—rather than testimony from lay witnesses—was not necessary for the defense

22   presentation, ECF No. 182 at 27, this position seems to blink the reality that the jury heard no

23   *Skipper* testimony whatsoever.  While in some cases, it may be the case that expert testimony is

24   cumulative with that conveyed through the testimonies of other witnesses, *see, e.g.*, *Wong v.*

25   *Belmontes*, 558 U.S. 15, 22-24 (2009); *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th Cir.

26   2005), no such concern exists here.  Additionally, there was nothing before the state court to

27   indicate that presentation of *Skipper* evidence via the testimony of a qualified expert witness was,

28   at the time of petitioner's trial, an extraordinary or exceptional form of mitigation presentation in

1    a capital case in California.  *See* LD 4-1SHC.IR at 149-56.  On the contrary, California

2    jurisprudence appears to indicate the opposite: two years prior to petitioner's trial, the California

3    Supreme Court had reversed a death sentence because *Skipper* expert testimony had been

4    excluded, holding that the defendant had been prejudiced specifically because the excluded

5    testimony had been from an expert, as "there is a significant difference between an inference

6    which a juror may or may not draw and a direct expression of expert opinion.  The expert's

7    authority and experience may persuade the jurors to a conclusion they would not reach on their

8    own." *People v. Lucero*, 44 Cal. 3d 1006, 1028-29 (1988).

9         Respondent's argument that the presentation of such evidence could have opened the door

10   to damaging cross-examination and rebuttal also would not have provided the state court a

11   reasonable basis to summarily deny the claim.  In state court, respondent posited that, had an

12   institutional adjustment expert testified, he could have been cross-examined on his knowledge of

13   petitioner's lengthy incarceration history, of one instance of petitioner engaging in a fight while

14   an incarcerated child, and of the details of offenses the jury heard as aggravation evidence.  LD 4-

15   1SHC.IR at 151-52; *see also* ECF No. 182 at 27-28.  Evidence of petitioner's prior bad acts, and

16   resultant criminal history, was already before the jury, however, through the prosecution's

17   aggravation evidence presented in its case-in-chief.  Introduction of *Skipper* evidence, then,

18   would not have opened the door to the introduction of aggravating themes any more significantly

19   than had already been accomplished by the prosecution.  Moreover, the fact that the jury had

20   heard so much aggravation evidence surrounding petitioner's history of past crimes and acts of

21   violence heightened, rather than attenuated, the strategic value of an expert who could testify that,

22   despite such a history, there was good reason to believe that petitioner would adapt well to prison

23   if given a life sentence.  *See Skipper*, 476 U.S. at 5, 7-8 & n.1; *Waidla*, 68 F.4th at 592-93.  The

24   prosecutor's own closing argument at penalty underscores this point, as he capitalized on the

25   aggravating evidence presented to argue that petitioner's violent history suggested that he would

26   be a danger to other prisoners if given a life sentence.  12 RT 3986-87; *see Skipper*, 476 U.S. at 5,

27   7-8 & n.1; *Waidla*, 68 F.4th at 592-93.  In sum, respondent's speculations about the possible

28   downsides of the presentation of *Skipper* evidence in this case do not seem well-taken and, in any

1    event, cannot obviate the reality that no tactical reasoning can be imputed onto trial counsel, when

2    the allegations are that counsel had not investigated this area whatsoever.

3         For all of these reasons, the state court could not have reasonably concluded that petitioner

4    failed to make a prima facie case that his counsel performed deficiently in the investigation and

5    presentation of *Skipper* evidence.

6         *B.   The California Supreme Court Was Unreasonable If It Concluded Petitioner Had Not*

7             *Made a Prima Facie Showing of Prejudice*

8         Based on the record before the state court at the time of its denial of petitioner's first state

9    petition for writ of habeas corpus, the state court could not have reasonably concluded that

10   petitioner failed to make a prima facie showing that he was prejudiced by counsel's deficient

11   preparation for and presentation at the penalty phase.  *Cf.* ECF No. 160 at 32.  Under clearly

12   established federal law, the state court was required to "reweigh the evidence in aggravation

13   against the totality of available mitigating evidence."  *Wiggins*, 539 U.S. at 534.  It would have

14   been an unreasonable application of clearly established federal law for the state court to have

15   concluded that there was no reasonable probability that the jury would have returned a life verdict

16   due to the strength of the aggravating evidence, when weighed against the entirety of the

17   mitigation evidence the petitioner alleged had been available and could have been presented.

18        At the penalty phase of petitioner's trial, the jury heard no mitigating evidence at all—no

19   evidence that would have mitigated petitioner's moral blameworthiness of the capital homicide or

20   engendered feelings of sympathy.  *See generally* 12 RT; *Lewis*, 25 Cal.4th at 628.  The defense

21   closing argument only "terse[ly]" argued for mercy and for the sanctity of petitioner's life in an

22   obscure and generalized manner.  *See Lewis*, 25 Cal.4th at 628.  Although the jurors had heard

23   some evidence in the guilt phase that they could construe as mitigating, namely, evidence

24   indicating that petitioner was a longstanding drug user and had been intoxicated on drugs at the

25   time of the crimes, and that Ms. Hadix and Ms. Baker had had some role in the events preceding

26   the capital homicide, none of these themes were further developed or even argued as mitigating in

27   the penalty phase.  *See id.* at 625-28.  On the other side of the coin, the jury heard ample and

28   alarming evidence in aggravation, with the prosecution presenting evidence of petitioner having

1   committed "six incidents of unadjudicated violent criminal activity, one robbery that resulted in a

2   felony conviction, and a felony drug conviction." *Id.* at 626.  This evidence tended to portray

3   petitioner as violent, threatening, and unpredictable, a danger to those who encounter him or were

4   in relationships with him.  *Id.* at 626-27; see 12 RT 3984-4004 (prosecutor's closing argument).

5          The factual allegations offered in post-conviction, however, painted a different picture,

6   such that the state court was unreasonable in depriving petitioner of an opportunity for

7   evidentiary development of his allegations.  In his petition for writ of habeas corpus in state court,

8   petitioner presented available evidence that would have shown the manifold challenges, traumas,

9   and deprivations that had marked his life, from even before his birth, which may have, at least in

10  the minds of one juror, rendered him more sympathetic and his later choices more

11  comprehensible.  *See Wiggins*, 539 U.S. at 534.  This evidence includes evidence that petitioner

12  was affected prenatally by his mother's seizure disorder and medication for same; that he suffered

13  traumatic injury at age nine when he was hit by a car and thrown into the air; and that he had

14  suffered multiple head injuries before the time of the crimes.  LD 4-1SHC at 81, 85-87.  Expert

15  witnesses were available to testify that petitioner had measurable brain damage and was impaired

16  in his functioning.  *Id.* at 88-90; LD 4-1SHC.EX1 at Exs. 13, 15.  The available evidence would

17  have depicted petitioner's troubled childhood, where as a child petitioner was abandoned by his

18  father, physically abused by his caregivers, and neglected by his impaired mother.  LD 4-1SHC at

19  94-95, 111-12, 127-28; LD 4-1SHC.EX1 at Exs. 1, 15.  Defense counsel could have further

20  shown the jury that these experiences contributed to petitioner showing signs of mental illness

21  and suicidality beginning as a teen, and that, with no appropriate interventions, he turned to

22  substance abuse.  LD 4-1SHC at 94-95, 11-17; LD 4-1SHC.EX1 at Exs. 1, 15.  Despite these

23  troubles, petitioner had endeavored to better himself and, in particular, to be a positive presence

24  in the lives of his children and other loved ones.  LD 4-1SHC at 94-95, 116-20; LD 4-1SHC.EX1

25  at Exs. 2-6.  Dovetailing with this theme, petitioner could have presented testimony from an

26  expert with the California Department of Corrections, who could opine that despite petitioner's

27  record of convictions including in the instant case, he would likely adapt well to the prison

28  environment if given a life sentence.  LD 4-1SHC at 121-24; LD 4-1SHC.EX1 at Ex. 14.

1   Finally, defense counsel could have presented some form of argument to the jury exhorting a life

2   sentence on the basis of any or all of this evidence, as well as the evidence they had heard in the

3   guilt phase.  LD 4-1SHC at 124-29.

4          These factual allegations were materially indistinguishable from cases in which the

5   Supreme Court has held that a petitioner showed penalty phase prejudice from trial counsel's

6   deficient mitigation investigation.  In *Rompilla*, 545 U.S. at 392-93, for example, the Supreme

7   Court held that the petitioner had shown prejudice under *Strickland* where trial defense counsel

8   had presented a "benign conception of Rompilla's upbringing and mental capacity" and a "few

9   naked pleas of mercy."  Had they conducted a reasonable investigation into Mr. Rompilla's

10  childhood, however, counsel would have learned that he had experienced physical and verbal

11  abuse and physical and emotional neglect throughout his childhood, at the hands of his parents

12  and other caregivers, all of which was mitigating in and of itself, but also would have led defense

13  experts to recognize Mr. Rompilla's psychological and cognitive impairments that had likely

14  resulted from these experiences.  *Id.* at 390-93.  As a whole, this available mitigation evidence

15  "adds up to a mitigation case that bears no relation" to the presentation the jury had heard at trial,

16  and,

17          although . . . it is possible that a jury could have heard it all and still have
        decided on the death penalty, . . . [i]t goes without saying that the

18          undiscovered "mitigating evidence, taken as a whole, 'might well have
        influenced the jury's appraisal' of [Rompilla's] culpability," *Wiggins v.*

19          *Smith*, 539 U.S., at 538, 123 S.Ct. 2527 (quoting *Williams v. Taylor*, 529
        U.S., at 398, 120 S.Ct. 1495), and the likelihood of a different result if the

20          evidence had gone in is "sufficient to undermine confidence in the
        outcome" actually reached at sentencing, *Strickland*, 466 U.S., at 694, 104

21          S.Ct. 2052.

22

23  *Id.* at 393; *see also Porter*, 558 U.S. at 41 (penalty phase prejudice shown where jury had heard

24  "absolutely none" of the available evidence in mitigation, including the defendant's childhood

25  abuse); *Wiggins*, 539 U.S. at 537 (penalty phase prejudice shown where "Wiggins' sentencing

26  jury heard only one significant mitigating factor-that Wiggins had no prior convictions.  Had the

27  jury been able to place petitioner's excruciating life history on the mitigating side of the scale,

28

1    there is a reasonable probability that at least one juror would have struck a different balance.”);

2    *Williams*, 529 U.S. at 398 (penalty phase prejudice shown where jury had heard nothing of the

3    “graphic description of Williams’ childhood, filled with abuse and privation, or the reality that he

4    was ‘borderline mentally retarded’”).

5            Respondent argues that, irrespective of this proffer, it did not suffice to make a prima facie

6    showing of prejudice because the jury could have nevertheless given great weight to the

7    aggravating circumstances, which included the vicious crimes for which he was convicted at his

8    capital trial and the evidence that he had committed other violent acts and had been convicted of

9    felonies in the past.  ECF No. 182 at 14-16.  In this way, however, petitioner’s case resembles that

10   described in *Williams*, 529 U.S. at 398-400, where the Supreme Court considered penalty phase

11   prejudice, where available mitigation evidence had included the defendant’s post-crime remorse,

12   evidence of his positive adaptation to prison, a “graphic description of [his] childhood, filled with

13   abuse and privation,” and his serious cognitive impairment.  On the other side of the scale, the

14   jury had also heard evidence that was very aggravating: the crime itself was brutal and senseless,

15   with Mr. Williams having murdered the victim with a mattock after the victim had “refused to

16   lend him ‘a couple of dollars.’”  *Williams*, 529 U.S. at 367-68.  The jury also “heard evidence

17   that, in the months following the murder of [the victim], Williams savagely beat an elderly

18   woman, stole two cars, set fire to a home, stabbed a man during a robbery, set fire to the city jail,

19   and confessed to having strong urges to choke other inmates and to break a fellow prisoner’s

20   jaw.”  *Id*. at 418 (Rehnquist, C.J., concurring).  Despite this weighty aggravation evidence, the

21   Supreme Court held that Mr. Williams had shown “‘a reasonable probability that the result of the

22   sentencing proceeding would have been different’ if competent counsel had presented and

23   explained the significance of all the available evidence” in mitigation at the penalty phase, such

24   that the state court’s contrary conclusion reflected a decision that was contrary to, or an

25   unreasonable application of, clearly established federal law under 28 U.S.C. section 2254(d)(1).

26   *Id*. at 398-99; *see also Porter*, 558 U.S. at 41-42 (holding prejudice had been shown for counsel’s

27   failure to present compelling mitigation evidence, even where the jury had also found several

28   aggravating circumstances to have been present).  This holding accords with the empirical

1    experiences of defense attorneys, who, through the presentation of a compelling mitigation case,

2    have secured life sentences for defendants convicted of extremely aggravated capital crimes.  *See*

3    Russell Stetler et. al., *Mitigation Works: Empirical Evidence of Highly Aggravated Cases Where*

4    *the Death Penalty Was Rejected at Sentencing*, 51 Hofstra L. Rev. 89, 90 (2022).  Accordingly, it

5    would have been unreasonable for the state court to have summarily dismissed petitioner's claim

6    on this basis.

7         Respondent also suggests that the proffered mitigation evidence was a double-edged

8    sword, and that the jury may not have found the evidence to have much mitigating value—but

9    this is at odds with the evidence and therefore does not provide a reason to defer to the state

10   court's dismissal of the claim.  Respondent argues that, had petitioner presented the testimonies

11   of the lay and expert witnesses he identified in his state habeas petition, these witnesses could

12   have been cross-examined on their knowledge of petitioner's past incidents of violence and other

13   misdeeds and his persistent drug addiction, including during the time he had custody of his

14   children.  ECF No. 189 at 14-15, 23-29.  This would not have provided the state court a

15   reasonable basis to conclude petitioner had failed to make a prima facie showing of prejudice.

16   Here, petitioner's jury had heard copious evidence establishing that petitioner had a criminal

17   history, including having committed multiple past acts of violence, and that he had used drugs

18   during the crimes charged in the instant case, as well as in the past.  *See Lewis*, 25 Cal. 4th at 623-

19   27.  Thus, it is not the case that the mitigation evidence identified in state habeas corpus would

20   have added appreciably to the aggravating evidence, or introduced themes of aggravation, that

21   had not been previously adduced.  *See Burger v. Kemp*, 483 U.S. 776, 791-94 (1987); *Darden v.*

22   *Wainwright*, 477 U.S. 168, 186-87 (1986); *see also Wiggins*, 539 U.S. at 535.  Instead, the

23   proposed mitigation evidence would have had the opposite effect, by giving a mitigating context

24   to aggravating evidence that the jury already heard in the guilt phase and in the prosecution's

25   penalty-phase presentation.  Additionally, although respondent argues that petitioner's proposed

26   expert witness could have been cross-examined on his knowledge of petitioner's past acts of

27   violence or other aggravating facts, ECF No. 189 at 15, there was nothing before the state court to

28   indicate that the expert would have either changed his opinion or otherwise testified to anything

1    aggravating, had he been so cross-examined.  *See generally* LD 4-1SHC; LD 4-1SHC.IR; LD 4-

2    1SHC.RIR.  For these reasons, the state court would have been unreasonable to discount the

3    mitigating effect that the proposed evidence would have had on the jury in its prima facie

4    assessment of petitioner's allegations.

5          Overall, the adequacy of petitioner's prejudice allegations is underscored by considering

6    the prosecutor's closing argument at the penalty phase.  There, the prosecutor described at great

7    length the evidence that the jury had heard in aggravation, including some of the harrowing

8    details of the capital homicide.  12 RT 3984-4004.  He argued that this sum of this evidence

9    showed that petitioner would likely remain dangerous in the future, such that, if he were given a

10    life sentence, fellow incarcerated persons and prison guards would be in danger from him.  12 RT

11    3987.  He argued the jury had heard "abundant evidence of aggravating factors, including the

12    crime itself and the evidence you heard during the penalty phase.  I suggest to you, you have no

13    evidence that would mitigate the enormity or the gravity of this particular crime."  12 RT 4002.

14    "[T]he law permits you," he elaborated, "in making this decision, to consider . . . [a]nything that

15    may be of sympathetic value in relationship to the defendant.  And I suggest to you there is no

16    evidence of that nature.  I mean, you can grope as you might, but you haven't heard it because

17    it—it just does not—does not exist," 12 RT 4001-02, and "there are no mitigating circumstances."

18    12 RT 4002.  Consequently, per the prosecutor, justice demanded that petitioner be sentenced to

19    death.  12 RT 4004.

20          Petitioner alleged that had defense counsel reasonably investigated and presented

21    available evidence at the penalty phase, none of these arguments would have remained

22    unchallenged.  Instead, the jury would have had before them a different picture of petitioner's

23    moral culpability to consider when determining penalty and would have had compelling reasons

24    to believe that petitioner deserved a life sentence in lieu of death.  Whether petitioner could

25    prove his entitlement to relief on these allegations was another matter, but petitioner's allegations

26    comprising this claim were more than sufficient to meet his pleading burden under state law and

27    in accordance with clearly established federal law.  *See Pinholster*, 563 U.S. at 188 n.12;

28    *Rompilla*, 545 U.S. at 392-93; *Porter*, 558 U.S. at 41; *Wiggins*, 539 U.S. at 537; *Williams*, 529

1   U.S. at 398.  The state court was unreasonable in depriving petitioner of the opportunity to

2   further develop the claim evidentiarily in that court and summarily denying relief on this claim.

3   *See Andrus*, 590 U.S. at 822-24.  Accordingly, the state court's dismissal of claim 27 of the

4   petition is not entitled to deference.  *See* 28 U.S.C. § 2254(d).

5   **Claim 28**

6            In claim 28, petitioner alleges that the cumulative effect of all of trial counsel's

7   unreasonable omissions and errors prejudiced him.  ECF No. 44 at 209-10.  He raised this claim

8   in his first petition for writ of habeas corpus, which the state court denied summarily.  LD 4-

9   1SHC at 72-73; LD 4-ISHC.ORD.  The undersigned concludes that that denial is entitled to

10  deference and recommends that the claim be dismissed.

11           Under clearly established federal law, a habeas corpus petitioner is entitled to relief if he

12  was prejudiced by the accumulation of trial counsel's individual instances of deficient

13  performance.  *Strickland*, 466 U.S. at 695-96 ("Taking the unaffected findings as a given, and

14  taking due account of the effect of the errors on the remaining findings, a court making the

15  prejudice inquiry must ask if the defendant has met the burden of showing that the decision

16  reached would reasonably likely have been different absent the errors."); *see Boyde v. Brown*, 404

17  F.3d 1159, 1175 (9th Cir. 2005) (explaining that the habeas corpus court "must analyze each of

18  [petitioner's] claims separately to determine whether his counsel was deficient, but 'prejudice

19  may result from the cumulative impact of multiple deficiencies'" (quoting *Cooper v.*

20  *Fitzharris*, 586 F.2d 1325, 1333 (9th Cir. 1978) (en banc)).  In state court, petitioner made only

21  sparse allegations in support of this claim, *see* LD 4-1SHC at 72-73, and in this proceeding has

22  made virtually no showing that the state court's summary denial of this claim contravened or

23  unreasonably applied mandatory Supreme Court precedent.  *See* ECF No. 218 at 65-67.

24  Deference to the state court's adjudication is therefore proper.  *See Walker*, 709 F.3d at 939

25  (petitioner bears burden to show that section 2254(d) is satisfied); *see also Pinholster*, 563 U.S. at

26  188 n.12 (California Supreme Court, pursuant to state law, denies conclusory allegations in

27  habeas corpus petitions); *see, e.g.*, *James v. Borg*, 24 F.3d 20, 29 (9th Cir. 1994); *Campbell v.*

28  *Wood*, 18 F.3d 662, 679 (9th Cir. 1994).

1   For these reasons, the undersigned recommends dismissal of claim 28 of the amended

2   petition.

3   **Claim 32**

4   In claim 32, petitioner alleges that his trial counsel performed ineffectively by failing to

5   object to "the discriminatory, arbitrary, capricious, and meaningless" charging decisions in his

6   case, specifically the District Attorney's racial and gender animus in pursuing "capital charges"

7   against petitioner. ECF No. 44 at 219-21. This claim was raised in petitioner's second petition

8   for writ of habeas corpus in state court, which the state court denied summarily. LD 5-2SHC at

9   75-78; LD 5-2SHC. The undersigned finds that denial is entitled to deference.

10   The Sixth Amendment requires that defense counsel perform reasonably, and, under

11   clearly established federal law, counsel is not deficient for failing to make futile arguments,

12   motions, or objections. *Kimmelman v. Morrison*, 477 U.S. 365, 380 (1986); *see, e.g.*, *Ochoa v.*

13   *Davis*, 50 F.4th 865, 889 (9th Cir. 2022); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996). As

14   a matter of prejudice, too, a habeas petitioner cannot show that he was prejudiced by his counsel's

15   failure to make a particular motion, if he cannot also show that that motion was meritorious.

16   *Kimmelman*, 477 U.S. at 375, 380, 389-91. Here, petitioner alleged that "an extensive array of

17   documentary evidence, lay and expert testimony, and statistical evidence" had been available to

18   trial counsel, on which counsel could have relied to show that the prosecutor's decision to charge

19   him with "capital charges" was motivated by petitioner's and the victim's gender and races. LD

20   5-2SHC at 77. In support of these allegations, petitioner cited (1) two California cases wherein

21   prosecutors sought the death penalty against the mastermind of a homicide, and not against the

22   person who carried out the homicide; and (2) a study that showed that, from 1978 to 1995, juries

23   returned death sentences in Shasta County at a rate appreciably greater than other California

24   counties. *Id.* at 67-68, 74-75, 76-77.

25   As the previously assigned magistrate judge observed in recommending dismissal of a

26   related claim, these factual averments "fall far short" of demonstrating that the prosecutor labored

27   under unconstitutional racial or gender animus when he sought the death penalty against

28   petitioner. *See* ECF No. 84 at 91-92. Under clearly established federal law, prosecutors possess

90

1    broad discretion in their charging decisions and, in order to prevail on a claim that a prosecutor's

2    exercise of his charging discretion exceeded constitutional bounds, a petitioner must show both

3    that the prosecutor labored under a discriminatory animus and that his decisions had a

4    discriminatory effect. *United States v. Armstrong*, 517 U.S. 456, 465 (1996). Although statistical

5    analyses may be utilized in making this showing, such analyses must be probative to "the record

6    of the decisionmakers in [petitioner]'s case." *United States v. Bass,* 536 U.S. 862 (2002); *see also*

7    *Belmontes v. Woodford*, 350 F.3d 861, 894 (9th Cir. 2003), *judgment vacated on other grounds*

8    *sub nom. Brown v. Belmontes*, 544 U.S. 945, 125 S. Ct. 1697, 161 L. Ed. 2d 518 (2005); *see*

9    *generally McCleskey v. Kemp*, 481 U.S. 279, 294-96 (1987). The factual averments that

10    petitioner made in the state court petitioner's proffered evidence failed to meet this stringent

11    standard. The data on which petitioner relied only indicated how many persons were sentenced to

12    death in Shasta County in a period that included petitioner's prosecution and, thus, was only

13    glancingly probative on the questions of what the intent was of the particular prosecutor(s) who

14    made the charging decision in petitioner's case and whether the charging decisions made by that

15    person or persons had a discriminatory effect once other variables were accounted for. *See, e.g.*,

16    *Belmontes*, 350 F.3d at 894. As such, the state court may have reasonably determined that

17    petitioner had not made a prima facie showing that trial counsel were deficient for failing to have

18    moved to set aside the information or to prohibit the prosecutor from seeking the death penalty

19    against him on the basis of these facts, or that there was a reasonable likelihood the trial court

20    would have granted such a motion if it had been made. *See Bass,* 536 U.S. 862; *Armstrong*, 517

21    U.S. at 465; *see generally Kimmelman*, 477 U.S. at 375, 380, 389-91.

22         For these reasons, the state court reasonably applied clearly established federal law in

23    summarily dismissing this claim and that dismissal is entitled to deference. 28 U.S.C. § 2254(d).

24    **Claim 69**

25         In claim 69, petitioner alleges that his "conviction" and death sentence must be vacated

26    due to "jury misconduct and misunderstanding," alleging that two jurors declared post-trial that

27    they had not realized life without the possibility of parole was a sentencing option at the penalty

28    phase, because defense counsel failed to advocate for that sentence in his closing argument. ECF

1   No. 44 at 264-66. Petitioner raised this in his first petition for writ of habeas corpus in state court,

2   which the state court denied summarily on the merits. LD 4-1SHC at 129-32; LD 4-1SHC.EX1

3   at Exs. 11 &12; LD 4-1SHC.ORD. The undersigned finds that denial reasonable.

4       Petitioner argues first that, in state court, he pled facts entitling him to relief under

5   *Caldwell v. Mississippi*, 472 U.S. 320, 328-29 (1985). ECF No. 218 at 76-78; *see* LD 4-1SHC at

6   130-31. The state court was reasonable for rejecting his claim under this theory. In *Caldwell*,

7   472 U.S. 320, the Supreme Court held that a capital defendant's Eighth Amendment rights had

8   been violated when, in penalty phase closing argument, the prosecutor emphasized the role of

9   appellate review in death penalty cases and urged the jurors to view their verdict as not the "final

10  decision" in the case. 472 U.S. at 325-26. The Supreme Court held that "it is constitutionally

11  impermissible to rest a death sentence on a determination made by a sentencer who has been led

12  to believe that the responsibility for determining the appropriateness of the defendant's death rests

13  elsewhere." *Id.* at 328-29. Under this standard, the prosecutor's comments were unlawful

14  because they were "inaccurate, both because it was misleading as to the nature of the appellate

15  court's review and because it depicted the jury's role in a way fundamentally at odds with the role

16  that a capital sentencer must perform" and because it suggested a death sentence was proper for

17  reasons that were "not linked to any arguably valid sentencing consideration[,] [as the fact] [t]hat

18  appellate review is available to a capital defendant sentenced to death is no valid basis for a jury

19  to return such a sentence if otherwise it might not." *Id*. at 336.

20      The Supreme Court has since emphasized that *Caldwell*'s holding was limited to

21  situations in which the jury had been given inaccurate or misleading information. In *Darden v.*

22  *Wainwright,* 477 U.S. 168, 184, n.15 (1986), the Supreme Court explained that, "*Caldwell* is

23  relevant only to certain types of comment—those that mislead the jury as to its role in the

24  sentencing process in a way that allows the jury to feel less responsible than it should for the

25  sentencing decision." *See also Romano v. Oklahoma,* 512 U.S. 1, 9 (1994) (quoting same). A

26  few years later, the Supreme Court reiterated that "if the challenged instructions accurately

27  described the role of the jury under state law, there is no basis for a *Caldwell* claim. To establish

28  a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly

1    described the role assigned to the jury by local law." *Dugger v. Adams*, 489 U.S. 401, 407-08

2    (1989); *see, e.g.*, *Hendricks v. Vasquez*, 974 F.2d 1099, 1108 (9th Cir. 1992), *as amended on*

3    *denial of reh'g* (Oct. 29, 1992).

4         Here, petitioner did not allege that defense counsel's statements to the jury were

5    inaccurate, but rather that they were incomplete by not urging a sentence of life without the

6    possibility of parole.  LD 4-1SHC at 129-32; *see* ECF No. 218 at 76-78.  Under clearly

7    established federal law at the time of the state court adjudication, this was fact was fatal to

8    petitioner's claim, as no *Caldwell* claim could lie where the comments at issue had accurately

9    described relevant state law.  *See Romano*, 512 U.S. at 9; *Dugger*, 489 U.S. at 407-08; *Darden*,

10    477 U.S. at 184, n.15.  Review of the record indicates that defense counsel's closing argument,

11    although brief, asked the jury to return a sentence less than death and beseeched each juror to

12    view him- or herself as "a type of god . . . [who] hold in your hand [Mr. Lewis's] very life . . . ."

13    12 RT 4005-4007.  Defense counsel's argument neither misstated the possibility of a verdict of

14    life without the possibility of parole, nor did it otherwise suggest that the jury's death verdict

15    would be merely advisory or would reflect only a "preliminary step toward the actual

16    determination of the appropriateness of death—a determination which would eventually be made

17    by others and for which the jury was not responsible."  *See Caldwell*, 472 U.S. at 336.  It was

18    reasonable, therefore, for the California Supreme Court to have concluded that defense counsel's

19    argument did not violate the Eighth Amendment under *Caldwell* and related authority.

20         The state court was also reasonable in rejecting petitioner's alternative theory, that jurors'

21    misapprehensions about the availability of parole if petitioner was not sentenced to death

22    constituted extraneous evidence that was improperly introduced into deliberations.  *See* ECF No.

23    218 at 76-78; LD 4-1SHC at 130-32.  The Sixth Amendment and Fourteenth Amendment

24    guarantee a criminal defendant right to trial by an impartial jury, who are "capable and willing to

25    decide the case solely on the evidence before it."  *Smith v. Phillips*, 455 U.S. 209, 217 (1982);

26    *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968).  Thus, "[w]hen the jury breaches this duty by

27    considering extraneous facts not introduced in evidence, 'a defendant has effectively lost the

28    rights of confrontation, cross-examination, and the assistance of counsel with regard to jury

1 consideration of the extraneous evidence.'" *Hughes v. Borg*, 898 F.2d 695, 700 (9th Cir. 1990)

2 (quoting *Gibson v. Clanon,* 633 F.2d 851, 854 (9th Cir. 1980)); *see Mattox v. United States*, 146

3 U.S. 140 (1892).

4    Here, petitioner alleged in the state court that two jurors committed this form of

5 misconduct by personally possessing erroneous views of the law, which were uncorrected by the

6 instructions.  LD 4-1SHC at 129-32.  The state court may have reasonably concluded, however,

7 that these personally held misapprehensions were not "extraneous evidence," *see Gibson*, 633

8 F.2d at 854, but instead simply reflected the "general knowledge, opinions, feelings, and bias that

9 every juror carries into the jury room."  *Hard v. Burlington N. R. Co.*, 870 F.2d 1454, 1461 (9th

10 Cir. 1989); *see also Tanner v. United States*, 483 U.S. 107, 122 (1987) (holding that a juror's

11 substance abuse could not be properly considered an "outside influence" on jury deliberations);

12 *Estrada v. Scribner*, 512 F.3d 1227, 1237 (9th Cir. 2008) (affirming district court's finding that a

13 juror's mistaken belief about the law did not constitute unlawful extraneous information injected

14 into deliberations).  The state court may have reasonably concluded that the Supreme Court's

15 prohibition on jurors' consideration of "extraneous facts not introduced in evidence," *see Hughes,*

16 898 F.2d at 700, did not extend to render unconstitutional the kinds of juror misapprehensions

17 petitioner alleged below.[17]

18    Finally, although petitioner tersely alleged that the purported misconduct required reversal

19 of his "conviction" as a remedy, he offered no legal authority or reasoning to support this

20 position.  The state court was reasonable in dismissing this aspect of the claim as conclusory, in

21 addition to the grounds for dismissal set forth above.  *See Pinholster*, 563 U.S. at 188 n.12.

22    For all of these reasons, the state court reasonably applied clearly established federal law

23 in concluding that petitioner had failed to make a prima facie showing of entitlement to relief on

24 this clam, and the undersigned recommends that it be dismissed.

25 _____

26    [17] Moreover, the juror statements on which petitioner relies to prove this claim in this
court are inadmissible under the Federal Rule of Evidence 606(b).  *See, e.g.*, *Estrada*, 512 F.3d at

27 1237; *United States v. Pimentel*, 654 F.2d 538, 542 (9th Cir. 1981).  This independently warrants
dismissal of the claim in this court, irrespective of whether petitioner can satisfy 28 U.S.C.

28 section 2254(d).  *See ibid.*; *see generally Shinn v. Ramirez*, 596 U.S. 336, 389-90 (2022).

**Claim 70**

In claim 70 of the amended petition, petitioner alleges that his convictions and death sentence should be vacated due to prejudicial juror misconduct, specifically, that one juror pressured another to vote for death during penalty-phase deliberations; that jurors discussed their beliefs about the costs of a retrial should there be a mistrial; and that one juror was biased towards the prosecution because she played tennis with the district attorney's wife, which she failed to disclose during jury selection.  ECF Nos. 44 at 266-67, 218 at 80.  Petitioner raised this claim in his first petition for writ of habeas corpus, which the state court denied summarily on the merits. LD 4-1SHC at 132-34; LD 4-1SHC.EX1 at Exs. 11 & 12.  The undersigned recommends dismissal of this claim in its entirety.

A.    *Allegations of Juror Bias*

First, the state court may have reasonably concluded that petitioner failed to make a prima facie showing that he was denied his right to an impartial jury due to Juror Hill's nondisclosure of her relationship with the prosecutor's wife.  The state court's summary dismissal of this subclaim is entitled to deference.  28 U.S.C. § 2254(d)(1).

1. *Legal Standard*

The Sixth Amendment guarantees to a criminal defendant a fair trial by a panel of impartial jurors.  U.S. Const. amend. VI; *see Irvin v. Dowd,* 366 U.S. 717, 722 (1961); *Green v. White,* 232 F.3d 671, 676 (9th Cir. 2000).  The due process clause of the Fourteenth Amendment also requires that the defendant be tried by "a jury capable and willing to decide the case solely on the evidence before it."  *Smith v. Phillips*, 455 U.S. 209, 217 (1982); *see also United States v. Plache*, 913 F.2d 1375, 1377-78 (9th Cir. 1990).  These standards are only met where the juror "can lay aside his impression or opinion [of the merits of the case] and render a verdict based on the evidence presented in court."  *Irvin,* 366 U.S. at 722 & n.3.  A defendant is denied the right to an impartial jury if even one juror is biased or prejudiced.  *Fields v. Woodford,* 309 F.3d 1095, 1103 (9th Cir. 2002), *amended,* 315 F.3d 1062 (9th Cir. 2002); *Dyer v. Calderon,* 151 F.3d 970, 973 (9th Cir. 1998) (en banc).

1        A juror may evince bias through her conduct during jury selection, and the Court of

2  Appeals has described three distinct theories of such bias: (1) *McDonough*-style bias, where the

3  prospective juror fails to answer honestly, and, had she answered correctly, the information would

4  have provided a basis for a challenge for cause, *see McDonough Power Equip., Inc. v.*

5  *Greenwood,* 464 U.S. 548 (1984), (2) "actual bias, which stems from a preset disposition not to

6  decide an issue impartially," and (3) "implied (or presumptive) bias, which may exist in

7  exceptional circumstances where, for example, a prospective juror has a relationship to the crime

8  itself or to someone involved in a trial, or has repeatedly lied about a material fact to get on

9  the jury." *Fields v. Brown,* 503 F.3d 755, 766 (9th Cir. 2007) (en banc).

10        The Ninth Circuit has clarified, however, that these categories are structured somewhat

11  differently when a federal court is charged with reviewing under AEDPA a state court's

12  determination of a claim of juror bias premised on misstatements during voir dire, consistent with

13  Supreme Court jurisprudence.  Where the theory of relief relies on *McDonough*-style bias, the

14  Supreme Court has not held as clearly established federal law that reversal is mandated if

15  *McDonough*'s two prongs are met; instead, if petitioner shows that *McDonough*'s two elements

16  have been met, it is not unreasonable for a state court to require a showing of the juror's actual

17  bias before granting relief.  *Scott v. Arnold*, 962 F.3d 1128, 1130-33 (9th Cir. 2020); *see Smith v.*

18  *Phillips,* 455 U.S. 209, 215 (1982); *Remmer v. United States,* 347 U.S. 227, 230 (1954).

19        Similarly, the Ninth Circuit has also held that, under clearly established federal law, relief

20  is not required merely upon a showing of "implied (or presumptive) bias," *Fields,* 503 F.3d at

21  766, but rather that, where "a prospective juror has a relationship to the crime itself or to someone

22  involved in a trial, or has repeatedly lied about a material fact to get on the jury," the petitioner

23  must also show that those facts rendered the prospective juror actually biased.  *Hedlund v. Ryan*,

24  854 F.3d 557, 573-74 (9th Cir. 2017) (citing *Smith*, 455 U.S. at 215; *Remmer*, 347 U.S. at 230).

25  Thus, while the prospective juror's intentionality in making misstatements or omissions during

26  voir dire may be dispositive to a showing of relief on an implied bias theory arising outside of the

27  AEDPA context (*see, e.g.*, *Fields*, 503 F.3d at 771; *Dyer*, 151 F.3d at 981-84), under AEDPA, it

28  would not be contrary to or an unreasonable application of clearly established federal law for the

1    state court to consider the fact that the juror intentionally dissembled in her voir dire responses

2    only as evidence of whether or not she was actually biased.  *See Hedlund*, 854 F.3d at 572-74;

3    *see, e.g.*, *Williams v. Taylor*, 529 U.S. 420, 444 (2000) (when determining whether petitioner was

4    entitled to relief on claim that juror misrepresented material facts during voir dire, lower courts

5    should determine whether the petitioner had proven "'actual bias' . . . tak[ing] due account of the

6    District Court's earlier decision . . . that 'Juror Stinnett deliberately failed to tell the truth on voir

7    dire'"); *Clark v. United States*, 289 U.S. 1, 10 (1933) (The juror's "[b]ias is to be gathered from

8    the disingenuous concealment which kept her in the [jury] box.").

9        Actual bias—whether arising from *McDonough* theory, implied bias theory, or some other

10   basis—simply reflects "'bias in fact'"—the existence of a state of mind that leads to an inference

11   that the person will not act with entire impartiality.'"  *United States v. Gonzalez*, 214 F.3d 1109,

12   1111-13 (9th Cir. 2000) (quoting *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997)); *see*

13   *also* Cal. Code of Civ. Proc. § 225(b)(1)(C) (defining actual bias as "the existence of a state of

14   mind on the part of the juror in reference to the case, or to any of the parties, which will prevent

15   the juror from acting with entire impartiality, and without prejudice to the substantial rights of

16   any party").  The presence or absence of bias is a factual question.  *Patton v. Yount*, 467 U.S.

17   1025, 1036-37 (1984); *see also Fields*, 503 F.3d at 767.  As such, under clearly established

18   federal law, if a petitioner makes a prima facie showing of juror bias, he should have the

19   opportunity for some form of fact-finding—i.e., an informal or formal hearing—in order to prove

20   actual bias.  *See Smith*, 455 U.S. at 215; *Remmer*, 347 U.S. at 230; *see also Hedlund*, 854 F.3d at

21   574; *Dyer*, 151 F.3d at 974-75.

22        *2.    The State Court May Have Reasonably Concluded Petitioner Did Not Make a Prima*

23            *Facie Showing of Juror Bias*

24        Based on the factual allegations presented to the state court, that court was reasonable in

25   concluding that petitioner had not made a prima facie showing of juror bias under clearly

26   established federal law.  In state court, petitioner alleged that juror Alice Hill was biased against

27   him, as evidenced by her failure to have disclosed during jury selection that she played tennis

28   with the prosecutor's wife.  LD 4-1SHC at 132-33.  In support, he tendered the declaration of Ms.

1    Hill, in which she declared, "[b]efore the trial, I had played tennis with the prosecutor's wife, but

2    I had never met him."  LD 4-1SHC.EX1 at Ex. 12 ¶ 7.

3          The state court would have considered these allegations in the context of the entire factual

4    record before it, *Pinholster*, 563 U.S. at 188 n.12; *Clark*, 5 Cal. 4th at 770, and may have

5    reasonably concluded that there was no prima facie showing that Juror Hill had possessed an

6    actual bias against him.  *See Williams*, 529 U.S. at 444.  The trial record indicates that, in her

7    juror questionnaire, in response to the question of whether she knew either Stephen Carlton (the

8    elected District Attorney) or Dennis Sheehy (the trial prosecutor) in the jury questionnaire, Juror

9    Hill replied, "YES."  14 CT 3900 (capitalization in original).  When questioned on voir dire about

10   this response, she stated that she did not know Mr. Sheehy, but had once been introduced to Mr.

11   Carlton, several years prior.  8 RT 2882.  Juror Hill was never asked whether she had met any

12   member of either man's family, by either the prosecutor or defense counsel.  *See* 8 RT 2880-89.

13         Nothing in these facts indicate that Juror Hill was "unwilling[] to be forthcoming," *see*

14   *Williams*, 529 U.S. at 441, about her relationship to the prosecutor, so as to make out a prima

15   facie showing that she possessed a bias against petitioner.  None of her responses in her juror

16   questionnaire or in voir dire appear to have been false or misleading, even in light of her post-trial

17   acknowledgement of a relationship with the prosecutor's wife.  *See, e.g., United States v. Olsen*,

18   704 F.3d 1172, 1189 (9th Cir. 2013); *Dyer*, 151 F.3d at 983-84.  None of her responses suggested

19   an intent to evade, as may occur when a prospective juror fails to disclose something in response

20   to a direct question about it.  *See, e.g., Williams*, 529 U.S. at 440-42; *Clark*, 289 U.S. at 10.  None

21   of her responses, or statements later made in post-conviction, indicate that she possessed a

22   "relationship to . . . someone involved in a trial" or that she had "repeatedly lied about a material

23   fact to get on the jury."  *See Fields,* 503 F.3d at 766.  Under clearly established federal law, the

24   state court may have concluded that the totality of the record before it failed to make a prima

25   facie showing that Juror Hill was biased against petitioner.  *See Williams*, 529 U.S. at 441; *Clark*,

26   289 U.S. at 10.  The state court's summary denial of relief on this subclaim was reasonable.

27         *B.       Allegations that Juror Was Pressured to Reach a Particular Verdict*

28         In state court, petitioner also alleged that he was entitled to reversal of his death sentence

1    because it was reached, in part, through pressure on a juror. LD 4-1SHC at 132-33. In support of

2    this, petitioner tendered the declaration of Juror Haker, who declared that she had initially voted

3    for a life sentence but felt "a great deal of pressure" from other jurors to change her vote to death,

4    and she eventually capitulated. LD 4-1SHC.EX1 at Ex. 11 ¶¶ 4-8. Petitioner also tendered the

5    declaration of Juror Hill, who declared that, after the trial, an officer with the California

6    Department of Justice approached her and asked her about deliberations, purportedly in

7    connection with a complaint by another juror that undue pressure had been placed on the latter

8    during deliberations. LD 4-1SHC.EX1 at Ex. 12 ¶ 6. Petitioner alleged that, as a result of this,

9    his death sentence was rendered in violation of his right to an impartial jury, with "each [juror]

10   making independent decisions," under the Sixth and Fourteenth Amendments. LD 4-1SHC at

11   132-33 (citing *Arizona v. Fulimante*, 499 U.S. 279, 309 (1991)).

12        The California Supreme Court may reasonably have concluded that petitioner's facts

13   failed to set forth a constitutional violation under clearly established federal law. To be sure, due

14   process requires that the jury "decide the case solely on the evidence before it," *Smith v. Phillips*,

15   455 U.S. 209, 217 (1982), and "[a]ny criminal defendant, and especially any capital defendant,

16   being tried by a jury is entitled to the uncoerced verdict of that body," as a matter of due process.

17   *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). In the Supreme Court's jurisprudence discussing

18   this principle, however, the coercion at issue has been from a source extrinsic to the jury, for

19   example the coercive pressure of instructions from the court, *Lowenfield*, 484 U.S. 231, or

20   tampering by a third party, *Remmer v. United States*, 347 U.S. 227 (1954); *see also Smith*, 455

21   U.S. at 215-16 (citing *Remmer*). The undersigned is aware of no reviewing court that has treated

22   "pressure" of the type alleged here—rhetorical pressure by one juror on another during

23   deliberations—as misconduct violative of the defendant's due process rights. Instead, many

24   courts have held that absent "extreme circumstances . . . [such as] credible allegations of threats

25   of violence leveled by one juror by another . . . allegations of intrajury pressure" do not merit

26   post-verdict relief. *United States v. Aiyer*, 433 F. Supp. 3d 468, 473-74 (S.D.N.Y. 2020); *see also*

27   *United States v. Decoud*, 456 F.3d 996, 1020 (9th Cir. 2006) (same, in dicta); *Anderson v. Miller*,

28   346 F.3d 315, 327 (2d Cir. 2003); *United States v. Sattar*, 395 F. Supp. 2d 66, 76-77 (S.D.N.Y.

1   2005), *aff'd sub nom., United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009).  Petitioner has not

2   shown that the state court was unreasonable in failing to extend the Supreme Court's Sixth and

3   Fourteenth Amendment jurisprudence to hold that the type of inchoate, intrajury "pressure"

4   alleged here merited habeas corpus relief.

5          Additionally, this subclaim should be dismissed at this stage because, even absent the lens

6   of AEDPA deference, petitioner fails to allege facts on which relief may be granted in this court.

7   The primary evidence on which petitioner appears to rely to prove this subclaim are the

8   statements of Juror Haker describing her experiences with other jurors during penalty-phase

9   deliberations, while jurors deliberated the proper verdict.  *See* ECF No. 44 at 266-67; ECF No.

10  218 at 79-80; *see also* ECF No. 103 (petitioner did not request an evidentiary hearing on this

11  claim).  This evidence, however, is inadmissible in this proceeding under Federal Rule of

12  Evidence 606(b)(1), which provides,

13              During an inquiry into the validity of a verdict or indictment, a
14              juror may not testify about any statement made or incident that
                occurred during the jury's deliberations; the effect of anything on
15              that juror's or another juror's vote; or any juror's mental processes
                concerning the verdict or indictment.  The court may not receive a
16              juror's affidavit or evidence of a juror's statement on these matters.

17  *See Estrada v. Scribner*, 512 F.3d 1227, 1237 (9th Cir. 2008) (holding juror's declaration that he

18  felt pressured to vote guilty was inadmissible under Rule 606(b)); *United States v. Decoud*, 456

19  F.3d 996, 1019 n.11 (9th Cir. 2006) (holding Rule 606(b) barred "consideration of the

20  declaration's allegation that the juror said that she was subjected to pressure by other jurors for

21  being a 'holdout for acquittal'").  Aside from this evidence, the only other evidence on which

22  petitioner relies to prove this claim is another juror's hearsay statements that a complaint was

23  raised with the California Department of Justice.  *See* ECF No. 44 at 266-67; ECF No. 103.

24  Assuming arguendo such a statement is admissible, it is insufficient to prove that members of

25  petitioner's jury were coerced into their verdicts so as to have deprived petitioner of his due

26  process rights.  *See Lowenfield*, 484 U.S. at 241; *Smith*, 455 U.S. at 217; *Remmer*, 347 U.S. 227.

27  Thus, the undersigned recommends dismissal of this claim not only pursuant to section

28

1    2254(d)(1), but also on the alternative ground that petitioner cannot demonstrate his entitlement

2    to relief on the merits of this claim in this court.  *See generally Shinn*, 596 U.S. at 390; *see, e.g.*,

3    *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005) (an application for habeas corpus may be denied on

4    the merits even if it may also be otherwise barred); *cf. Franklin v. Johnson*, 290 F.3d 1223, 1232

5    (9th Cir. 2002) ("appeals courts are empowered to, and in some cases should, reach the merits of

6    habeas petitions if they are, on their face and without regard to any facts that could be developed

7    below, clearly not meritorious despite an asserted procedural bar").

8        C.    *Allegations That Jurors Advocated for a Verdict Based on Concerns About Costs*

9              *of Retrial*

10       Finally, the undersigned recommends that this claim be dismissed to the extent that it

11   alleges that petitioner's constitutional rights were violated by jurors having argued to the holdout

12   juror, during penalty phase deliberations, "the cost to the county of a retrial" militated towards

13   imposition of the death penalty.  ECF No. 44 at 266-67; LD 4-1SHC.EX1 at Ex. 11 ¶ 5.

14   Specifically, Juror Haker declared that, during penalty phase deliberations, "[t]here was a great

15   deal of pressure put on me to change my vote.  Other jurors told me about the cost to the county

16   of a retrial and said that I could impose the death penalty."  LD 4-1SHC.EX1 at Ex. 11 ¶ 5.

17       As with the previous subclaim, the state court was reasonable if it concluded that this did

18   not make out a prima facie showing that his due process rights were violated by juror

19   misconduct.  If one or more of the jurors had considered extraneous materials in reaching their

20   verdict, then that could be misconduct.  *See Sassounian v. Roe,* 230 F.3d 1097, 1108 (9th Cir.

21   2000).  On the other side of the coin, jurors are entitled and expected to deliberate via sharing

22   personal experiences and opinions, which is not misconduct even if those opinions are premised

23   on falsities.  *Hard v. Burlington Northern R. Co.*, 870 F.2d 1454, 1460 (9th Cir. 1989).  In state

24   court proceedings, petitioner did not make explicit whether his allegations reflected that the

25   jurors actually infected deliberations with purported facts not in evidence, or that "outside

26   influence" had borne upon their deliberations.  *See id*. at 1460-61.  The state court may have

27   reasonably determined that petitioner's allegations were too minimal to show as a prima facie

28   matter that his due process rights had been violated by this aspect of the jury's deliberations.

1    Moreover, as with the previous subclaim, even without the lens of AEDPA deference,

2    these allegations fail in this proceeding.  Petitioner's claim on these allegations appears to rely

3    wholly on Juror Haker's statements.  *See* ECF No. 44 at 266-67; ECF No. 218 at 79-80; *see also*

4    ECF No. 103 (petitioner does not request an evidentiary hearing on this claim).  These

5    statements, however, appear inadmissible under Federal Rule of Evidence 606(b), *see Erikson v.*

6    *Rowland*, 991 F.2d 803 (9th Cir. 1993), and, even if admitted, would not suffice to demonstrate

7    prejudicial misconduct.  *See, e.g.*, *Mancuso v. Olivarez*, 292 F.3d 939, 952 (9th Cir. 2002)

8    (holding prejudice shown based on length of discussion about the extraneous information, who

9    introduced the information, how many jurors discussed it, when it was discussed in deliberations,

10   and other facts); *United States v. Navarro-Garcia*, 926 F.2d 818, 822-23 (9th Cir. 1991) (same);

11   *Bayramoglu v. Estelle,* 806 F.2d 880, 887 (9th Cir. 1986) (describing factors court considers in

12   determining whether juror's consideration of extrajudicial material was prejudicial).  Hence, this

13   portion of the subclaim merits dismissal on this alternative basis, as well.

14   For all of these reasons, the undersigned recommends that claim 70 be dismissed in its

15   entirety.

16   **Claim 102**

17   In claim 102, petitioner alleges that the cumulative errors in his case merit reversal of his

18   convictions and death sentence.  ECF No. 44 at 302-03.  Petitioner raised this claim in his first

19   petition for writ of habeas corpus in state court, which the state court denied summarily on the

20   merits.  LD 4-1SHC at 155.  The undersigned finds that denial reasonable.

21   The Supreme Court has held that the combined effect of multiple trial court errors violates

22   due process where it renders the resulting criminal trial fundamentally unfair, even where no

23   single error rises to the level of a constitutional violation or would independently warrant

24   reversal.  *Chambers v. Mississippi,* 410 U.S. 284, 290, 298, 302-03 (1973); *see also Parle v.*

25   *Runnels*, 505 F.3d 922, 927 n.5 (9th Cir. 2007) (collecting cases).  In assessing the claim, "the

26   fundamental question in determining whether the combined effect of trial errors violated a

27   defendant's due process rights is whether the errors rendered the criminal defense 'far less

28   persuasive,' and thereby had a 'substantial and injurious effect or influence' on the jury's verdict."

1    *Parle*, 505 F.3d at 928 (quoting *Brecht,* 507 U.S. at 637 and *Chambers,* 410 U.S. at 294).

2          The state court may have reasonably concluded that petitioner had not made a prima facie

3    showing that his due process rights were violated by the cumulative errors in his case.  First,

4    petitioner's allegations to the state court were vague and conclusory, *see* LD 4-1SHC at 155, and

5    the state court may have found them insufficient on that basis alone.  *See Pinholster*, 563 U.S. at

6    188 n.12; *Clark*, 5 Cal. 4th at 770.  Had the state court conducted its own review of the record,

7    including of the errors alleged by petitioner in his post-trial proceedings, it still may have

8    reasonably concluded that petitioner did not make a prima facie showing of cumulative error

9    rising to the level of a due process violation.  Many of the errors claimed by petitioner were

10    reasonably determined not to be errors at all.  *See* ECF No. 84 (identifying some claims as failing

11    to set forth a cognizable claim of relief or prima facie showing of error); ECF No. 160 (same);

12    *Lewis*, 25 Cal. 4th 610 (same).  Of the remaining possible errors, the state court was reasonable in

13    concluding that their effect did not cumulate to, together, render the defense at either phase "far

14    less persuasive" than it would have been absent the errors.  *See Chambers,* 410 U.S. at 294.

15    Petitioner has not shown that the state court's summary dismissal of this claim was unreasonable.

16    *See Walker*, 709 F.3d at 939; ECF No. 218 at 80-81.  The undersigned therefore recommends that

17    claim 102 be dismissed.

18    **Claim 103**

19          In claim 103 of the Amended Petition, petitioner alleges that his appellate counsel

20    provided ineffective assistance in his appellate and habeas corpus proceedings.  ECF No. 44 at

21    303-04.  The undersigned has recommended that part of this claim be dismissed in deference to

22    the California Supreme Court's application of the timeliness bar to some of its allegations.  The

23    undersigned further concludes that the entirety of the claim should be dismissed under additional

24    authorities.

25          In state court, petitioner alleged that his counsel had unreasonably failed to bring

26    meritorious claims in petitioner's direct appeal proceedings and his first petition for writ of

27    habeas corpus in state court.  LD 5-2SHC at 99-108.  The California Supreme Court denied this

28    claim summarily on the merits, and additionally held that those allegations directed at counsel's

1  performance in direct appeal proceedings were untimely and successive.  LD 5-2SHC.ORD.  The

2  undersigned has concluded, *ante*, that the California Supreme Court's application of the

3  timeliness bar is entitled to deference, which would thereby result in the dismissal of those

4  allegations—i.e., those relating to counsel's performance on direct appeal—from the claim,

5  leaving remaining only the allegations relating to counsel's performance in state habeas corpus.

6          The allegations concerning the performance of counsel in state habeas corpus proceedings

7  must fail, however, for two reasons.  First, in his briefing, petitioner does not address why the

8  state court's denial of these allegations on the merits was unreasonable or otherwise undeserving

9  of deference under 28 U.S.C. § 2254(d).  *See* ECF No. 218 at 81.  Petitioner bears the burden on

10  this issue, *Walker*, 709 F.3d at 939, and has not met this burden.  Second, the Supreme Court has

11  held that there is no constitutional right to counsel in state post-conviction proceedings, let alone

12  effective counsel, *see Davila*, 582 U.S. at 529; *Murray v. Giarratano,* 492 U.S. 1 (1989) (plurality

13  opinion); *see also Shinn*, 596 U.S. at 383, and thus to the extent claim 103 alleges petitioner's

14  counsel performed ineffectively in state habeas proceedings, the state court was proper in denying

15  these allegations as non-cognizable.  *See Shinn*, 596 U.S. at 389-90; *Schriro*, 550 U.S. at 474-75.

16  Even without the lens of AEDPA deference, these allegations should be dismissed in this

17  proceeding because they fail to set forth a theory on which relief may be granted.  *See Franklin v.*

18  *Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002); *see generally Shinn*, 596 U.S. at 389-90.

19          Finally, the entirety of claim 103 warrants dismissal in this proceeding as conclusory.  In

20  his Amended Petition, petitioner simply alleges broadly that his post-trial counsel "rendered

21  ineffective assistance of counsel during appeal in failing to investigate, discover, or raise any of

22  the claims set forth in this petition, to the extent that a determination ultimately is made that these

23  claims fail to comply with the procedural rules of this court, to petitioner's substantial prejudice."

24  ECF No. 44 at 303-04; *see also* ECF No. 218 at 81 (reiterating same).  "Conclusory allegations

25  which are not supported by a statement of specific facts do not warrant habeas relief."  *James v.*

26  *Borg*, 24 F.3d 20, 29 (9th Cir. 1994); *see, e.g.*, *Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir.

27  1995); *Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994); *O'Bremski v. Maass*, 915 F.2d 418,

28  420 (9th Cir. 1990).  Petitioner's allegations comprising claim 103 fail to satisfy this court's

1  pleading standards, as they do not set forth any factual allegations establishing either that

2  petitioner's post-trial counsel performed substandardly under prevailing professional norms or

3  that petitioner was prejudiced by his counsel's failure to raise any particular meritorious claim or

4  claims. *See Williams v. Calderon*, 52 F.3d 1465, 1484 (9th Cir. 1995); *McKenzie v. McCormick*,

5  27 F.3d 1415, 1418 (9th Cir. 1994); *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir. 1970).

6        For all these reasons, the undersigned recommends that claim 103 be dismissed.

7  **III.    REMAINING CLAIMS[18]**

8        Finally, respondent argues that claim 26 should be dismissed because petitioner failed to

9  exhaust it in state court.  The undersigned agrees and recommends that claim 26 be dismissed.

10 **Claim 26**

11       In claim 26, petitioner alleges that trial counsel provided ineffective assistance during jury

12 selection by failing to question adequately, to challenge for cause, or to utilize peremptory

13 challenges to remove prospective jurors who indicated bias in favor of the prosecution or against

14 the defense.  ECF No. 44 at 171-73.  Respondent argues that this claim must be dismissed as

15 unexhausted or, in the alternative, as meritless.  ECF No. 205 at 66.  The undersigned agrees that

16 Claim 26 is unexhausted and recommends that it be dismissed.

17       As a matter of comity and as codified by AEDPA, a state prisoner must exhaust available

18 state remedies before seeking a federal writ of habeas corpus, 28 U.S.C. § 2254(b)(1), in order to

19 give the state the first "'"opportunity to pass upon and correct" alleged violations of its prisoners'

20 federal rights.'"  *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (*per curiam*) (quoting *Picard v.*

21 *Connor,* 404 U.S. 270, 275 (1971); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Rose v.*

22 *Lundy,* 455 U.S. 509 (1982); *Picard v. Connor,* 404 U.S. 270, 275 (1971).  A petitioner exhausts

23 a claim by presenting to the highest state court available "both the operative facts and the federal

24 ───────────────

25       [18] The instant order addresses all claims that had survived respondent's motion for
   summary judgment, *see* ECF No. 122, excepting subclaims 15(a), 16(e), 16(f), and 16(h).  For
26 these subclaims, petitioner had sought evidentiary hearings, which the previously assigned
   magistrate judge denied.  ECF No. 160 at 8-9, 21-24.  Consistent with the relevant briefing
27 orders, however, the parties have not yet addressed whether deference is owed to the state court's
   denial of these claims under AEDPA.  *See* ECF Nos. 175, 196.  The parties should be prepared to
28 address that question in future briefing.

1   legal theory on which his claim is based so that the state courts have a 'fair opportunity' to apply

2   controlling legal principles to the facts bearing upon his constitutional claim." *Kelly v. Small,* 315

3   F.3d 1063, 1066 (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey,* 481 F.3d 1143,

4   1149 (9th Cir.2007); *see also Gray v. Netherland,* 518 U.S. 152, 162-63 (1996) ("for purposes of

5   exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific

6   federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to

7   relief"); *Davis v. Silva,* 511 F.3d 1005, 1008-09 (9th Cir. 2008); *Weaver v. Thompson,* 197 F.3d

8   359, 365 (9th Cir. 1999).

9        The petitioner need not present identical factual allegations in the state and federal habeas

10   corpus proceedings in order for the federal habeas corpus claim to be exhausted. *Vasquez v.*

11   *Hillery*, 474 U.S. 254, 257-58 (1986); *Lopez v. Schriro*, 491 F.3d 1029, 1040 (9th Cir. 2007).

12   Nevertheless, if the federal claim contains factual allegations that are absent or different from

13   those raised in the state proceedings, the claim is not exhausted if the new factual allegations

14   either "fundamentally alter the legal claim already considered by the state courts," *Vasquez*, 474

15   U.S. at 260, or "place the case in a significantly different and stronger evidentiary posture than it

16   was when the state courts considered it." *Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988)

17   (per curiam); *see, e.g.*, *Beaty v. Stewart*, 303 F.3d 975, 989-90 (9th Cir. 2002); *Nevius v. Sumner,*

18   852 F.2d 463, 470 (9th Cir. 1988). Thus, for example, the Ninth Circuit held a petitioner's claim

19   of ineffective assistance of counsel unexhausted where, in state court, he had merely alleged that

20   trial counsel was ineffective at the penalty phase of petitioner's capital trial for failing to have

21   "effectively evaluate[d] whether [petitioner] 'suffer[ed] from any medical or mental

22   impairment.'" *Dickens v. Ryan*, 740 F.3d 1302, 1319 (9th Cir. 2014) (en banc). After the claim

23   was denied in state court, he raised it in federal court; in that proceeding, he more specifically

24   alleged that trial counsel was ineffective for failing to investigate and present evidence that

25   petitioner suffered from fetal alcohol spectrum disorder and organic brain damage and offered

26   evidence in support of these allegations. *Id.* The Ninth Circuit held that the additional factual

27   allegations rendered this claim unexhausted, as petitioner had failed to provide the state court

28   with the opportunity to consider the "substantially improved" the evidentiary posture of the

1    "enhanced *Strickland* claim."  *Id.*

2          Here, the factual allegations petitioner made in state court in support of this claim were

3    minimal and vague, such that he did not provide the state court with a fair opportunity to consider

4    the merits of the claim as he has presented it in this court.  In the introductory paragraph of claim

5    8 of petitioner's first state habeas corpus petition, he listed a number of trial counsel's alleged

6    deficiencies in broad categories, including that "counsel's errors and omissions include: . . .

7    failure to perform competently during jury selection."  LD 4-1SHC at 36-37.  In contrast, in this

8    court, petitioner has specifically alleged the nature of counsel's omissions during jury selection,

9    identifying several prospective jurors whose responses suggested bias and, per petitioner, required

10   further voir dire examination, their dismissal for cause, or their removal via peremptory

11   challenge.  He also has more specifically set forth the nature of his prejudice argument, that, by

12   virtue of trial counsel's failures, he was convicted and sentenced to death by biased jurors, in

13   violation of his Sixth Amendment right to an impartial jury.  ECF No. 44 at 171-73.  The state

14   court never received the opportunity to consider this theory, or the evidence that supported it,

15   because petitioner never articulated it to that court.

16         To be sure, in some situations, a petitioner's sparse, broad allegations in state court suffice

17   to exhaust the claim because the allegations, although minimal, clearly delineated petitioner's

18   theory for relief.  *See, e.g.*, *Davis*, 511 F.3d at 1011 (holding claim exhausted where state habeas

19   allegations were few, but when read together "the legal theory and operative facts would have

20   become clear" to the state court).  That is not the case for petitioner's state-court allegations,

21   which posited simply that defense counsel was ineffective by "failure to perform competently

22   during jury selection," LD 4-1SHC at 36-37, as defense counsel's competent performance during

23   jury selection includes a multiplicity of distinct obligations, any number of which might give rise

24   to a form of habeas corpus relief.  *See, e.g.*, *Carrera v. Ayers*, 670 F.3d 938, 943 (9th Cir. 2011),

25   *on reh'g en banc,* 699 F.3d 1104 (9th Cir. 2012) (recognizing defense counsel's duty to object if

26   prosecutor uses peremptory challenges in a facially discriminatory manner); *Ybarra v. McDaniel*,

27   656 F.3d 984, 1000 (9th Cir. 2011) (considering whether defense counsel performed deficiently

28   by failing to question prospective jurors on their receptiveness to anticipated trial defense); *Hovey*

1    *v. Ayers*, 458 F.3d 892, 910 (9th Cir. 2006) (recognizing failure to question prospective jurors on

2    exposure to pretrial publicity may be deficient performance); *People v. Cunningham*, 25 Cal. 4th

3    926, 1004 (2001), *as modified* (Aug. 15, 2001) (considering whether defense counsel performed

4    ineffectively by failing to question prospective jurors on racial or other biases); *People v. Staten*,

5    24 Cal. 4th 434, 454 (2000) (acknowledging defense counsel may perform deficiently by failing

6    to question prospective jurors on their beliefs about the death penalty). In this jurisprudential

7    context and given the breath and vagueness of petitioner's allegations, the state court would have

8    had no way to discern the legal theory underlying his ineffective assistance of counsel claim, or

9    what evidence may have supported it. Simply put, petitioner's allegations as presented to the

10   state court did not give that court a meaningful opportunity to apply the controlling legal

11   principles to the operative facts as he presents them here. *See Baldwin*, 541 U.S. at 29, 33. The

12   claim is unexhausted. Accordingly, the undersigned recommends claim 26 be dismissed, without

13   prejudice pending exhaustion. *See* 28 U.S.C. § 2254(b)(1).

14        Accordingly,

15        (1) IT IS HEREBY RECOMMENDED that claims 4, 5, 6, 9, 10, 11, 12, 13, 14, 15(b),

16            15(c), 15(d), 16(a), 16(b), 16(c), 16(d), 16(e), 16(g), 16(i), 17, 18, 19, 20, 21, 22, 23,

17            24, 26, 28, 30, 31, 32, 69, 70, 102, and 103 of the amended petition for writ of habeas

18            corpus (ECF No. 44) be dismissed.

19        (2) The Clerk of Court is directed to substitute Dao Vang as Respondent.

20        These findings and recommendations are submitted to the United States District Judge

21   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty days after

22   being served with these findings and recommendations, any party may file written objections with

23   the court and serve a copy on all parties. Such a document should be captioned "Objections to

24   Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also

25   address whether a certificate of appealability should issue and, if so, why and as to which issues.

26   A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a

27   substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any

28   response to the objections shall be filed and served within thirty days after service of the

objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    May 19, 2025

_____
JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

109